# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BEN FEIBLEMAN,

                                            Plaintiff,

                                            v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,

                                            Defendant.

-------------------------------------------------------------------X

## DECLARATION OF OLYMPIAS ILIANA KONIDARIS
## IN SUPPORT OF DEFENDANT'S MOTION TO REDACT THE COMPLAINT

      I, Olympias Iliana Konidaris, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.     I am the principal of Konidaris Law and the attorney for the victim of sexual assault ("Jane Doe") referenced by her true name in paragraph four of Plaintiff Ben Feibleman's complaint and over 700 additional times throughout Feibleman's complaint. While Jane Doe is not a party to this action, she has retained my firm to represent her in connection with protecting her privacy. I submit this declaration in support of Defendant The Trustees of Columbia University in the City of New York's motion to redact the complaint and to identify Ms. Doe by pseudonym and otherwise protect her privacy.

      2.     Ms. Doe is concerned for her physical safety and her wellbeing as a result of the one-sided narrative that Mr. Feibleman has aggressively promoted through this Court. I attach as **Exhibit 1** the Declaration of Jane Doe ("Doe Decl."), dated May 24, 2019.

3.      Ms. Doe has already been contacted by reporters, and a reporter appeared at the front door of her home the day after the complaint was filed. (Ex. 1, Doe Decl. ¶ 3.) The comments to the published news stories are harrowing and particularly threatening to Ms. Doe. (*Id.* ¶ 5.)

4.      Ms. Doe has reason to fear for her continued safety, as detailed by Ms. Doe's pro bono counsel, Alexi Meyers, in the university proceedings. I attach as **Exhibit 2** the Declaration of Alexi Meyers ("Meyers Decl."), dated May 23, 2019, and as **Exhibit 3** the May 15, 2017 email correspondence between Ms. Meyers and Mr. Feibleman's counsel in the university proceedings, Robert S. Wolf, Esq.[1]

5.      During the Title IX proceedings at Columbia, Mr. Feibleman's attorney warned that Ms. Doe's name would be "dragged through the mud" and that he would have no choice but to "play the recording [that Mr. Feibleman made of the sexual assault] . . . in a courtroom" if she did not drop her Title IX complaint against Mr. Feibleman. (*See* Ex. 2, Meyers Decl. ¶ 2; Ex. 3.) Ms. Doe faces a significant ongoing threat if her true name or any other identifying characteristics, such as photographs or recordings, are used in the course of this litigation.

6.      In light of the foregoing, Ms. Doe supports Columbia's motion to redact and to protect Ms. Doe's true name and identity.

I state under the penalties of perjury under the laws of the United States that the foregoing is true and correct.

DATED:    New York, New York
          May 24, 2019

_____
OLYMPIAS ILIANA KONIDARIS

---

[1] Exhibit 3 redacts each instance in which Jane Doe's true name appears in the document, pursuant to the Court's May 15, 2019 order. (Doc. 13.)

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BEN FEIBLEMAN,

                                      Plaintiff,

                                 v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,

                                      Defendant.

-------------------------------------------------------------------X

## DECLARATION OF JANE DOE
## IN SUPPORT OF DEFENDANT'S MOTION TO REDACT THE COMPLAINT

I, Jane Doe, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am over the age of 18 and competent to give this declaration.

2.     I am the woman who filed a complaint of sexual assault against Ben Feibleman with Columbia University's Title IX Office in October 2016, as identified in ¶ 4 of his complaint. I have been identified by my true name throughout Mr. Feibleman's 98-page complaint, which includes several photographs of me in various poses and close-ups of my face at several angles. I am not a party to this action, and this declaration is made based upon my personal knowledge.

3.     On May 14, 2019, I learned that Mr. Feibleman filed a complaint against The Trustees of Columbia University of the City of New York when I received a message from a reporter from the New York Post on Facebook and also on LinkedIn, attaching the complaint and requesting comment. When I did not respond, a New York Post reporter showed up at my front door that same day.

4. I am worried for my safety and for my wellbeing. For over two years, I have been undergoing treatment relating to anxiety and post-traumatic stress disorder in connection with being sexually assaulted in October 2016. The media pressure of this case alone will have a devastating impact on my mental health, particularly if I am identified by name in these proceedings.

5. Furthermore, several threatening comments have already been made about me on news stories published about this case, and a reporter has been able to find me at my home. I continue to be afraid for my safety.

6. I am also concerned about the permanent harm Mr. Feibleman's complaint will have on my reputation, career, and future employment prospects, especially given the one-sided, false narrative that he has aggressively sought to promote through this Court. To be clear, I was accepted into and enrolled in a dual-degree program at Columbia University in the fall of 2016. I received three merit-based scholarships and a highly competitive fellowship to attend the program. Contrary to Mr. Feibleman's allegations, I received honors and held leadership positions throughout my time at Columbia. I am devastated by the thought that my hard work and my contributions to the Columbia community may be destroyed by Mr. Feibleman's calculated and retaliatory efforts to drag my name through the mud.

7. I am further troubled by Mr. Feibleman's decision to include numerous photographs of me in his complaint, none of which serve the exculpatory purpose he alleges. I believe his decision to include these photographs was to cause me further physical and mental harm and to garner even more media attention.

8. I brought the complaint of sexual assault against Mr. Feibleman to Columbia's Title IX Office in good faith. I complied with the process and was provided pro bono counsel

from Sanctuary for Families. Attorney Alexi Meyers, as well as another attorney from Sanctuary for Families, advised me throughout the process. While I understood that Columbia's policies allowed me to speak with others about the underlying events, I wished to respect the integrity and the privacy of the proceedings and not to draw attention to my situation.

9. To that end, despite the fact that there were several witnesses to the events who participated in the university proceedings, I spoke with very few friends or individuals about Mr. Feibleman and the fact that he sexually assaulted me. I did not identify him or discuss the case openly on social media.

10. While I posted a New York Times story about the "Shitty Men in Media List" to a closed group, I did not mention Mr. Feibleman or my own experience in the post. At the time, that piece received significant media attention and was especially relevant to journalism students and working journalists. In addition, I made no mention of him or anything relating to the proceedings in my post with an image of an individual making a "V" for victory with his fingers. (*See* Complaint, Doc. 1, ¶ 726.) The only two comments to my post mention nothing about Mr. Feibleman or anything even remotely related to the proceedings. The first commenter offered her favorite quote from the individual in the image, and the second noted that he was an "[o]utstanding British citizen."

11. I worry that exposing my true name will subject me to further harm, retaliation, reputational damage, embarrassment, and injury. During the Title IX investigation, I learned through my attorney, Ms. Meyers, that Mr. Feibleman threatened not only to bring suit and drag my name through the mud, but to play the recording of the sexual assault in the courtroom. I worry that Mr. Feibleman intends to continue to retaliate against me, to threaten my physical and mental health, and to humiliate me throughout the course of this litigation.

12.     I therefore support Columbia University's motion to redact the complaint and to allow me to be identified under a pseudonym.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:     New York, New York
           May 24, 2019

*Jane Doe*
_____
Jane Doe

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BEN FEIBLEMAN,

                               Plaintiff,

                               v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,

                               Defendants.

------------------------------------------------------------------------X

### DECLARATION OF ALEXI MEYERS
### IN SUPPORT OF DEFENDANT'S MOTION TO SEAL

      I, Alexi Meyers, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.      I am an attorney with Sanctuary for Families and previously the attorney for the victim of sexual assault ("Jane Doe") referenced by her true name in paragraph four of Plaintiff Ben Feibleman's complaint and over 700 additional times throughout Feibleman's complaint. I represented "Jane Doe" during the Title IX proceedings at Columbia University, in which the University was investigating sexual misconduct by Plaintiff Ben Feibleman. I am familiar with the underlying facts of the case.

      2.      On May 15, 2017, I received a phone call from Robert S. Wolf, Esq., a partner at Moses & Singer LLP, who was representing Ben Feibleman at the time. Mr. Wolf suggested that Jane Doe and his client, Ben Feibleman, should both agree to withdraw their complaints with the University and resolve the case outside of the Title IX process. He also stated that if the case

was not resolved outside of the Title IX process, Mr. Feibleman would sue Columbia University, and in doing so, my client's name would be "dragged through the mud." He also threatened to play an audio recording of Jane Doe being sexually assaulted, while incapacitated, in court, effectively in order to humiliate her. I responded by email to Mr. Wolf indicating that he was violating Columbia University's Title IX procedures by making the aforementioned statements.

3. I understood these statements to be threatening towards my client and made in an effort to pressure her to withdraw from the investigation. I also understood this behavior to be retaliation and strictly prohibited by Columbia University Policy, which prohibited "any adverse action or threatened action, taken or made, personally or through a third party, against someone who has filed a gender-based misconduct complaint (a Complainant) or has been the subject of a gender-based misconduct complaint (a Respondent) or any other individual who engages with the Office." *See, e.g.,* Columbia University, "Gender-Based Misconduct Prevention and Response, 2015-2016 Annual Report."[1]

I state under the penalties of perjury under the law of the United States that the foregoing is true and correct to the best of my knowledge.

DATED:   New York, New York
         May 23, 2019

_Alexi Meyers (May 23, 2019)_
**ALEXI MEYERS**

---

[1] This report is available online at https://sexualrespect.columbia.edu/files/sri/content/gender-based-misconduct-prevention-and-response-2015-2016.pdf, last accessed on May 23, 2019.

# EXHIBIT 3
## (Redacted)



Iliana Konidaris <iliana@konidarislaw.com>

# Fwd: Conversation on May 15, 2017

**Alexi Meyers** <ameyers@sffny.org>  Tue, May 21, 2019 at 10:58 AM
To: "iliana@konidarislaw.com" <iliana@konidarislaw.com>, Rebecca Zipkin <rzipkin@sffny.org>

Begin forwarded message:

> **From:** "Robert S. Wolf" <rwolf@MOSESSINGER.COM>
> **Date:** May 19, 2017 at 4:49:32 PM EDT
> **To:** Alexi Meyers <ameyers@sffny.org>
> **Cc:** Serena Barnett <sbarnett@columbia.edu>, Lauren Mack <lmack@MOSESSINGER.COM>
> **Subject: Re: Conversation on May 15, 2017**

Alexi,

    Your description of my statements as threatening is simply inaccurate as is your assertion that anything was done in violation of Columbia's policies. The purpose of my call to you on behalf of my client, Benjamin Feibleman, and what was said to you was quite the opposite. I have copied my partner Lauren Mack here as she also participated in the call.

    Frankly, I provided you a courteous indication of how the current status (procedural and factual) of the investigation would likely transpire in public court proceedings at this point due to the unreasonable, unfairly prejudicial delay of the resolution of this investigation which has lasted over 7 months, beyond graduation, and how that could affect [redacted]. In response to your statement that our issue was with Columbia and not your client, I highlighted the point that the uncontroverted facts favorable to Mr. Feibleman would necessarily be included to also demonstrate that [redacted] allegations were baseless and false as verified by her own tape recorded statements repeatedly demanding intercourse from my client. Indeed, Mr. Feibleman's assertions of "no means no" meant nothing to her. The existence and content of the tape recording itself should have prompted a swift resolution of this matter by Columbia.

    In light of the foregoing, it was certainly appropriate to suggest that if your client chose to agree that it would be in the parties respective interests to go their separate ways without seeking a resolution of the investigation, such a proposal could be presented for Columbia's consideration at this unexpected juncture of this otherwise improperly protracted investigation, regardless of how or if such a proposal would even be considered by the University. Ironically, although I made clear that my call to you was entirely outside of the investigation process, you have now chosen to copy Title IX investigator Serena Barnett in your email, which I believe is improper.

    Finally, be assured that we will not permit Mr. Feibleman's name and reputation to be unfairly dragged through the mud by your client's false allegations. That [redacted] apparently continues to publicly represent herself to be a sex crime victim based upon what occurred with Mr. Feibleman is, to say the least, offensive.

Best regards,

Robert Wolf

405 Lexington Avenue
New York, New York 10174
Office: 212 554-7800
Direct: 212 554-7825
Cell:  917 301-7784
rwolf@mosessinger.com

Sent from my iPad

On May 19, 2017, at 10:33 AM, Alexi Meyers <ameyers@sffny.org> wrote:

> Dear Mr. Wolf,
>
> I am writing you in response to our conversation on May 15, 2017 regarding ▇▇▇▇▇▇▇ and Ben Feebleman.
>
> Given the serious allegations in this case, I find it unreasonable and in violation of Columbia's Gender Based Misconduct policy and practice that you suggested settling this case outside of the scope of the Columbia process.  As you are aware, Columbia's policy mandates a formal hearing process in cases where the allegations include sexual assault.
>
> Furthermore, I found your statements that this case would end up in court, that ▇▇▇▇▇ name would be "dragged through the mud,"  and that you would have no choice but to "play the recording of ▇▇▇ in a court room" to be threatening.
>
> I understand your frustration with the Columbia process and the unnecessary length of time this case has taken.  However, that delay is in no way a result of my client's behavior and is not something that she should be unduly threatened for.
>
>
> Sincerely,
> Alexi

_____
This message is being sent from a Law Firm and may contain CONFIDENTIAL or PRIVILEGED information. If you are not the intended recipient, do not print, copy or distribute this message or any attachments. Advise the sender immediately by reply e-mail, and delete this message and attachments without retaining a copy.