**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BEN FEIBLEMAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,**<br><br>**Defendant.** | **Civil Action No.: 19-cv-04327-VEC** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO REDACT THE COMPLAINT**

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*
*Ben Feibleman*
555 Fifth Avenue
New York, New York 10017
(212) 984-7700

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES…………………………………...…………………………...iii

PRELIMINARY STATEMENT…………………………..……………………………...1

FACTUAL STATEMENT………………………………..………………………………2

LEGAL STANDARD……………………………………...……………………...……2

ARUGMENT…………………………………………………..………………………………3

A. Columbia Has Failed To Comply With The Court's Directive………………………..….3

B. *Sealed Plaintiff* Does Not Apply To The Instant Matter…………………………………..…4

C. The Declarations Of Olympias Konidaris, [REDACTED], And [REDACTED] Contain Information Designated By Columbia As "Identifying Information"…………………….7

D. The Declarations Of Olympias Konidaris, [REDACTED], And [REDACTED] Contain False Information And Unsupported Claims…………………...…………………………8

E. Columbia Has Mischaracterized The Complaint………………………...……………10

F. [REDACTED] Has Destroyed Any Right To Privacy She May Have Had……..………………..10

G. [REDACTED] Is Not a Sexual Assault Victim Under New York Law…………………………..11

H. The Statutory Authority Columbia Relies Upon Is Irrelevant…………………………...12

I. The Gender-Based Misconduct Policy Is Irrelevant And Columbia Has Denigrated Any Potential Privacy Interests It Could Plausibly Assert……………………………………14

CONCLUSION……………………………………………………………………………..15

# TABLE OF AUTHORITIES

**Cases** **Page Number**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016)……………………………………………………….………6

*Chevron Corp. v. Donziger*,
2013 U.S. Dist. LEXIS 24086 (S.D.N.Y. Feb. 21, 2015, 11-CV-0691 (LAK))…………..4

*Doe v. Alger*,
317 F.R.D. 37 (W.D. Va. 2016)…………………………………………………….....12

*Doe v. Del Rio*,
241 F.R.D. 154 (S.D.N.Y. 2006)…………………………………………...………..3

*Doe v. Hofstra Univ.*,
2018 U.S. Dist. LEXIS 69853 (E.D.N.Y Jan. 17, 2018, 17-CV-00179 (DRH)(AYS))......5

*Doe v. Trs. Of Columbia Univ.in N.Y*,
2018 U.S. Dist. LEXIS 184310 (S.D.N.Y. Oct. 26, 2018, 18-CV-7831 (PAC))...…….5,6

*Doe v. Trs. Of Dartmouth College*,
2018 U.S. Dist. LEXIS 74066 (D.N.H. May 2, 2018, 18-CV-040-LM)……………..……7

*Doe v. Rector & Visitors of George Mason Univ.*,
179 F. Supp. 3d 583 (E.D. Va. 2016)……………………………………………………..7

*Ferguson v. Ferrante*,
2015 U.S. Dist. LEXIS 68416 (S.D.N.Y. May 27, 2015, 13-CV-4468 (VEC)).....……..4,6

*International Products Corp. v. Koons*,
325 F.2d 403 (2d Cir. 1963)………………………………………………………………4

*In re New York Times Co.*,
828 F.2d 110 (2d Cir. 1987)…………………………………………………...……..3

*Kavanagh v. Zwilling*,
997 F. Supp. 2d 241 (S.D.N.Y. 2014)…………………………………………….……4

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006)………………………………………...…………….3

*Roe v. St. Louis Univ.*,
746 F.3d 874 (8th Cir. 2014)………………………………………………………..….7

*Sealed Plaintiff v. Sealed Defendant #1*,
537 F.3d 185 (2d Cir. 2008)……………………………………………………….3, 4, 5

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995)…………………………………………...….……..2,3

*United States v. Erie City, N.Y.*,
763 F.3d 235 (2d Cir. 2014)……………………………………………………….....4

*United States v. Silver*,
2016 U.S. Dist. LEXIS 51057 (S.D.N.Y. Apr. 14, 2016, 15-CR-93 (VEC))…………..…4

**STATUTES AND RULES**

CPLR R 3016(i)…………………………………………………………….………....13

Federal Education Rights and Privacy Act, 20 U.S.C. § 1232g…………………………………13

N.Y. Civ. Rights Law § 50-b(1)……………………..……………………………………..12

N.Y. Educ. L. § 6448……………………………………………………………….………13

**MISCELLANEOUS AUTHORITIES**

*The Washington Post*, https://www.washingtonpost.com/ (last accessed June 6, 2019)……….....1

**PRELIMINARY STATEMENT**

Defendant The Trustees of Columbia University in the City of New York ("Defendant" or "Columbia") seeks to frame this matter as a "typical" Title IX case. However, the facts as alleged in the Complaint and supplemented by the [REDACTED] Declaration, show that this case is anything but "typical." [REDACTED] suffers from the fatal malady of unclean hands. [REDACTED]'s words, deeds, and outright threats to Plaintiff Ben Feibleman's ("Plaintiff" or "Ben") livelihood show that Columbia's rhetoric in attempting to portray her as an "innocent third party" whose privacy rights trump the First Amendment presumption of access to judicial proceedings is severely misplaced. Moreover, there is no evidence establishing [REDACTED] as a victim of criminal sexual assault, further diminishing her alleged privacy interests. Columbia has also destroyed any alleged privacy interests related to its own policies and procedures by failing to consistently enforce its own Title IX confidentiality standards.

It is troubling that Columbia seeks to prevent the public from obtaining all of the relevant information associated with Ben's allegations. All of the students involved in this matter are working journalists who attended the Columbia Graduate School of Journalism ("CJS"). Considering the facts presented in the Complaint, as well as by former CJS student [REDACTED] [REDACTED] in her declaration, Columbia's actions are not consistent with a university that proudly touts "possibly the finest journalism school in this country" as one of its constituent institutions. As noted by *The Washington Post*, "Democracy Dies in Darkness." *See* https://www.washingtonpost.com/ (last accessed June 6, 2019). Access to the nation's federal courts are an integral part of our democracy. Columbia's request to obscure public access to the Complaint, under these unique circumstances, based on a trending movement trading on emotion rather than facts will, if granted, erode the First Amendment rights of all Americans.

Because this is not a "typical" Title IX case, it cannot be analyzed using the traditional lens wherein the privacy interests of participants in a university's investigation of sexual misconduct are afforded substantial deference. Because this is not a "typical" case, Columbia's reliance on cases where litigants are seeking the use of pseudonyms should not impact the Court's analysis. Columbia has failed to provide any authority sufficient to overcome the weighty presumption of access to judicial proceedings. Accordingly, Columbia's Motion should be denied, and the hyperlink to the unredacted Complaint should be reactivated.

**FACTUAL STATEMENT**

Columbia obtained the extraordinary relief of having the Complaint in this matter temporarily removed from the Court's electronic docket and effectively sealed by engaging in an *ex parte* telephone call with a judicial clerk. No real attempt was made to contact Ben's counsel before Columbia made, in effect, an oral application for a temporary restraining order that was granted based on its one-sided representations to the clerk. In an effort to make the Complaint publicly available (albeit in a neutered form), Ben agreed to redact certain portions of the Complaint until the instant Motion was decided. The Motion is now fully briefed.

**LEGAL STANDARD**

There is a "presumption of access" to judicial proceedings "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). Moreover, "public monitoring is an essential feature of democratic control." *Id*. As noted by the Second Circuit, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id*. at 1049 (2d Cir. 1995). "Information

most clearly due for disclosure includes any 'document which is presented to the court to invoke its powers,' a category encompassing complaints." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006) (quoting *Amodeo*, 71 F.3d at 1050). When a First Amendment right of access exists[1], "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (internal quotation marks and citations omitted). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*; *see also Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006).

## ARGUMENT

### A. Columbia Has Failed To Comply With The Court's Directive

Prior to filing the instant Motion, Columbia at all times indicated that it was seeking redactions to the Complaint. While Ben's attorneys were denied the chance to participate in the *ex parte* application giving rise to the instant Motion, the relevant ECF Order notes that the hyperlink to the unredacted Complaint will remain deactivated "pending the Court's resolution of what, if any, **redactions**, are appropriate to make to the Complaint." ECF Document 6 (emphasis added). The Court provided the following directive: "Both parties' briefs must address whether and why **redactions** to the Complaint are appropriate, in light of the presumption of access to the federal courts." ECF Document 6 (emphasis added). Instead of following the Court's directions, Columbia relies almost exclusively on the factors identified in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008), in asking the Court to "exercis[e] the discretion to allow a party – or, as is the case here, a third party – **to be referred**

[1] Columbia does not dispute the existence of a First Amendment right of access to the Complaint. *See* Columbia Brief at 6 (describing presumption of openness to judicial records as "grounded in fundamental First Amendment values").

**to by a pseudonym**." Columbia Brief at 6-7 (emphasis added); *see also* Columbia Brief at 8-15.

Columbia presents several cases stating the standard for determining whether redactions are appropriate in light of the presumption of access to federal courts, and in several of these cases, the courts ordered that the documents must be publicly accessible. *See* Columbia Brief at 5-6; *see also United States v. Erie City, N.Y.*, 763 F.3d 235 (2d Cir. 2014) (both parties requested sealing); *Ferguson v. Ferrante*, 2015 U.S. Dist. LEXIS 68416 (S.D.N.Y. May 27, 2015, 13-CV-4468 (VEC)). The cases where access to court documents was restricted are distinguishable, and none of them involved sealing or redacting a complaint.[2] In the remainder of its Argument section, Columbia fails to cite any cases that deal directly with the presumption of access to federal courts, instead relying on cases deciding requests to use pseudonyms. The Court did not request briefing on whether the non-parties should be permitted to use pseudonyms. Accordingly, the Court need not and should not consider the majority of the cases cited by Columbia.

**B. *Sealed Plaintiff* Does Not Apply To The Instant Matter**

*Sealed Plaintiff* deals exclusively with the use of pseudonyms by parties, in particular the plaintiff; it does not contemplate pseudonym protection for non-parties or the remedy of partial sealing through the use of redactions. *See Sealed Plaintiff*, 537 F.3d at 188 ("This appeal raises

---

[2] *See International Products Corp. v. Koons*, 325 F.2d 403, 408 (2d Cir. 1963) (analyzing ability of Government to exercise prior restraint to protect U.S. foreign policy and private business interests in South America during the Cold War); *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 24086 (S.D.N.Y. Feb. 21, 2015, 11-CV-0691 (LAK)) (barring disclosure of two witness declarations and identifying information about the witnesses redacted from other declarations in light of documented instances of judicial bribery, coercion, intimidation, and meaningful threats of physical harm up to and including murder); *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241 (S.D.N.Y. 2014) (balancing the importance of "pontifical secrecy" under Catholic law against the importance of public access to judicial documents and ordering that canonical court decisions related to sexual abuse of a minor remain under seal); *United States v. Silver*, 2016 U.S. Dist. LEXIS 51057 (S.D.N.Y. Apr. 14, 2016, 15-CR-93 (VEC)) (ordering limited redactions to documents detailing proven extramarital affairs leading to improper benefits in criminal prosecution of a disgraced politician). Moreover, in *Kavanagh*, the name of the minor who suffered sexual abuse at the hands of a priest was used throughout the decision and the instances of sexual abuse were discussed. Columbia's parenthetical misses the point of *Kavanagh*.

questions of first impression for our Court: (1) Under what circumstances may a plaintiff file a complaint using a pseudonym? and (2) What standard governs our review of a District Court's decision to permit or deny a request to file under a pseudonym?").[3] Courts in this Circuit have consistently denied the extension of *Sealed Plaintiff* to non-parties. *See, e.g., Doe v. Hofstra Univ.*, 2018 U.S. Dist. LEXIS 69853 at *2, *6 (E.D.N.Y Jan. 17, 2018, 17-CV-00179 (DRH)(AYS)) (denying emergency application by non-party to proceed using a pseudonym "as it was made by a non-party" and noting that *Sealed Plaintiff* "is a narrowly crafted exception from the general requirement to disclose the names of **the parties**.") (emphasis added). In a recent case before this Court, Columbia asserted that they were entitled to force the plaintiff to file an amended complaint that anonymized the non-party named in the complaint; that request was roundly rejected. *Doe v. Trs. Of Columbia Univ. in N.Y.*, 2018 U.S. Dist. LEXIS 184310 at *6 (S.D.N.Y. Oct. 26, 2018, 18-CV-7831 (PAC)) (noting that "[t]he relief Defendants seek in this motion appears to be unprecedented.").[4] In denying Columbia's request, the Court stated that the non-party provided "a critical link" to the plaintiff's allegations. *Id*. at *7. Here, [redacted] and the other Columbia students form "a critical link" to Ben's allegations.

Columbia, however, asserts that the *Sealed Plaintiff* factors "are equally relevant to

---

[3] Columbia purposefully misquotes or otherwise misstates the *Sealed Plaintiff* factors three times in an attempt to mislead the Court. *Sealed Plaintiff* does not require a determination as to "'whether [a party or non-party] is particularly vulnerable to the possible harms of disclosure'" but rather "whether the **plaintiff** is particularly vulnerable to the possible harms of disclosure." *Compare* Columbia Brief at 7 (bracketed text in original) *with Sealed Plaintiff*, 537 F.3d at 190 (emphasis added). Similarly, *Sealed Plaintiff* does not require analysis of "'whether the public's interest in the litigation is furthered by requiring' the identification of the parties or non-parties" but rather "whether the public's interest in the litigation is furthered by requiring the **plaintiff** to disclose his identity." *Compare* Columbia Brief at 7 *with Sealed Plaintiff*, 537 F.3d at 190 (emphasis added). Nor does *Sealed Plaintiff* demand a consideration of "'whether there are any alternative mechanisms for protecting the confidentiality of the [parties or non-parties]" but instead a determination as to "whether there are any alternative mechanisms for protecting the confidentiality of the **plaintiff**." *Compare* Columbia Brief at 7 (bracketed text in original) *with Sealed Plaintiff*, 537 F.3d at 190 (emphasis added).

[4] Counsel for Columbia in in instant matter also served as Columbia's counsel in *Doe v. Trs. Of Columbia Univ. in N.Y.*, 2018 U.S. Dist. LEXIS 184310. As a result, they are certainly aware of the Court's holding and previous position regarding the unprecedented nature of the relief they currently seek.

evaluating the 'higher values' and 'competing considerations' that necessitate sealing and/or redaction." Columbia Brief at 7, Note 8. This is simply not true, and the two cases that Columbia utilizes to support this claim do not actually stand for such a proposition. *Ferguson* does not even reference *Sealed Plaintiff*. Instead, the Court states the principles and process used to determine whether sealing is appropriate before ultimately determining that all of the materials in question allegedly containing trade secrets needed to be filed in their completely unredacted form. *Ferguson*, 2015 U.S. Dist LEXIS 68416 at *2-*4. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016), utilizes *Sealed Plaintiff* in a *cf.* citation to the following quotation, "Complaints have historically been publicly accessible by default, even when they contain arguably sensitive information," as part of its discussion of the First Amendment presumptive right of access to judicial documents. *Bernstein*, 814 F.3d at 141. Nowhere in *Bernstein* does the Second Circuit expand the holding of *Sealed Plaintiff* to include the analysis of redactions or access to judicial documents.[5]

Even if the Court were to indulge Columbia's error in relying on the *Sealed Plaintiff* factors for determining the propriety of redactions, the unique factual nature of this matter

---

[5] Even if the factors from *Sealed Plaintiff* are analyzed in light of the facts of this case, there is no basis for the unredacted Complaint to remain inaccessible to the public. Anonymity is not required despite the nature of this case, nor is there any public interest in maintaining anonymity. Ben is proceeding using his real name, and the solution for a plaintiff proceeding under his real name is not additional anonymity. *See Doe v. Trs. Of Columbia Univ. in N.Y.*, 2018 U.S. Dist. LEXIS 184310 at *4. [REDACTED] is not minor or a victim of sexual assault under New York law, nor are any of the other Columbia students named in the Complaint. *See* Section G., *infra*. As a result, the public interest in protecting the identity of sexual assault victims is irrelevant here. Ben presented Columbia with clear evidence that [REDACTED] was not incapacitated and that she actively sought sex from him. If the university responsible for maintaining "possibly the finest journalism school in this country" is going to ignore hard evidence in reaching its conclusions, there is likely a public interest in making every aspect of the case available to the public. The risks to [REDACTED] and the other Columbia students named in the Complaint are speculative and unsubstantiated. Ben will be prejudiced if the Court permits the use of pseudonyms or redactions, as [REDACTED] has indicated she will use anonymity as a sword, not a shield. *See* Complaint at ¶¶ 820-22. [REDACTED] has not maintained her privacy or the confidentiality of Columbia's proceedings. *See* Section F. and Section I., *infra*. The existence of prior publicity is neutral at best, as there is no evidence that the temporary sealing of the Complaint has provided continued anonymity for the non-parties. At least two reporters know the identities of the non-parties named in the Complaint. *See* Exhibit B to Tenzer Declaration; [REDACTED] Declaration at ¶ 3. Two reporters' personal decisions to decline naming the non-parties does not control the authoritative case law on the issue before the Court.

renders the cases cited by Columbia inapposite. None of the cases cited by Columbia involve a **non-party** who has (1) been confronted with clear evidence of her **untruthful claims**; (2) **publicized facts related to the case** where she seeks redactions; and (3) clearly **stated an intent to harm** the party objecting to the use of redactions. Further, in every case cited by Columbia regarding the use of pseudonyms, a party or parties was requesting this protection, not a non-party.

Moreover, fifteen (15) of the cases relied upon by Columbia, are from outside the Second Circuit and utilize different tests than *Sealed Plaintiff* for determining whether the use of pseudonyms is proper. In certain instances, Columbia clearly misstates case holdings in an apparent attempt to mislead the Court. *See* Note 2, Note 3, and Page 6 *supra*, and Note 6, *infra*. In several cases, the plaintiff filed an unopposed motion seeking the use of a pseudonym that was granted by the Court. *See, e.g., Doe v. Trs. Of Dartmouth College*, 2018 U.S. Dist. LEXIS 74066 (D.N.H. May 2, 2018, 18-CV-040-LM). In others, the plaintiff filed a motion seeking anonymity for student participants involved in the university disciplinary proceedings, whether they were parties or non-parties. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583 (E.D. Va. 2016). In certain cases, the Court did not perform any analysis of the pseudonym issue. *See, e.g., Roe v. St. Louis Univ.*, 746 F.3d 874 (8th Cir. 2014).

**C. The Declarations Of Olympias Konidaris, [redacted], And [redacted] Contain Information Designated By Columbia As "Identifying Information"**

Bizarrely, the declaration provided by [redacted]'s current counsel, Olympias Konidaris, contains identifying information that Columbia demanded be redacted from the Complaint. Specifically, the Konidaris Declaration identifies [redacted] as [redacted]'s former attorney. Konidaris Declaration at ¶ 4. This information is not included in the redacted Complaint because Columbia insisted that it could be used to identify [redacted] [redacted] also provided a



declaration where she identifies herself as [redacted] former attorney. [redacted] Declaration at ¶ 1. [redacted] declaration identifies [redacted] as her attorney. [redacted] Declaration at ¶¶ 8, 11. [redacted]'s declaration also provides identifying information related to Paragraph 726 of the Complaint, noting that [redacted] [redacted] [redacted] Declaration at ¶ 10.

The information detailed in the preceding paragraph was redacted from the publicly available Complaint based on Columbia's fear that it could be used to identify [redacted]. However, [redacted] her attorneys, and Columbia have now made this information publicly available. Columbia has hypocritically exposed supposedly sensitive details, yet demanded that Ben redact the same. The Court should not legitimize Columbia's brazen attempt to have things both ways.

### D. The Declarations Of Olympias Konidaris, [redacted], And [redacted] Contain False Information And Unsupported Claims

The Konidaris Declaration, [redacted] Declaration, and [redacted] Declaration contain blatantly false and inflammatory information. Ms. [redacted], Ms. Konidaris, and [redacted] all assert that Ben or his former counsel threatened to play a recording of [redacted]'s "sexual assault" in open court. [redacted] Declaration at ¶ 2 (stating that Ben's former attorney "threatened to play an audio recording of [[redacted]] being sexually assaulted, while incapacitated, in court"); Konidaris Declaration at ¶ 5 (stating that Ben's former attorney "warned . . . that he would have no choice but to 'play the recording [that Mr. Feibleman made of the sexual assault] . . . in a courtroom.") (quoting [redacted] Declaration at ¶ 2) (bracketed text in original); [redacted] Declaration at ¶ 11. There is no recording of Ben sexually assaulting [redacted] – no sexual assault of [redacted] ever occurred. *See* Complaint at ¶¶ 305-45. Ms. Konidaris, Ms. [redacted], and [redacted] all know that no recording of Ben sexually assaulting [redacted] exists. Moreover, the email from Robert Wolf, Ben's former counsel, included as an Exhibit to the Konidaris Declaration, shows that the claims

that Ben and Mr. Wolf threatened [REDACTED] are false. *See* Exhibit 3 to Konidaris Declaration.

Ms. Konidaris, Ms. [REDACTED] and [REDACTED] signed their declarations under penalty of perjury. The fact that they took such an oath so lightly is shocking. Their flippant disregard for their obligation to tell the truth indicates that nothing in their declarations should be considered by the Court. If they were willing to lie about provable facts, then it stands to reason that their subjective claims (such as the supposed danger to [REDACTED]'s physical safety and mental wellbeing) are also exaggerated.

It is particularly shameful that [REDACTED] and Olympias Konidaris, attorneys admitted to practice in the State of New York (and, presumably, the United States District Court for the Southern District of New York) made deceitful statements in their declarations in an effort to prevent public access to the Complaint. Columbia also knows that there is no recording of Ben "sexually assaulting" [REDACTED]. The fact that Columbia's attorneys utilized the dishonest statements of [REDACTED], her prior counsel, and her current counsel in an effort to prevent public access to the Complaint is disturbing.

The alleged concerns for [REDACTED]'s physical safety and wellbeing are unsupported by any documentary or expert evidence. [REDACTED]'s fear based on a reporter tracking her down at her home is nonsensical for someone who obtained a degree from "possibly the finest journalism school in this country." A fellow journalist did the hard work to find a source for a story. This is not something a journalist should fear. Moreover, as anyone who has spent a modicum of time on the Internet knows, coarse language (or even threats) from strangers in a comment section is mere bluster. There is no evidence that [REDACTED]'s safety has actually been threatened by anyone based on this matter. Moreover, her claims that she will be mentally undone by the publicity of the case are unfounded and contrary to her prior behavior, which includes her own publication of

her allegations.

**E. Columbia Has Mischaracterized The Complaint**

Contrary to Columbia's claim, there are no "salacious allegations" in the Complaint. Rather, there are statements of fact based upon hard evidence provided to Columbia and explicitly referenced in the Complaint. [redacted] did in fact beg Ben for sex – it is difficult to conjure a better word to describe 29 recorded requests for sex in a 30-minute period. *See* Complaint at ¶ 7. As noted in the Complaint and captured on the audio recording provided to Columbia, [redacted] refused to take "no" for an answer and became upset with Ben when he refused to have sex with her. *See, e.g.*, Complaint at ¶¶ 280, 286, 289, 312-13, 326, 337. The Complaint, relying on the uncontroverted audio recording and transcript of the audio recording provided to Columbia, asserts that [redacted]s claim that Ben tried to have sex with her was a lie. *See, e.g.*, Complaint at ¶¶ 3, 337, 343-44. Photographic, video, and audio evidence provided to Columbia and clearly noted in the Complaint indicates that [redacted] was not incapacitated and that she fabricated her claims against Ben. *See, e.g.*, Complaint at ¶¶ 294-300. While Columbia may find Ben's recounting of his interaction with [redacted] titillating, the recitation of Ben's unnerving experience is soundly grounded in provable fact.

**F. [redacted] Has Destroyed Any Right To Privacy She May Have Had**

[redacted] has abandoned her right to privacy in this matter. Contrary to Columbia's assertions and her sworn declaration, [redacted] did not maintain the confidentiality of the Gender-Based Misconduct proceedings or Ben's identity. While Columbia's investigation was ongoing, [redacted] freely spoke about her allegations to anyone who would listen, including virtual strangers like [redacted] [redacted] Declaration at ¶¶ 2-3, 6. In fact, [redacted] had "been telling everybody" at CJS about her allegations against Ben and the actions Columbia took against Ben.

[redacted] Declaration at ¶¶ 5-6. [redacted] reveled in the fact that she was able to control Ben's movements, bragging about her power to deny Ben access to school-sponsored professional events. [redacted] Declaration at ¶ 3. At a happy hour on December 6, 2016, she remarked, "Yeah, [Ben] can't come here." [redacted] Declaration at ¶ 3. [redacted] also created additional witnesses and encouraged them to share her false allegations with others. Complaint at ¶¶ 7, 346, 370, 374, 376, 473-74, 543-44.

After she prevailed on her false accusations, [redacted] published a highly symbolic post on Facebook and invited classmates to "go drinking" with her to celebrate. Complaint at ¶¶ 725-26. Additionally, Ben received a consolatory phone call from classmate [redacted] only minutes after the Gender-Based Misconduct Decision was issued. Complaint at ¶ 724. [redacted] informed Ben that [redacted] was broadcasting Ben's expulsion to their classmates and encouraged them to join her in celebratory drinks. Complaint at ¶ 725. Further, [redacted]'s recent threats to ruin Ben's career show that, if given the opportunity, [redacted] will weaponize her anonymity by using it as a sword rather than a shield. *See* Complaint at ¶¶ 820-22. [redacted] has indicated that she is "waiting to pounce" and reveal her allegations against Ben to any potential employers. Complaint at ¶¶ 821-22. These are not actions consistent with an individual seeking to protect her own privacy. Nor is this behavior consistent with an "innocent" third party worthy of the extreme remedy that Columbia seeks.

**G. [redacted] Is Not A Sexual Assault Victim Under New York Law**

Columbia's repeated assertion that [redacted] is a sexual assault victim is directly contradicted by the allegations contained in the Complaint. Evidence provided to Columbia and referenced in or included as part of the Complaint shows that [redacted] is not a victim of sexual assault. On the contrary, an audio recording shows that she was sexually aggressive and actually

assaulted Ben. Any argument based on [redacted]'s alleged status as a sexual assault victim must fail, as there are no facts in evidence to support a finding that [redacted] was sexually assaulted.

Columbia relies on Section 50-b of the New York Civil Rights Law (NYCRL) to support its contention that [redacted], as a victim of sexual assault, is entitled to privacy this matter. However, Section 50-b of the NYCRL defines sexual assault based on various provisions of the New York Penal Law. *See* N.Y. Civ. Rights Law § 50-b(1) (sex offense defined using "article one hundred thirty or section 255.25, 255.26 or 255.27 of the penal law"). Invocation of the New York Penal Law indicates the need for a criminal finding in order to trigger the protections of Section 50-b of the NYCRL. [redacted] has not made a criminal complaint against Ben. The People of the State of New York has not initiated any criminal proceedings against Ben. The People of the State of New York have not found Ben guilty of sexually assaulting [redacted]. Accordingly, Columbia has not established that [redacted] is a sexual assault victim pursuant to Section 50-b of the NYCRL.[6]

**H. The Statutory Authority Columbia Relies Upon Is Irrelevant**

The statutory provisions that Columbia references are immaterial to this case. As noted in Section G., *supra*, Section 50-b of the NYCRL is inapplicable to the instant matter. Moreover, neither Ben nor this Court has any obligation to keep student records or names

[6] Columbia's reliance on *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) is also misplaced, as the parenthetical following the citation in Columbia's brief is a disingenuous recounting of the decision. *See* Columbia Brief at 12. The Court's holding does not, as Columbia asserts, grant universities the power to determine who is a sexual assault victim for the purposes of permitting the use of pseudonyms in federal court. In fact, the word "victim" does not appear anywhere in the opinion. Regardless, the facts of the case are eminently distinguishable. The plaintiff sought the use of a pseudonym for himself and requested a protective order prohibiting the use of his real name or the real names of his accuser and the other students involved in the university disciplinary process. *Doe v. Alger*, 317 F.R.D. at 39. The Court ultimately granted the plaintiff's motion after performing a detailed analysis of the relevant Fourth Circuit test for permitting the use of a pseudonym. *Id.* at 39-42. Notably, there is no indication that the plaintiff's accuser violated the university's confidentiality provisions and spoke openly about her allegations. Nor is there any evidence that the accuser wielded the university's one-sided application of its policies as a cudgel or threatened to destroy the plaintiff's career prospects, as is the case in this matter. Moreover, the case deals with the use of pseudonyms, not redactions. *Doe v. Alger* is simply not applicable to the instant matter.

confidential pursuant to the Federal Education Rights and Privacy Act ("FERPA"). *See* 20 U.S.C. § 1232g (preventing **educational agencies or institutions** from releasing educational records). Indeed, if Ben wishes to reproduce his own educational records, he is free to waive his privilege and absolve Columbia of its duties to him under FERPA.

Section 6448 of the New York Education Law and New York Civil Practice Law and Rule 3016(i) cannot be used to support Columbia's position. Nowhere in the Complaint does Ben ask the Court to vacate or modify Columbia's Gender-Based Misconduct decision. Accordingly, there is no basis for barring the use of student names in the Complaint. *See* N.Y. Educ. L. § 6448; CPLR R 3016(i). Columbia even admits that Ben is not "technically" seeking to vacate the decision before incorrectly asserting that the relief sought pursuant to his breach of contract cause of action or, alternatively, his promissory estoppel cause of action is "tantamount to vacating the underlying disciplinary finding." Columbia Brief at 11, Note 10. If Ben is **not** "technically" seeking to vacate the Gender-Based Misconduct decision, then he is **not** seeking to vacate the Gender-Based Misconduct decision – full stop. Columbia is not permitted to read additional allegations into the breach of contract and promissory estoppel causes of action clearly delineated in the Complaint.

The Complaint seeks the award of Ben's diploma based on Columbia's breach of contract. Complaint at ¶¶ 929-37. In the alternative, Ben seeks the same relief under a theory of promissory estoppel. Complaint at ¶¶ 948-57. Ben completed all the necessary coursework and paid all of the necessary tuition to receive his diploma. Complaint at ¶¶ 932-33, 951-52. Despite these uncontroverted facts, Columbia refuses to provide his diploma, breaching their agreement with and/or promises to Ben. Complaint at ¶¶ 934-35, 953-54. None of the allegations specific to Ben's breach of contract or promissory estoppel causes of action question the outcome of the

Gender-Based Misconduct process or seek to vacate or modify the Gender-Based Misconduct decision. Thus, neither Section 6448 of the New York Education Law nor New York Civil Practice Law and Rule 3016(i) apply to this case.

**I. The Gender-Based Misconduct Policy Is Irrelevant And Columbia Has Denigrated Any Potential Privacy Interests It Could Plausibly Assert**

Columbia's reliance on the Gender-Based Misconduct Policy is misplaced. Neither Ben nor this Court are obligated to keep the identity of participants in Columbia's Gender-Based Misconduct process confidential pursuant to the Gender-Based Misconduct Policy. Accordingly, the Gender-Based Misconduct Policy is irrelevant to the Court's analysis.

Moreover, as described below, Columbia's assertion that it has a strong interest in ensuring the privacy of [redacted] and the student witnesses is undermined by [redacted]'s sworn statement, Columbia's own conduct, and the [redacted] Declaration. Any assertion that [redacted] still has a valid expectation of privacy based on the Gender-Based Misconduct Policy is similarly eviscerated by the aforementioned documents and conduct, as well as [redacted]'s own behavior.

Columbia, through Serena Barnett, stated that [redacted] was free to ignore the confidentiality requirements of the Gender-Based Misconduct Policy. Complaint at ¶ 478. Ben and his prior counsel advised Columbia on multiple occasions that [redacted] was not complying with the confidentially obligations enacted by Columbia and requested that Columbia enforce its own policies. Complaint at ¶¶ 406-8, 415-16, 472, 479. Shockingly, Columbia endorsed [redacted]'s behavior and refused to enforce its own confidentiality requirements. Complaint at ¶¶ 19, 409, 477-78, 480, 911. [redacted] even admits in her declaration that she was permitted to discuss the "underlying events" throughout the Gender-Based Misconduct process and that she availed herself of this one-sided privilege. [redacted] Declaration at ¶¶ 8-9. These actions are not consistent with a university seeking to maintain the confidential sanctity of its disciplinary

process. Accordingly, Columbia is estopped from asserting that the confidentiality requirements of the Gender-Based Misconduct Policy support limiting public access to the Complaint in any way, shape, or form.

Similarly, [redacted]'s claims that she complied with Columbia's Gender-Based Misconduct process and wished to respect the integrity and privacy of the proceedings are simply not true. [redacted] admits that she spoke about the proceedings with "friends and individuals." [redacted] Declaration at ¶ 9. Contrary to her contention that her discussion with people unrelated to the case was limited, [redacted] was in fact "telling everybody" at CJS about her claims. [redacted] Declaration at ¶¶ 3, 5-6. She made a mockery of Columbia's process when she bragged about her ability to prevent Ben from socializing with his classmates and future colleagues at school-sponsored professional events. [redacted] Declaration at ¶ 3. [redacted]'s words and deeds show that there is no basis for this Court to grant the relief Columbia seeks.

## CONCLUSION

For the reasons set forth above, Columbia's Motion to Redact the Complaint should be denied, and the hyperlink to ECF Document 1 should be reactivated so that the unredacted Complaint is once again publicly available.

Dated: New York, New York
June 11, 2019

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*

By: ______________________
Kimberly C. Lau
James E. Figliozzi
555 Fifth Avenue
New York, New York 10017
(212) 984-7700
klau@wbny.com
jfigliozzi@wbny.com