# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

**Direct Dial: (212) 763-0884**
**Direct Email: rkaplan@kaplanhecker.com**

July 15, 2019

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re: *Feibleman v. The Trustees of Columbia University in the City of New York*,
        No. 1:19-cv-4327 (VEC) (KHP) (S.D.N.Y.)

Dear Judge Caproni:

    We represent Defendant The Trustees of Columbia University in the City of New York ("Columbia") in the above-captioned matter. Pursuant to Section 5(A) of Your Honor's Individual Practices in Civil Cases, we write to request permission to file Exhibit B to the Declaration of Thomas A. Rawlinson in Support of Defendant The Trustees of Columbia University in the City of New York's Partial Motion to Dismiss the Complaint (the "Rawlinson Declaration") under seal.[1] Plaintiff does not object to the proposed sealing.

    *   *   *

    Exhibit B is an extremely sensitive element of this case: Plaintiff's surreptitious, 30-minute audio recording of interactions between Plaintiff and Jane Doe, alone in Doe's bedroom, immediately following the sexual assault here at issue.[2] Columbia submits the recording because, unlike a transcript, the audio captures the sounds and details of the interactions between Plaintiff and Doe, as well as Doe's mental state surrounding Plaintiff's misconduct.[3] But the recording also

---

[1] The Rawlinson Declaration in Support of Columbia's Motion to Dismiss the Complaint is being filed via ECF without a copy of Exhibit B pending resolution of the instant request. In compliance with Section 5(A)(i) of Your Honor's Individual Practices in Civil Cases, a copy of Exhibit B will be emailed to Chambers.

[2] Although Plaintiff denies that any sexual assault occurred, he acknowledges that Exhibit B is "a record of exactly what happened" during the sexual encounter between himself and Jane Doe in Jane Doe's apartment. (Compl. ¶ 305.) There is, therefore, no dispute as to the authenticity of the recording. And as the Court has acknowledged, there is a "sustained finding" by the University "of a sexual assault" under the University's policies. (*See* June 28, 2019 Conference Tr. 6:2-3.)

[3] Indeed, there are important elements of the audio recording that come through most clearly when the recording is listened to rather than read. If a transcript of the recording would aid the Court, however, Columbia is prepared

**Hon. Valerie E. Caproni**
**July 15, 2019**
**Page 2 of 4**

captures the identifiable sound of Jane Doe's voice and the repeated use by Plaintiff of Jane Doe's first name.

This Court has already recognized that Jane Doe's privacy interests outweigh the public interest in knowing her identity at this point in the litigation. (*See* ECF 43; June 28, 2019 Conference Tr. 5:19-6:12.) Therefore, consistent with the Court's ruling on the pseudonymization of the Complaint (ECF 43), the privacy interests at stake unquestionably merit sealing this portion of the record at this time.

The presumption of open access to judicial records may yield when a court finds "that higher values necessitate a narrowly tailored sealing." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006); *see also United States v. Silver*, No. 15-cr-93, 2016 WL 1572993, at *3 (S.D.N.Y. Apr. 14, 2016) (Caproni, J.) (citation omitted) (same). Even where a weighty presumption of access applies, a court must balance competing considerations, including but not limited to "the privacy interests of those resisting disclosure." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (citations omitted). Indeed, the "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (citation omitted).

Following earlier briefing on this point (ECF 25, 34), including a submission from Jane Doe regarding her own privacy interests (ECF 26-1), the Court has already concluded that Doe's "identity is not critical . . . to a public understanding of the case" and that "her privacy interests outweigh[] the public's interest in knowing her identity at this point." (June 28, 2019 Conference Tr. 6:5-8.) Because that determination would be upended if the audio recording exhibit were made public at the motion to dismiss stage, the Court's earlier analysis applies here with full force and requires that the recording—which includes Doe's voice and the unmistakable use of her first name—be sealed. (*See* ECF 43.)

Any doubt on that score is resolved by a further consideration that supports sealing: the fact that this recording captures the period immediately following the sexual misconduct at issue. It is difficult to imagine any subject matter more private. *See Amodeo*, 71 F.3d at 1051 ("In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. . . . [E]mbarrassing conduct with no public ramifications . . . will weigh more heavily against access than conduct affecting a substantial portion of the public.") As Columbia set forth in its Memorandum of Law in Support of the Motion of Defendant The Trustees of Columbia University in the City of New York to Redact the Complaint, courts protect privacy interests in "matters of the utmost intimacy, including sexual assault." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006) (collecting cases). (ECF 25 at 8.[4]) Those interests are particularly acute where, as here, the

---

to provide one upon request.

[4] Columbia incorporates herein the relevant arguments and supporting case law set forth in ECF 25.

**Hon. Valerie E. Caproni**
**July 15, 2019**
**Page 3 of 4**

litigation will "focus upon, and has already described in detail, extraordinarily intimate details of a sexual encounter." *Doe v. Univ. of Miss.*, No. 3:18-cv-138, 2018 WL 1703013, at *2 (S.D. Miss. Apr. 6, 2018).

It is no surprise, therefore, that courts routinely seal audio records that impose even less directly upon the privacy of victims than the audio recording involved here. *See, e.g.*, *Ross v. Univ. of Tulsa*, 225 F. Supp. 3d 1254, 1265 (N.D. Okla. 2016) (noting an audio recording of a sexual assault victim's interview "only appeared in the Court record under seal" and finding "disclosure . . . to be the most serious violation" of a protective order "due to the sensitive and private nature of" the contents of the audio recording); *Alexander v. Skolnik*, No. 3:10-cv-0584, 2011 WL 2174980, at *4 n.3 (D. Nev. June 3, 2011) (maintaining entire CD under seal where it "include[d] the interview of the confidential informant" regarding an in-prison sexual assault). Indeed, courts have routinely found far less sensitive privacy interests to merit sealing. *See, e.g.*, *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 707 (S.D.N.Y. 2017) ("[E]xhibits detailing internal employee evaluations would likely cause embarrassment to third parties and . . . the third parties' privacy interests outweigh the public's interest in disclosure." (citation omitted)); *Doe v. Apfel*, No. 98-cv-182, 1999 WL 182669, at *3 (E.D.N.Y. Mar. 22, 1999) ("a lengthy, detailed, and potentially embarrassing description of the illnesses from which Doe suffers" justified sealing). It follows *a fortiori* from this reasoning that Exhibit B to the Rawlinson Declaration should be sealed at this stage of the proceedings.

The harms that could flow from public access to Exhibit B are significant. As the Court has already recognized with respect to unredacted names in the Complaint, allowing disclosure of Doe's identity—which public access to the Exhibit B recording would inevitably do—would threaten further injury to Doe and would chill other victims and witnesses of sexual misconduct from coming forward in the future. (*See* June 28, 2019 Conference Tr. 5:19-6:8.) In addition, public access to Exhibit B—a surreptitious recording of Jane Doe made to obtain a record that, if disseminated, could embarrass and humiliate her—risks amplifying the harm she has already suffered. *Cf. Paroline v. United States*, 572 U.S. 434, 441 (2014) ("[The] crimes [of child sexual abuse] were compounded by the distribution of images of [the victim's] abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated."). That Exhibit B is an audio recording only militates further in favor of sealing at this time to avoid the additional risk of abuse. *See, e.g.*, *Burgess v. Town of Wallingford*, No. 3:11-cv-1129, 2012 WL 4344194, at *8 (D. Conn. Sept. 21, 2012) ("As numerous courts have observed, in this age of advanced technology, publication of audio recordings is rife with potential for abuse." (citation omitted)).

Finally, sealing Exhibit B will impede neither the public's ability to understand the case nor the Court's ability to exercise its powers. The Court will not be hindered from describing the recording's contents and effect, as Columbia has done in its memorandum of law in support of its Partial Motion to Dismiss the Complaint. Accordingly, the sealing request is "narrowly tailored" to protect Jane Doe's privacy interests while respecting the First Amendment. *Lugosch*, 435 F.3d at 126.

Hon. Valerie E. Caproni
July 15, 2019
Page 4 of 4

For the foregoing reasons, Columbia requests that Exhibit B to the Rawlinson Declaration be filed under seal at this time.

Respectfully submitted,

Roberta A. Kaplan

cc:  Counsel of Record