```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BEN FEIBLEMAN,

                Plaintiff,

        v.                              19 Civ. 4327 (VEC)

THE TRUSTEE OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

                Defendant.
                                        Conference
------------------------------x
                                        New York, N.Y.
                                        June 28, 2019
                                        10:00 a.m.

Before:

                HON. VALERIE E. CAPRONI,

                                        District Judge


                        APPEARANCES

WARSHAW BURSTEIN, LLP
     Attorneys for Plaintiff
BY:  KIMBERLY C. LAU
     JAMES E. FIGLIOZZI


KAPLAN HECKER & FINK, LLP
     Attorney for Defendant
BY:  ROBERTA A KAPLAN

PAUL WEISS
     Attorney for Defendant
BY:  MICHELE S. HIRSHMAN
```

1           (Case called)
2           THE COURT:  State your appearances for the record.
3           MS. LAU:  Good morning, your Honor.
4           Kimberly Lau, for Warshaw Burstein, for plaintiff.
5           MR. FIGLIOZZI:  James Figliozzi, Warshaw Burstein, for
6   plaintiff.
7           MS. KAPLAN:  Roberta Kaplan, Kaplan Hecker, for
8   Columbia.
9           MS. HIRSHMAN:  Michele Hirshman, Paul Weiss, on behalf
10  of the defendant.
11          THE COURT:  Okay.  Let's start with some ground rules
12  about what I expect.  I expect lawyers to act professionally
13  and collegially with discovery.  I do not expect snarky
14  letters, so stop it.  That's number one.
15          Number two, can you explain to me why it's appropriate
16  to use the parties' first names?  These are adults.
17          What were you thinking?
18          MS. LAU:  We can use their last names going forward,
19  your Honor.
20          THE COURT:  You can.  But seriously, what were you
21  thinking?  Why was it appropriate to call these people by their
22  first names as though they're children?
23          MS. LAU:  They're students, and so we weren't really
24  thinking about it as any other reason.  They're students.
25          THE COURT:  Okay.  Please don't do that anymore.

1    Okay. There's a pending motion. You've moved to
2 unredact?
3    MS. LAU: Correct. We've opposed the motion to
4 redact.
5    THE COURT: Okay. Talk to me.
6    MS. LAU: Your Honor, this is not your typical case
7 where there is an alleged victim of a sexual misconduct in this
8 case. In our case --
9    THE COURT: Well, that's your view.
10    MS. LAU: Correct. And --
11    THE COURT: She has a different view.
12    MS. LAU: She does have a different view. She's not a
13 party to the case. The complaint outlines very detailed, the
14 reasons why it was a heavily documented case that actually
15 supported the fact that she was not a sexual misconduct victim.
16    There are other reasons that are even more compelling
17 here, your Honor, and that would be that she has come to this
18 situation with unclean hands. She has --
19    THE COURT: Well, she hasn't come to this situation at
20 all. You brought her to this situation, your client has.
21    MS. LAU: What I really mean, your Honor, is that
22 during the disciplinary process, she publicized the matter to
23 many students at the Columbia Journalism School and others that
24 we may not even know about, but to our knowledge, others at
25 Columbia school, as is supported by the affidavit or

1  declaration of Elizabeth Vanmitri.  And in addition to that,

2  she threatened Mr. Feibleman with actually pursuing him, once

3  she find out she has a job, to get him fired.  And so for those

4  reasons, it makes it a very unique case.

5            She does come with unclean hands for the argument that

6  she would be able to be protected by a pseudonym or to have her

7  name redacted in the complaint, because in this instance, she

8  intends to use confidentiality as a sword and not a shield.

9            THE COURT:  Okay.

10           MS. KAPLAN:  Yes, your Honor.

11           I'm sure you're aware of this.  Filing these cases

12  with pseudonymous names is routine in this district.  I can

13  speak to this directly because Columbia feels like it gets sued

14  all the time.  And this is the first case we've ever had where

15  a complaint was filed not pseudonymous.

16           The courts routinely apply the factors.  And in the

17  sealed case it doesn't really matter whether it's redaction or

18  pseudonymous.  We just thought it was easier to redact, but

19  it's up to the plaintiff.  But those factors all apply here.

20  Judge, as we also cited in our brief that when we have victims

21  of sexual assault, it's very important to protect their

22  privacy.  The policy for Columbia is very important too because

23  we want to encourage victims and witnesses to cooperate with

24  our line proceedings.  And if a student is of the opinion or is

25  concerned that by doing this, if the ruling goes against the

1   person they're complaining about and then that person sues,

2   it's all going to be exposed publicly in federal court, people

3   aren't going to come forward.  And there's massive amount of

4   social science research that says that.  So it's very important

5   to Columbia.

6            As for what was said and what was not said, that's

7   dealt with in the affidavits.  We submitted an affidavit from

8   Jane Doe.  But basically what happens is when these proceedings

9   are going on, Columbia issues a no-contact directive.  And

10  sometimes the person who -- you know, the respondent walks into

11  a bar or something, and it's very common, which is what

12  happened here, for the complainant to say, He's not supposed to

13  be in here.  That's very different, obviously, your Honor, from

14  having it flashed on the pages of the New York Post or on

15  Twitter or whatever else will happen if this all comes out.

16           MS. LAU:  Your Honor, we don't believe that there will

17  be any harm to future reports or future witness cooperation

18  because this is such a unique case.  She broadcasted this.

19           THE COURT:  But you know what?  Here's the thing:

20  Jane Doe, some student -- or John Doe, some student -- who has

21  been assaulted doesn't know that.  What they know, or what they

22  will know, is this was a person who brought a complaint and now

23  all of a sudden their name is flashed all over everywhere

24  because the alleged perpetrator sued them after a sustained

25  finding.

1          So I'm not sure who's the moving party -- I guess you
2   are -- we're keeping it anonymized or redacted as of now.  What
3   I've got is a sustained finding of a sexual assault.  Plaintiff
4   disagrees.  These are his allegations, I understand that.
5   That's what this lawsuit is all about.  Her identity is not
6   critical under *Lugo* to a public understanding of the case and,
7   therefore, I think her privacy interests outweighs the public's
8   interest in knowing her identity at this point.  That may well
9   change.  If this case gets past summary judgment, I'm not sure
10  how this case can be tried without disclosure of who the
11  parties are.  But for now, it's going to stay redacted or
12  anonymized or whatever.
13         I know that you wanted to do it with fake names,
14  right?
15         MS. LAU:  I think it would probably be better if there
16  was a Jane Doe so that we can differentiate between her and the
17  witnesses.  So, a pure redaction throughout the entire
18  complaint, probably not.
19         THE COURT:  Okay.  I'm indifferent on that.
20         So, how long do you want to resubmit?
21         MS. LAU:  We would ask for one week.
22         THE COURT:  One week, it is.  That's July 5th.  That's
23  a holiday.
24         MS. LAU:  Actually, two weeks.
25         THE COURT:  Why don't we go to the following Monday.

1    Two weeks?  Are you going to be out next week, essentially?

2            MR. FIGLIOZZI:  Yes.  Two weeks.

3            THE COURT:  Okay.  That takes us to July 12th.  Okay.

4    Let's do July 12th.  And at the same time, you can convert

5    first names to surnames.

6            Okay.  The defendant has made a motion to dismiss

7    certain counts.

8            MS. KAPLAN:  Haven't yet made it, your Honor.

9            THE COURT:  You're going to.  But you're anticipating

10   that this is going to affect the scope of discovery, so tell me

11   how.

12           MS. KAPLAN:  So, there are basically two kinds --

13   well, let's take Title 9.  There are two kinds of Title 9

14   claims that are asserted here.  One is an erroneous outcome

15   that Columbia reached the wrong results in the case.  The other

16   is that what decisions that will be made, including the

17   ultimate punishment, was selective; it was based on gender.

18   We're thinking really hard, your Honor, about how to try to

19   narrow this case because we don't want to do a do-over, if we

20   can avoid it, of the very extensive proceedings below.  And

21   we're thinking that it would certainly narrow the case if we

22   can avoid that.

23           And so, what we'd like to do -- it's a pretty narrow

24   motion, your Honor -- is submit a partial motion to dismiss the

25   erroneous outcome claim, because, there, really the factual

1    issues are pretty clear and pretty confined, and simple really.

2    He admits -- there's no dispute -- that he had sexual contact

3    with Jane Doe on the evening in question.  He does not dispute

4    that.  But what he disputes is whether she was capable of

5    giving consent.  And the question -- and this is an unusual

6    case for this reason.  He refers in the complaint -- and I'd

7    refer your Honor to paragraph 306 and the paragraphs that

8    follow -- to a tape that he, himself, took on his iPhone that

9    lasted about half an hour during the incident in question.  And

10   what we would respectfully submit, your Honor, is if you listen

11   to that tape, no one can plausibly conclude that she was

12   anything other than incapable of giving her consent.

13            And once you have those two facts that, A, he admits

14   he did it, and B, that you can hear in the tape that she was --

15   then the erroneous outcome should get out of the case, and then

16   we're talking about the alleged gender bias of Columbia.  We

17   obviously thinks there is none, but we understand there needs

18   to be fact-finding on that.

19            By the contract claim --

20            THE COURT:  But how would that -- I hear you.

21            And I'll give you an opportunity to respond.

22            But let's assume that's right and that I listened to

23   the tape and I concur.  How does that change the scope of

24   discovery in the case?  My only question at this point is

25   whether I enter a case management plan and send you guys off to

1    start discovery, or don't have discovery and deal with a motion
2    to dismiss.
3            MS. KAPLAN:  We're ready to proceed with discovery on
4    the gender bias part of it.  So, there are really two broad
5    buckets of discovery.  The first bucket is:  Did it happen?
6    Was she capable of giving consent?  Did he violate the policy?
7            THE COURT:  Is there a breach of rights.
8            MS. KAPLAN:  Right.  And there are all kinds of
9    witnesses.  That's big case.  That's like another mini-trial.
10           THE COURT:  Well, is that really -- I mean, Title 9
11   requires me to reconsider whether Columbia's disciplinary
12   process got it right?
13           MS. LAU:  Yes, your Honor.
14           The first prong would be to determine under an
15   erroneous outcome claim that you would have to determine
16   whether did we show enough evidence here, that they got it
17   wrong.
18           THE COURT:  So I sit as a super appeal Court over the
19   University's disciplinary's process?
20           MS. LAU:  In one respect, yes, because then the second
21   prong kicks in, and whether that erroneous decision was made as
22   a result of his gender.  So unless both are met, there is no
23   discrimination claim.
24           THE COURT:  Okay.  Okay.
25           MS. KAPLAN:  So, your Honor, if you agree with us that

1  it was erroneous, at least then we won't have to decide gender
2  bias.
3           On selective enforcement, it was not given the degree
4  based on his gender, that we concede we don't have a motion to
5  dismiss on.  But then we're looking at complete separate set of
6  facts.  We're looking at other cases, what prong this does, you
7  know, da da da da da.  It's a much more confined scope of
8  discovery.  And that's why we think this motion could be very
9  effective in making the case more efficient going forward.
10          THE COURT:  Is the discovery on the prong they want to
11 dismiss?  That is, the gender bias, is that discovery really
12 just a record on appeal -- I'm sorry, the record that was in
13 front of the disciplinary committee?
14          MS. LAU:  Actually the record before the disciplinary
15 committee is part of the erroneous outcome prong.
16          THE COURT:  Right.
17          MS. LAU:  And so that would be what your Honor would
18 look at.
19          As far as the records from statistics of their history
20 in deciding these cases, that would be informative of the
21 gender discrimination prong, which would be equally applicable
22 to both the erroneous outcome claim and the selective
23 enforcement claim.
24          THE COURT:  Do you agree with that?
25          MS. KAPLAN:  Not entirely.


1           One thing I'm not hearing from my friend on the left
2    is, I presume on the erroneous outcome claim she would want to
3    take the deposition, for example, of Jane Doe.
4           THE COURT:  I would think so.
5           MS. KAPLAN:  Right.
6           And so that's the kind of thing, if you agree with
7    us -- I'm not saying -- we hope you do -- that's what we could
8    avoid.
9           THE COURT:  Okay.  Do you object to bifurcating
10   discovery at this point?  So for the claims that are going to
11   be subject to the motion to dismiss, you'll delay discovery and
12   proceed with discovery on the balance?
13          MS. LAU:  If I can have a moment to confer,
14   your Honor?
15          THE COURT:  Sure.
16          MS. LAU:  Your Honor, I think that while we would want
17   to do what your Honor thinks is as best in how to direct the
18   discovery in this case, we certainly are concerned about
19   delaying and adding more delay to the entire process as a
20   whole.  Already as it is, we don't feel that we are in a good
21   position to start until we receive Columbia's response to the
22   complaint, which is not even due until July 15.  So, having a
23   bifurcated discovery track would only occasion more delay.
24          And furthermore, there may, in fact, be some
25   overlapping discovery that we would be receiving from some of


1  the same witnesses on our erroneous outcome prong.

2           THE COURT:  Overlapping is fine.  The question is the
3  discovery that would be unique to the gender discrimination
4  claim.

5           MS. LAU:  Right.  I mean, we would have to --

6           THE COURT:  Look, what I'm trying to postpone or
7  obviate is you deposing the victim -- the alleged victim when
8  the motion to dismiss is pending.  Because, I don't know when
9  I'm going to decide that.  I mean, it hasn't even been made
10 yet.

11          MS. LAU:  Uh-huh.  I mean, I think it's going to be
12 putting us in a tough position because we believe she would
13 have other information that's relevant for the case as well,
14 especially on the selective enforcement claim.

15          THE COURT:  That's going to be a difficult road to
16 hoe, but we can get to that bridge when we get to it.

17          So, I'm inclined to bifurcate off the discovery that
18 is unique to the gender discrimination claim at this point.
19 After I see the motion to dismiss, I may change my mind and
20 say:  Forget it, just proceed with everything.  But, for now,
21 that's the way we're going to go.

22          Okay.  Your proposed case management plan has a
23 provision for HIPPA releases.  Who wants HIPPA releases?

24          MS. KAPLAN:  They allege their damages claim is about
25 PTSD and medical damages.

1   THE COURT: Okay. Has he been treated?

2   MS. LAU: He is being treated.

3   THE COURT: Okay. Just make sure that you provide HIPPA releases for all the appropriate treaters. That tends to be a delay, that you miss some. So, cross-examine your client on who's exactly treating him; if he's getting medication, where he's getting the medication, all of that.

Okay. Fact discovery. So, for the piece that's going forward, you're indicating that you can get your fact discovery done by September 26th. Is that a reasonable deadline? Let me just say that it does not seem reasonable to me. It seems highly unlikely that you'll get it done by then.

Okay. So, you've all proposed a date that's unrealistic.

The notes -- just to be clear, it says 90 days unless the case presents unique complexity. So you can always make a pitch that it's unusual and complex. This one strikes me that it qualifies.

THE COURT: How long do you really need?

MS. KAPLAN: I'm thinking December.

THE COURT: Does that sound right?

MS. LAU: At the earliest.

THE COURT: Is there going to be a bunch of ESI that's going to have to be produced?

MS. LAU: Maybe to some extent on our end, and

1    certainly on Columbia's end, I would imagine.

2            MS. KAPLAN: I presume they will ask us for that,
3    your Honor.

4            THE COURT: Okay. I think December may be optimistic.
5    So, I'm going to give you until the end of January, which
6    should be more than enough, because I'm assuming that Columbia
7    has been sued on these before, so that they've got some kind of
8    reasonable record-keeping.

9            MS. KAPLAN: We've never gone into discovery before,
10   but we do have very good record-keeping.

11           THE COURT: All right. January 31, 2020, is your fact
12   discovery deadline. Because that is so far off and because of
13   the history of this case, I'm going to require monthly joint
14   discovery reports. And I want to know what's going on, if
15   there are any sort of hitches in the road, so that I see them
16   early. So your first report is due the first business day of
17   August and, thereafter, on the first business day of every
18   month.

19           Try to work out your discovery disputes between you.
20   If you can't, get on the phone together and call chambers.
21   Most of the time I can resolve it with a phone call. You've
22   got a lot of time, but you need to sit down together, meet,
23   plan, schedule, figure out who's doing what, when, so
24   everything can get done by January 31.

25           Your letters should tell me if you're letting problems

fester. But I'm telling you, don't let problems fester. Don't come to me in January and tell me that you're not done and tell me that because they haven't given you something.

Is there likely to be expert discovery in this case statistical evidence? Maybe?

MS. LAU: Yes, your Honor.

THE COURT: Yes?

MS. KAPLAN: Yes.

THE COURT: Okay. So, January.

Is two months from the end of fact discovery sufficient?

MS. KAPLAN: I think so, your Honor.

MS. LAU: Yes, your Honor.

THE COURT: Okay. So, March 31.

Okay. And the defendant's going to make a motion to dismiss; their motion is due July 15. The plaintiffs can either respond to the motion to dismiss or you can amend. Don't do both. If you file an amended complaint, I'll dismiss the motion to dismiss so we can start over again. Hopefully you can solve whatever problems they're alleging.

All right. Your letter, item 35B, I did not understand. I wasn't sure what you were telling me on five.

Are you telling me that the deadlines you proposed were unreasonable and you wanted longer deadlines?

MS. LAU: Yes.

1              MR. FIGLIOZZI:  That's our position.

2              THE COURT:  Okay.  So that's been fixed.  Defendant's
3    motion to dismiss is due July 15.

4              How long do you want to respond to it?

5              MS. LAU:  Two months, your Honor.

6              THE COURT:  Two months?

7              MS. LAU:  Your Honor, we're going to be on trial in
8    Colorado in late July.

9              THE COURT:  How long is that trial?

10             MS. LAU:  It's a bench trial, so it's a few days.  I
11   mean --

12             THE COURT:  Oh, okay.

13             MS. LAU:  Yeah.

14             THE COURT:  All right.  How about I give you until the
15   end of August?  So that will be till August 30th.  Again, you
16   can amend or respond.

17             MS. LAU:  Thank you, your Honor.

18             THE COURT:  How long do you want to reply?

19             MS. KAPLAN:  Three weeks, your Honor.

20             THE COURT:  That's fine.  September 20th.  The Jewish
21   holidays are late this year.

22             MS. KAPLAN:  That will be fine.

23             THE COURT:  Judge Korman says they're never on time.
24   Sometimes they're early, sometimes they're late.

25             Okay.  So I will see you again after your fact

1    discovery is complete.  So that will be on January 31 of next
2    year, at 10:00 o'clock.
3              The parties at all interested in talking settlement?
4              MS. KAPLAN:  As we said in the letter, your Honor, we
5    are waiting for a response from the plaintiff.
6              THE COURT:  I'm looking at plaintiff.  Let me saw
7    this:  I don't care.  It's a matter of complete indifference to
8    me whether you want a settlement conference now or not.  My
9    practice is not to require parties to go to a settlement
10   conference unless both sides want to.  So, if you need to talk
11   to your client, that's fine.  If you want your referral, you're
12   assigned to Magistrate Judge Parker.  I'm happy to give you a
13   referral, but I don't want to do it if it's going to be wasting
14   her time.
15             MS. LAU:  Your Honor, I think it's too premature from
16   our end.
17             THE COURT:  Okay.  If that changes based on the course
18   of litigation in the case, just let me know at any time.  If
19   you drop me a joint letter and say you'd like a referral, I'm
20   happy to give it to you.
21             Anything further from the plaintiffs?
22             MS. LAU:  No, your Honor.
23             THE COURT:  Anything further from the defendants.
24             MS. KAPLAN:  No, your Honor.
25             THE COURT:  Thank all.

1              MS. LAU:  Thank you.
2           (Adjourned)