UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN FEIBLEMAN,<br><br>    **Plaintiff,**<br><br> **v.**<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>    **Defendant.** | Civil Action No.: 19-cv-04327-VEC |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COMPLAINT**

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*
*Ben Feibleman*
575 Lexington Avenue
New York, New York 10022
(212) 984-7700

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………......…………………..……...ii-iii

PRELIMINARY STATEMENT……………………………….…………...……………..….…..1

STATEMENT OF FACTS…………………………………………………………………………3

    I.      The Reception/Walk to Mary Smith's* Apartment……………………………....3

    II.    Mary Smith's* Apartment/The Roof/The Water Tower……………………………...3

    III.   The Walk to Complainant's Apartment/Complainant's Apartment…………………5

    IV.   Columbia's Faulty Process and Decisions…………………………………………....7

LEGAL STANDARD………………………………………………………………………………7

    I.      Motion to Dismiss…………………………………………………………………7

    II.    Erroneous Outcome………………………………………………………………....8

    III.   Breach of Contract……………………………………......……………………….8

    IV.   Promissory Estoppel………………………………………………………………9

ARGUMENT…………………………………………………………………………………....9

    I.      Columbia Routinely Misstates the Allegations Contained in the Complaint…………9

    II.    Columbia's Subpar Recitation of Legal Standards…………………………………..11

    III.   Columbia Has Failed to Address the Entire Scope of Plaintiff's Erroneous Outcome Cause of Action……………………………………………………………………....13

    IV.   Because the Complaint Adequately Explains Any Perceived Contradictions Between the Audio Recording and Plaintiff's Allegations, There is No Basis for Dismissing Plaintiff's Title IX Erroneous Outcome Cause of Action…………..14

    V.    Plaintiff Has Adequately Stated Causes of Action for Breach of Contract………….21

    VI.   In The Alternative, Plaintiff Has Adequately Stated Causes of Action for Promissory Estoppel………………………………………………………………....23

CONCLUSION…………………………………………………………………………..25

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page Number**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………………………………………...…..……………………..7

*Bailey v N.Y. Law Sch.*,
    2017 US Dist. LEXIS 212102 (S.D.N.Y. Dec. 27, 2017 Civ. Action No.
    16 Civ. 4283 (ER))…………………………...……………………………………………..12

*B.B. v. New Sch.*,
    2018 U.S. Dist. LEXIS 80068 (S.D.N.Y. Apr. 30, 2018 Civ. Action No.
    17 Civ. 8347 (AT)…………………...…………………………………..…………………8,12,13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)……………………………………...…..……………………..7

*Davis v. Monroe Cty. Bd. of Educ.*,
    526 U.S. 629 (1991)………………………………….…………………………….11,12

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)…………………………...……………….....……………..7,8

*Doe v. Syracuse Univ.*,
    2019 U.S. Dist. LEXIS 77580 (N.D.N.Y. May 8, 2019 Civ. Action No.
    5:18-CV-377)………………………………………………….…….……..9,22,23,24,25

*New Jersey v T. L. O.*,
    469 US 325 (1985)…………………………………………………………...…………..12

*Olsson v. Bd. of Higher Educ.*,
    49 N.Y.2d 408 (1980)……………………………………….....………………………….9

*Papelino v. Albany College of Pharm. of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)…………………………………….……….....…8,9,22,23,25

*Playboy Enterprises, Inc. v. Dumas*,
    960 F. Supp. 710 (S.D.N.Y. 1997)…………………………………………...…..…..13,14,23

*Prasad v. Cornell Univ.*,
    2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016 Civ. Action No.
    5:15-cv-322)……………………………………….……………………………14,17

*PrecisionIR Inc. v. Clepper*,
  693 F. Supp. 2d 286 (S.D.N.Y. 2010)…………………………………....……......13,14,23


*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*,
  2015 U.S. Dist. LEXIS 89926 (S.D.N.Y. Jul. 10, 2015 Civ. Action No.
  14-cv-9992 (SAS))……………………...…………..……………………………...……….24

*U.S. v. Yousef*,
  327 F.3d 56 (2d Cir. 2003)…………………………………………………………....13,14,23

*Yusuf v. Vassar College*,
  35 F.3d 709 (2d Cir. 1994)……………………………...…………....……..8,14,15,17,21

## STATUTES AND RULES

Fed. R. Civ. P. 8(a)(3)……………………………………………………………....…...……...23,24

Fed. R. Civ. P. 12(b)(6)…………..…………………...…………………………………………….7

## PRELIMINARY STATEMENT

Columbia's Motion to Dismiss depends, in large part[1], on a fundamentally unsound premise.  Columbia asserts that Plaintiff (1) created a recording that could be used to find him responsible for sexual assault; (2) lied on that recording; (3) provided that recording (which he knew contained lies) to Columbia; and (4) used the recording (which he knew contained lies) to support a costly lawsuit against Columbia without the benefit of a pseudonym at a time when the national zeitgeist supports a "guilty until proven innocent" standard for any man remotely connected to allegations of sexual misconduct.  To utilize one of Columbia's preferred phrases, these assertions are implausible in the extreme.

Plaintiff has clearly alleged that Columbia reached an erroneous outcome when it (1) found Plaintiff "responsible" for sexual harassment and sexual assault and (2) found Complainant "not responsible" for sexual harassment.  When viewed through an objective lens rather than Columbia's misleading and unfounded characterizations, the audio recording supports the allegations in the Complaint.  As detailed further below, the Complaint contains reasonable and clearly stated explanations for any perceived conflicts between the audio recording and Plaintiff's allegations.  Further clarifications are also provided within this Memorandum of Law.  The remaining related allegations in the Complaint, which Columbia does not deign to address, contain ample factual content that permits the Court to draw the reasonable inference that Columbia violated Title IX under an erroneous outcome theory.

Moreover, Columbia either lacks a clear understanding of its own policies or seeks to

---

[1] As further explained below, Columbia has also failed to provide this Court with a basis for dismissing Plaintiff's Third (Breach of Contract), Fourth (Breach of Contract), Fifth (Promissory Estoppel), and Sixth (Promissory Estoppel) Causes of Action.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

mislead the Court by repeatedly citing Complainant's alleged drunkenness as a reason for her inability to consent to sexual activity. Under the Gender-Based Misconduct Policy[2], simply being drunk does not mean that a person is incapable of consenting to sexual activity. Rather, a complainant must show objective and reasonably apparent signs of incapacitation beyond mere drunkenness such that a respondent knew or should have known that the complainant was incapacitated. As noted in the Complaint, Complainant displayed objective and reasonably apparent signs throughout the night in question indicating she had the capacity to consent to sexual activity. All of this behavior occurred before she supposedly "woke up" confused in her bed. Plaintiff stridently maintains that Complainant was not incapacitated at any point during the evening in question; however, even if she were, it would have been impossible for Plaintiff to actually or constructively know based on the behavior she exhibited prior to "waking up."

Despite photo, video, audio, and medical evidence provided by Plaintiff that proved Complainant had the capacity to consent to sexual activity, Columbia incorrectly determined that Plaintiff was responsible for sexual harassment and sexual assault. Plaintiff asserted that Complainant sexually assaulted him by (1) repeatedly biting him and (2) pulling down his pants, exposing his penis, grabbing his buttocks, and attempting to place her mouth on his penis, all without his consent. Contrary to its policies, Columbia only charged her with sexual harassment. Complainant did not deny that she engaged in this behavior but relied on an excuse that is strictly forbidden by the Gender-Based Misconduct Policy, namely, that she could not remember because she drank too much. Columbia abandoned its own policies and accepted this excuse while noting that, even if Complainant did all these things, Plaintiff would have enjoyed it. As

---

[2] All capitalized terms used herein refer to the capitalized terms used in the Complaint.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

noted in the Complaint, Columbia's actions were motivated by Plaintiff's male gender.

## STATEMENT OF FACTS[3]

### I.      The Reception/Walk to Mary Smith's* Apartment

On the night of October 4, 2016, Plaintiff attended a Reception, met Complainant and her

friends, and reciprocated Complainant's flirtations.  ¶¶ 53, 55, 57, 59, 61.[4]  During the course of

the evening, Plaintiff photographed Complainant in a dynamic state, as she smiled and gazed

directly at the camera showing no signs of incapacitation.  ¶¶ 63-64, 68.  Complainant also took

photos that were steady and in focus and initiated physical contact.  ¶ 65-66, 70, 74-76.  Plaintiff

observed Complainant drink two to three glasses of wine at the Reception.  ¶ 79.

Around 9:30 p.m., Mary Smith* invited a group of students – Plaintiff, Complainant,

Sarah Jones*, and Rachel Williams* – to her apartment.  ¶¶ 60, 80.  Complainant encouraged

Plaintiff to come so that she could show him the building's roof and water tower.  ¶ 81.

Complainant was able to walk on her own and even walked backwards at points while talking

and gesticulating to her friends.  ¶¶ 83-85, 87-88.  When the group decided to buy food and

drinks and Plaintiff attempted to leave, Complainant insisted he stay.  ¶¶ 89-91.  Complainant

engaged with several individuals to assist in completing Plaintiff's school assignment, went to an

ATM, withdrew cash, paid for pizza, and helped Ms. Smith* pick out beer.  ¶¶ 92-97.  No

members of the group expressed concern about Complainant's ability or capacity.  ¶ 98.  As the

walk continued, Complainant continued to flirt with and kiss Plaintiff.  ¶¶ 99, 101-2.

### II.     Mary Smith's* Apartment/The Roof/The Water Tower

At Ms. Smith's* apartment, Complainant continued to flirt with Plaintiff by pouring beer

---

[3] Plaintiff refers the Court to the Complaint (ECF No. 57) for a full recitation of the facts.
[4] All citations to ¶__ refer to the corresponding Paragraph(s) in the Complaint.

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*")
are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

into his mouth, being affectionate, simulating oral sex, and asking him to come to the roof with her. ¶ 106, 110-16, 119-22. Plaintiff and Complainant went to the roof of the building, which contains a water tower that is 30 feet tall with a 10-foot wide base and a 45-degree all-around incline, as well as a ladder connecting the unlit roof to the unlit water tower roof. ¶¶ 126-28. In just over two minutes, Complainant was able to exit the apartment, climb two flights of stairs, navigate across the unlit roof of the building, and climb the 30-foot ladder. ¶¶ 128-29. Complainant showed her sure-footedness on the roof of the water tower by standing upright in spite of the incline. ¶¶ 131-33. After Plaintiff joined her on the roof of the water tower, Complainant climbed from the far edge of the water tower's roof against the incline in seven seconds and straddled Plaintiff. ¶¶ 132, 141-42.

After Complainant straddled Plaintiff, they engaged in consensual non-intercourse sexual activity during which time Complainant removed her top and pulled Plaintiff's face against her breasts. ¶¶ 143-45, 151. Complainant reached down to rub Plaintiff's crotch and tried to disrobe him, but Plaintiff stated his objection to further sexual activity. ¶ 152-53. After Plaintiff informed her multiple times that he wanted to descend the water tower, Complainant slapped him hard across the face and bit him hard on the lip without consent. ¶¶ 153-61.

When Complainant's friends came to the building's roof to join Plaintiff and Complainant, none questioned Plaintiff's actions or Complainant's capacity. ¶¶ 163-67. Complainant refused Plaintiff's offer to help her down from the roof of the water tower. ¶¶ 170-71. Instead, she performed and landed a reverse tumble roll off the edge of the roof. ¶ 171. Complainant then ascended and descended the ladder unassisted in the dark a second time. ¶¶ 173-75, 177-86. The third time Complainant climbed the ladder in the dark, Ms. Williams* and Plaintiff joined her. ¶¶ 187-88, 191-96. Once everyone was on the roof of the water tower,

---

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

Complainant offered safety and stability advice to Ms. Williams*, even positioning Ms. Williams'* legs. ¶¶ 197-200.

While atop the water tower, Complainant asked Ms. Williams* to teach her how to curse in Ms. Williams'* native tongue. ¶ 204. After minimal instruction, Complainant was able to competently curse in a foreign language without slurring. ¶¶ 204, 294. At 11:16 p.m., Plaintiff, Complaint, and Ms. Williams* descended the water tower. ¶¶ 205, 207. At this point in the night, Complainant had not consumed a full alcoholic beverage in nearly two hours. ¶ 206. Complainant then climbed the ladder, marking her fourth unassisted climb of the night, in order to guide Ms. Williams* down and then descended a final time. ¶ 209-11. Complainant then took Ms. Williams* by the hand and ran toward the stairs before posing for photographs and making out with Plaintiff in the stairwell. ¶ 211, 217-20. Plaintiff and Complainant re-entered the apartment at 11:22 p.m. ¶ 221. After Complainant apologized for her behavior on the water tower with Plaintiff, Ms. Johnson* responded, "Whatever you did, it is your choice." ¶¶ 223-24.

### III.    The Walk to Complainant's Apartment/Complainant's Apartment

Just before midnight (over two hours since her last full drink), Complainant declined an offer to stay at Ms. Smith's* and Ms. Johnson's* apartment. ¶ 227-29. Plaintiff offered to walk Complainant home without protest from the group, and around midnight Plaintiff, Complainant, and Ms. Williams* left. ¶¶ 231-33. After dropping off Ms. Williams*, they continued towards Complainant's apartment while Complainant skipped and ran unassisted. ¶¶ 238, 240.

When Plaintiff and Complainant arrived at Complainant's apartment, Roommate was still awake. ¶ 242. At this point (approximately 12:20 a.m.), it had been three hours since Complainant consumed a full alcoholic beverage. ¶ 244. Plaintiff and Complainant recounted their evening to Roommate. ¶ 246. During a simultaneous text conversation with Ms. Johnson*,

Roommate expressed concern for Plaintiff's (not Complainant's) wellbeing. ¶¶ 247-249.

Complainant pretended to fall asleep twice. ¶¶ 251, 254-55, 263. Clearly eavesdropping as Plaintiff recapped her behavior, Complainant stormed out of her room and stated, "That is *not* what happened!" ¶ 256. Complainant exhibited a chipper and enthusiastic mood, and her speech was intelligible and clear. ¶ 258. Complainant wrapped her arms around Plaintiff's neck when he carried her to bed. ¶ 265. Complainant initiated sexual contact in the bedroom and pushed Plaintiff's hand under her panties. ¶¶ 269-70. Complainant told Plaintiff how much she enjoyed rough sex, grinded against his body, pulled Plaintiff's head towards her, and vocalized her pleasure. ¶ 271. Complainant and Plaintiff engaged in consensual kissing, touching, fingering, and throat holding. ¶ 273. While they engaged in excessive dirty talk, Plaintiff and Complainant made sure to keep their voices low so they would not alert Roommate. ¶ 272-73.

At approximately 1:30 a.m. Complainant told Plaintiff that she wanted him to "f—k [her]." ¶¶ 275, 277. At this point, Plaintiff informed Complainant that he was not comfortable and offered numerous reasons for his refusal. ¶¶ 276, 278, 281-85, 288. Complainant refused to take "no" for an answer and had a response for every excuse. ¶¶ 280, 282-86. When Plaintiff got up to leave, Complainant's reaction made Plaintiff deeply uncomfortable. ¶¶ 289-90. Plaintiff falsely told Complainant that she was drunk as a last-ditch effort to leave, as he did not want to have sex with her. ¶¶ 292-302. Plaintiff felt trapped by Complainant's reaction and began recording audio on his phone. ¶¶ 302-3, 305-6. The recording contains twenty-nine statements of consent and requests for sex by Complainant as she prevents Plaintiff from leaving her room while also biting him twice and attempting to forcibly fellate him without consent. ¶¶ 306-11, 317-24, 327, 336-42. At one point when Plaintiff tried to leave, Complainant began swearing and pretended not to be aware of what was happening before once again demanding

sex. ¶¶ 327-29, 335.  After Plaintiff was finally able to leave, Complainant falsely told

Roommate that he tried to have sex with her.  ¶ 346.  Complainant then provided a false narrative

to Former Boyfriend #1.  ¶¶ 357-59.  Former Boyfriend #1 questioned Complainant's supposed

level of intoxication; in response, she called him an "asshole" and hung up.  ¶ 360.

### IV.     Columbia's Faulty Process and Decisions

Columbia committed numerous evidentiary and procedural missteps throughout its

investigation as a result of Plaintiff's male gender.  ¶¶ 833, 838, 848, 852, 882-91.  Despite

photographic, video, audio, and medical evidence indicating that Complainant was not

incapacitated, Columbia improperly found Plaintiff responsible for sexual harassment and sexual

assault.  ¶¶ 840-45, 848-853, 877.  Columbia also improperly determined that Complainant did

not violate the Gender-Based Misconduct Policy.  ¶¶ 709, 854-66.

## LEGAL STANDARDS

### I.     Motion to Dismiss

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's claims as plead in the initial

pleadings.  In order to survive such a motion, the plaintiff's pleadings must "state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009).

"On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the

only facts to be considered are those alleged in the complaint, and the court must accept them,

drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint

alleges sufficient facts to survive." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).  At

---

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*")
are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

the motion to dismiss stage, a court "is not engaged in an effort to determine the true facts." *Id.*

Thus, a court "must accept the facts alleged and construe ambiguities in the light most favorable

to upholding the plaintiff's claim." *Id.* To the extent that a movant asserts that documents

incorporated by reference contradict the allegations contained in a complaint, a plaintiff states a

plausible allegation sufficient to overcome a motion to dismiss when he offers an "explanation in

his complaint or opposition brief that reconciles the conflict between his allegations and the

[documents]" or "cast[s] doubt on the authenticity or veracity of these documents." *Cf. B.B. v.*

*New Sch.*, 2018 U.S. Dist. LEXIS 80068 at \*16 (S.D.N.Y. Apr. 30, 2018 Civ. Action No. 17 Civ.

8347 (AT)) (finding allegations in complaint contradicted by exhibits to complaint implausible

and insufficient to defeat a motion to dismiss where plaintiff failed to provide explanation or

dispute the authenticity or veracity of the exhibits).

## II.     Erroneous Outcome

In order to properly plead an erroneous outcome claim, a plaintiff must "allege particular

facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary

proceeding." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Notably, "the pleading

burden in this regard is not heavy." *Id.* A plaintiff can assert a successful erroneous outcome

claim by alleging "particular evidentiary weaknesses" or "particular procedural flaws." *Id.*

Allegations that "go well beyond the surmises of the plaintiff as to what was in the minds of

others and involve provable events that in the aggregate would allow a trier of fact to find that

gender affected the outcome of the disciplinary proceeding" are sufficient to plead an erroneous

outcome claim. *Id.* at 716.

## III.    Breach of Contract

"Under New York law, an implied contract is formed when a university accepts a student

---

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*")
are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). The contract terms "are contained in the university's bulletins, circulars and regulations made available to the student." *Id.* (internal quotations and citations omitted). "Implicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Id.* (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413-14 (1980)).

## IV.  Promissory Estoppel

"In New York, promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; (3) and an injury sustained by the party asserting the estoppel by reason of the reliance." *Doe v. Syracuse Univ.*, 2019 U.S. Dist. LEXIS 77580 at *35 (N.D.N.Y. May 8, 2019 Civ. Action No. 5:18-CV-377) (internal quotation and citation omitted).

## ARGUMENT

## I.  Columbia Routinely Misstates the Allegations Contained in the Complaint

Columbia's Memorandum of Law misrepresents several of Plaintiff's factual allegations. Some of Columbia's misrepresentations replace definite, benign terms with undefined terms with pernicious connotations.[5] For example, Columbia maintains that Plaintiff observed Complainant drink "several glasses of wine" at the Reception. Defendant's Memorandum of Law ("DML") at

---

[5] Columbia is likely to fatuously assert that its rendition of certain facts discussed herein is "true." However, replacing the exact language in the Complaint with dictionary-similar but functionally-different, charged language is improper for the purposes of a Motion to Dismiss. Columbia knows this, yet they still inserted their own language instead of relying on the allegations as drafted in the Complaint. The Complaint was drafted using precise language. In determining Columbia's Motion to Dismiss, the Court must consider Plaintiff's allegations as pled, not Columbia's approximations.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

2 (citing ¶¶ 59, 79).  The Complaint states that Plaintiff "observed Complainant drink between only two to three glasses of wine."  ¶ 79.  The use of the imprecise "several" in place of "only two to three" indicates an attempt to inflate Complainant's alleged alcohol consumption on the night in question.  Columbia also falsely asserts that Complainant "purchased more alcohol" on the way from the Reception to Mary Smith's* Apartment.  DML at 2 (citing ¶¶ 90-96).  Only Paragraph 96 is relevant[6] to dispelling this falsehood: "Complainant then went with Ms. Smith* into Westside Market to pick out beer for the group."  ¶ 96.  Columbia utilizes an undefined term with a pernicious connotation ("alcohol," *i.e.*, hard liquor) when a more benign, specific term is used in the Complaint ("beer").  *Compare* DML at 2 *with* ¶ 96.  Columbia falsely states Complainant purchased the beer.  Complainant only assisted in picking out the beer ¶¶ 96-97.

Columbia also asserts more meaningful demonstrable falsehoods.  In one particularly brazen instance, Columbia falsely asserts that the Complaint "alleges that [Complainant] and Plaintiff had already engaged in loud sexual activity with Roommate awake."  DML at 4 (Citing ¶ 306).  This is patently false and not supported by Paragraph 306, which reads, in full, "The audio tape begins at 1:37 a.m. and contains numerous statements of consent and requests for sex made by Complainant over the next 30 minutes as she prevents Mr. Feibleman from leaving her room."  ¶ 306.  The Complaint notes that Plaintiff and Complainant "kept their voices low so as not to alert her roommate" while they engaged in dirty talk. ¶ 272.  Nowhere does the Complaint assert that Plaintiff and Complainant engaged in loud sexual behavior.  Columbia formed this allegation out of whole cloth to mislead the Court and paint Plaintiff in an unflattering light.

---

[6] The other Paragraphs cited by Columbia (¶¶90-95) detail Complainant's continued urging that Plaintiff remain with the group (¶¶ 90-91), Complainant's successful attempts to assist Plaintiff in completing a homework assignment by convincing strangers to allow Plaintiff to interview and photograph them (¶¶ 92, 95), and Complainant's withdrawal of cash from an ATM and procurement of pizza (¶¶ 93-94).

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

It is clear that Columbia cannot be trusted to provide a reliable narrative of the allegations contained in the Complaint. Columbia also has difficulty stating the proper legal standards to be applied in this case, as noted below.

## II.     Columbia's Subpar Recitation of Legal Standards

Columbia has incorrectly or imprecisely stated the holdings of certain cases that it relies upon to support its Motion. This appears to be an attempt to shoehorn the facts of this case into irrelevant caselaw. Regardless of Columbia's motive for providing these inadequate interpretations, a brief presentation of the correct/clarified holdings is necessary so that the Court can properly decide the instant Motion.

Columbia relies on *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1991), to assert that the Court should afford substantial deference to Columbia when determining whether its disciplinary decision was accurate. *See* DML at 9. To support its position, Columbia provides the following quotation from *Davis*: "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id*. (bracketed text in original) (citing *Davis*, 526 U.S. at 648). However, there are several factors that render *Davis* inapposite to the instant matter. The plaintiff in *Davis* sought relief under Title IX pursuant to a deliberate indifference theory of liability. *See Davis*, 526 U.S. at 635-36. Here, Plaintiff asserts that Columbia violated Title IX because its disciplinary findings were clearly erroneous. Moreover, in *Davis*, the issue at hand was whether a court could "identify a [school's] response [to allegations of harassment] as not 'clearly unreasonable' **as a matter of law**." *Id*. at 649 (emphasis added). Columbia's Motion to Dismiss seeks the Court's determination regarding an issue of fact. *See* DML at 9 ("the ultimate question is whether the accuracy of the university's decision is in doubt."). Moreover, Columbia utilized a selective quotation to make the Supreme

---

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("**\***") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.
{1154858.1 }                                      11

Court's *dicta* appear to be its holding. Review of the quotation in context shows that the majority was responding to the dissent's claim that "victims of peer harassment now have a Title IX right to make particular remedial demands." *Davis*, 526 U.S. at 648. Further, the Supreme Court uses a Fourth Amendment decision to support its position, not a Title IX case. *Id.* (citing *New Jersey v T. L. O.*, 469 US 325 (1985)). For these reasons, the Supreme Court's analysis in *Davis* is irrelevant to the instant matter. However, even if *Davis* were applicable, it would be helpful to Plaintiff's position, as the Supreme Court determined that the complaint was sufficient to survive a motion to dismiss. *Davis*, 526 U.S. at 653-54.

Columbia offers a disorganized statement of the law regarding how a plaintiff can overcome a motion to dismiss based on a defendant's claim that documents incorporated by reference contradict the allegations contained in the complaint. *See* DML at 10. In *B.B.*, this Court indicated that a plaintiff who offers an "explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the [documents incorporated by reference]" or "cast[s] doubt on the authenticity or veracity of these documents" will survive a motion to dismiss based on an alleged discrepancy. *B.B.*, 2018 U.S. Dist. LEXIS 80068 at *16. Columbia does note *B.B.*'s holding, albeit in a disjointed fashion. However, Columbia concludes its discussion of the relevant legal standard with a quotation from a case decided prior to *B.B.* that incorrectly indicates that a court need not take any further steps once an accusation of inconsistency is levied. *See* DML at 10 (citing *Bailey v N.Y. Law Sch.*, 2017 US Dist. LEXIS 212102 (S.D.N.Y. Dec. 27, 2017 Civ. Action No. 16 Civ. 4283 (ER)). As noted in *B.B.*, a court's job does not end just because a movant asserts a document incorporated by reference contradicts the allegations contained in the complaint. Instead, a court must review the plaintiff's complaint and opposition papers to determine whether an explanation for the

---

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

contradiction exists or whether the plaintiff has cast doubt on the authenticity or veracity of the documents. *See B.B.*, 2018 U.S. Dist. LEXIS 80068 at *16. Plaintiff has provided an explanation for any alleged contradictions between the audio recording and his allegations both in the Complaint and in this Memorandum of Law. Moreover, as noted below, Plaintiff is able to cast doubt on the veracity of Columbia's speculative interpretation of the audio recording.

## III. Columbia Has Failed to Address the Entire Scope of Plaintiff's Erroneous Outcome Cause of Action

Columbia's moving papers only focus on one aspect of Plaintiff's erroneous outcome cause of action, namely, his allegations that Columbia committed an error steeped in gender bias when it found *him* responsible for sexual misconduct. However, Plaintiff also asserts that Columbia's decision to find Complainant *not* responsible for violating the Gender-Based Misconduct Policy was incorrect and motivated by gender bias. ¶¶ 446-463, 643, 709-711, 854-868, 882-890. Columbia does not present any argument for dismissing this portion of Plaintiff's erroneous outcome cause of action. Any attempt by Columbia to raise this issue in its reply memorandum of law should be rejected by the Court. *See PrecisionIR Inc. v. Clepper*, 693 F. Supp. 2d 286, 291 n.2 (S.D.N.Y. 2010) ("The Court will not consider Defendants' expanded, procedurally-improper arguments" raised for the first time in their reply brief); *U.S. v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); *Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court"). Accordingly, there is no basis for dismissing Plaintiff's erroneous outcome cause of action as it relates to Columbia's faulty determination that Complainant was not responsible for violating the Gender-Based Misconduct Policy.

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.
{1154858.1 }                                         13

**IV.    Because the Complaint Adequately Explains Any Perceived Contradictions
Between the Audio Recording and Plaintiff's Allegations, There is No Basis for
Dismissing Plaintiff's Title IX Erroneous Outcome Cause of Action**

Columbia does not contest that Plaintiff has properly pled a causal connection between its

flawed disciplinary outcome and gender bias.[7] Accordingly, the only issue before the Court

regarding Plaintiff's erroneous outcome cause of action is whether Plaintiff has alleged

"particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the

disciplinary proceeding." *Yusuf*, 35 F.3d at 715. Identification of "particular procedural flaws"[8]

is sufficient to do so. *Id*. Additionally, when a plaintiff "alleges a host of facts demonstrating

particular evidentiary weaknesses in the case against him," a motion to dismiss a Title IX

erroneous outcome claim must fail. *See Prasad v. Cornell Univ.*, 2016 U.S. Dist. LEXIS 161297

at *47-*48 (N.D.N.Y. Feb. 24, 2016 Civ. Action No. 5:15-cv-322) (denying motion to dismiss

where plaintiff alleged, *inter alia*, that "the investigators . . . accepted the victim's account of her

level of intoxication despite numerous statements to the contrary; misconstrued and misquoted

witnesses' statements; used . . . Doe's self-reported weight and alcohol consumption to conclude

that Doe was in a state of extreme intoxication; . . . drew prejudicial conclusions without

sufficient evidentiary support; and cast Plaintiff's actions in highly inflammatory terms.").

A complainant's simple drunkenness is insufficient to render that person incapacitated

and therefore unable to consent to sexual activity under the Gender-Based Misconduct Policy.

*See* Exhibit A to Rawlinson Declaration ("Policy") at 8-9 (noting that incapacitation depends on

the degree of intoxication). Instead, there must be objective and reasonably apparent signs of

---

[7] Any attempt by Columbia do so in its reply brief would be improper and should not be considered by the Court. *See PrecisionIR Inc.*, 693 F. Supp. 2d at 291 n.2; *Yousef*, 327 F.3d at 115; *Playboy Enterprises, Inc.*, 960 F. Supp. at 720 n.7.

[8] For a discussion of Columbia's procedural flaws, see Section V., *infra*.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

{1154858.1 }                                                                                          14

incapacitation such that a respondent knew or should have known that the complainant was incapacitated. Policy at 9. Columbia questioned Plaintiff's credibility based on his explanations for certain actions that he took and his denial that Complainant showed any signs of intoxication. ¶ 633-37, 674. The Hearing Panel's decision was based on Columbia's perceived issues with Plaintiff's credibility, which allowed them to discredit his statements and testimony unless they were corroborated by Complainant, her friends, or other evidence. ¶ 704. As detailed extensively throughout his Memorandum of Law and in the Complaint, Plaintiff provided numerous examples of Complainant's behavior that indicated she was able to consent to sexual activity, including objective photographic evidence, and provided clear explanations for his actions. This evidence calls into question the accuracy of the outcome of Columbia's disciplinary proceeding, and Plaintiff has adequately asserted a Title IX erroneous outcome cause of action. *Yusuf*, 35 F.3d at 715.

Complainant was able to meaningfully participate in conversations with Plaintiff, her friends, and Roommate throughout the night. In one instance towards the end of the evening, she strongly and clearly interjected from another room in order to correct Plaintiff's statements to Roommate. ¶ 256. Complainant was able to walk forward and backwards, run, and skip without assistance. ¶¶ 83-85, 87-88, 99, 128, 211, 234, 236, 239-40. She utilized an ATM machine and successfully withdrew cash. ¶ 94. Complainant was able to effectively communicate with strangers on multiple occasions – she was able to purchase pizza and convince multiple strangers to conduct an interview with and be photographed by Plaintiff. ¶¶ 92, 95. Complainant's friends also successfully tapped her knowledge of beer based on her experience as a bartender. ¶¶ 96-97.

In an unlit environment, Complainant was able to ascend and descend a 30-foot ladder

multiple times, balance herself on a pitched roof, and assist others in finding their balance on a pitched roof. ¶¶ 128, 133, 175, 191, 194, 197-200, 209.  She was also able to perform complex acrobatic feats in the dark, including a backwards tumble roll off of a pitched roof onto a ladder and a "Cirque du Soleil"-inspired routine. ¶¶ 171-72, 208-10.  Complainant was also able to quickly learn and repeat a phrase in a foreign language without slurring. ¶¶ 204, 296.

Complainant initiated the physical interaction that occurred in her bedroom. ¶ 269. While physically engaged with Plaintiff, Complainant took Plaintiff's hand and guided it under her clothes to her vagina. ¶ 270.  She also enthusiastically voiced her consent to non-intercourse sexual activity with Plaintiff and repeatedly asked Plaintiff to have sexual intercourse with her, which he emphatically refused to do. ¶¶ 271-73, 275, 277, 280, 287, 300, 306, 326, 335, 337-38, 342.  Roommate, a sober, reasonable person, "thought it was a mutual hookup." ¶ 347.

Another factor, considered by Columbia in determining whether a complainant is incapacitated is "How the Complainant understood the 'who, what, when, where, why or how" of the sexual activity."  Policy at 9.  On the audio recording central to Columbia's Motion, Complainant acknowledged that she was with Plaintiff (who), in her bedroom (where), at night when they both need to get up early the next day (when), and repeatedly begged for rough, hard sex because she enjoys that type of sex (what, how, and why).  Exhibit A to Lau Declaration ("Transcript") at Page 4, Line 20; Page 8, Lines 11-23, Page 9, Lines 22-23, Page 10, Lines 8-15, Page 11 Lines 1-2, 6-10, 15-16 . Thus, it is clear that the audio recording actually supports Plaintiff's erroneous outcome claim, as it shows that Complainant understood the six factors related to sexual activity identified in the Gender-Based Misconduct Policy.

All of the above-referenced behavior occurred before Complainant allegedly came to. Plaintiff asserts that Complainant was not significantly affected by alcohol at any point during

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

their interactions.  ¶¶ 293-301.  Even if Complainant's mental state were impacted by her consumption of alcohol, Plaintiff could not have known based on Complainant's behavior, which failed to provide objective and reasonably apparent signs of incapacitation.  As Columbia's Gender-Based Misconduct Policy notes, a person may experience a "blackout" and forget entire or partial events despite appearing to function normally and expressing an interest in engaging in sexual activity.  Policy at 9.  In the instant matter, Columbia asserts that Plaintiff should have been aware of alleged invisible indicators of incapacitation, such as Complainant's later memory failure, in the moment despite a lack of outward indicators of incapacitation.   However, without objective and reasonably apparent signs of incapacitation, there can be no finding of gender-based misconduct.  Policy at 9.

Plaintiff asserts that Columbia improperly accepted Complainant's account of her intoxication to find that she was incapacitated despite concrete photo, video, and audio evidence indicating that she was not showing any objective or reasonably apparent signs of incapacitation. ¶¶ 88, 840-45, 847-48, 850, 853.  Moreover, Plaintiff maintains that Columbia ignored relevant witness and expert statements contradicting Complainant's account of her level of intoxication. ¶¶ 597-601, 625, 843, 869-871.  Plaintiff also alleges that Columbia misconstrued his arguments and drew prejudicial conclusions against him without sufficient evidentiary support.  ¶¶ 553, 558, 656-64, 669-70, 673-675, 833.  Further, Columbia consistently casts Plaintiff's actions in highly inflammatory terms.  ¶¶ 465-69, 497-500, 602, 626, 644, 763, 765-66.  Because Plaintiff has alleged "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," as well as "facts demonstrating particular evidentiary weaknesses in the case against him" there is no basis for dismissing his First Cause of Action. *Yusuf*, 35 F.3d at 715; *Prasad*, 2016 U.S. Dist. LEXIS 161297 at *47-*48.

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

{1154858.1 }                                                      17

Columbia baselessly asserts that the allegations in the Complaint do not reasonably support the inference that Complainant was able to consent. Plaintiff's allegations are not merely "circumstantial" as alleged by Columbia; they are supported in large part by photo, video, and audio evidence, as well as medical science that Columbia repeatedly refused to consider. As noted above, the audio recording supports Plaintiff's contention that Complainant knew the who, what, when, where, why, and how of sexual activity at the time she was being recorded.

Columbia's claims that Complainant's alleged altered speech patterns in the audio recording are evidence that she was physically affected by alcohol consumption are unfounded. Such a claim is inconsistent with Complainant's behavior throughout the evening and the amount and timing of alcohol that she consumed. Photo and video evidence from earlier in the evening showed that she was not exhibiting any outward signs of incapacitation. She was able to walk, run, and skip unassisted; ascend and descend a ladder in the dark four separate times; and balance on, climb up and down, and perform athletic exploits on a roof with a 45-degree pitch. ¶¶ 83-85, 87-88, 99, 128, 133, 171-72, 175, 191, 194, 197-200, 208-11, 234, 236, 239-40. Moreover, by the time the audio recording started, it had been four hours since Complainant last consumed a full alcoholic beverage. ¶¶ 294, 742. As a result, the physical effects of any alcohol that Complainant consumed would be less than when she was engaged in significant unaided physical activity earlier in the evening without showing any outward signs of incapacitation. ¶ 852. In other words, Complainant would not have become more intoxicated once she stopped consuming alcohol; instead, she would have become less intoxicated.

Columbia incorrectly asserts that Plaintiff's allegations confirm that Complainant struggled to maintain consciousness throughout the evening. The Complaint asserts that when Complainant appeared to be sleeping, she was merely pretending to sleep. ¶¶ 254-58, 265, 269.

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.
{1154858.1 }                                   18

Additionally, the period of time where Complainant "wakes up" on the audio recording is not a type of behavior that can support a finding of incapacitation under the Gender-Based Misconduct Policy. As an initial matter, the timing of Complainant's "awakening" is quite literally incredible – it coincides with one of Plaintiff's many attempts to leave. Transcript at Page 12 Lines 8-16. Further, the Gender-Based Misconduct Policy contemplates certain "warning signs" that may indicate the physical effects of alcohol, one of which is a "notable change in personality." Policy at 9. An individual who had previously exhibited no signs of incapacitation suddenly "waking up" in their own mind is not a "warning sign" of incapacitation. A respondent in such a situation could not have possibly known that the individual was in a "blackout" state *before* they "woke up." In Plaintiff's case, Complainant expressed a clear desire for sexual activity mere seconds before she "woke up." Transcript at Page 11, Line 25; Page 12, Line 1. Absent any objectively and reasonably apparent indications of incapacitation, sexual activity with an incapacitated person in a "blackout" state is not actionable under the Gender-Based Misconduct Policy. Policy at 9.

The instances relied upon by Columbia to assert that Complainant was unaware of the who, what, when, where, why, or how of sexual activity occur after she had already displayed knowledge of all of these conditions to Plaintiff. As noted in the Complaint, all sexual activity prior to the audio recording was consensual. ¶¶ 15, 149, 273. Prior to Complainant "waking up," it would have been impossible for Plaintiff to know that Complainant was incapacitated based on her prior words and actions. Similarly, Complainant's "memory impairment" issues only occurred after she "woke up," so it would not have been possible for Plaintiff to discern that she was incapacitated at any point prior based on her previous behavior.

There is nothing sinister in Plaintiff's responses to Complainant's statements and

questions after she "woke up."  When Plaintiff indicated that "nothing happened" he was talking

about sexual intercourse, the act she had been begging for until seconds before she "woke up."

Additionally, when Plaintiff commented that Complainant was not present ten minutes prior, he

is referring to the time when she "woke up."  When he made that statement, it was not an

admission that he knew Complainant was in a "blackout" state the entire time he was with her.

The manifestation of "waking up" only occurred in Complainant's mind.  Thus, Plaintiff could

not have known if Complainant was experiencing a "blackout" until she "woke up."  Moreover,

Complainant acted in a very similar fashion *after* "waking up" – she continued to beg for sex

from Plaintiff.  ¶ 335, 337, 342; Transcript at Page 19, Lines 14-16, 19; Page 20, Lines 9-17;

Page 21, Lines 1-2; Page 22, Lines 1-2.  Complainant's behavior calls into question whether she

actually "woke up" or whether it was simply a ploy to make Plaintiff stay with her.

      As explained in great detail in the Complaint, Plaintiff's statements indicating that he

knew Complainant was drunk were false.  ¶¶ 292-302.  They were made as a last-gasp attempt to

appease Complainant and extricate himself from a deeply uncomfortable situation.  Additionally,

as noted above, simply being drunk does not mean that an individual is incapacitated to the point

where they cannot consent to sexual activity.  Moreover, Plaintiff's decision not to have vaginal

intercourse with Complainant does not prove that she was incapacitated.  For the reasons clearly

stated in the Complaint, Plaintiff simply did not want to have sexual intercourse with

Complainant even though he was comfortable engaging in other sexual activities with her.  ¶

301-2.  As noted in the Gender-Based Misconduct Policy, "Consent to one form of sexual

activity does not imply consent to other forms of sexual activity."  Policy at 7.

      Columbia presents two outrageous statements when asserting that Plaintiff's decision to

record his interaction with Complainant is proof of her incapacitation – "[Plaintiff] does not

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

explain why he could not get up and leave" and "[Plaintiff] does not explain why he decided to remain in [Complainant]'s bedroom alone."[9] DML at 13. Both of these points have clear answers in the Complaint. In one instance where Plaintiff tried to leave, Complainant forcibly removed his pants to expose his penis and tried to place his penis in her mouth against his will. ¶¶ 315-24.

Columbia's contentions go beyond speculation; they are downright implausible in light of the evidence presented by Plaintiff detailed in the Complaint. The most plausible inference from the audio recording is that Complainant was finally actually tired at 1:30 a.m. on a school night after walking around New York City and performing intense aerobic exercise on a water tower.[10] Additionally, the location of the recording device in Plaintiff's pocket also lead to a certain amount of muffling and lack of clarity in the audio. Because Plaintiff has alleged "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," there is no basis for dismissing his First Cause of Action. *Yusuf*, 35 F.3d at 715.

## V. Plaintiff Has Adequately Stated Causes of Action for Breach of Contract

A student plaintiff successfully asserts a cause of action for breach of contract when he asserts errors in a university disciplinary process and an improper failure to award a diploma.

---

[9] Columbia disgracefully and glibly raises these points in an effort to silence Plaintiff, a former student who maintains that Columbia failed to adequately respond to his own physical and sexual assault by Complainant. Surely, Columbia would not ask a female student who was physically and sexually assaulted by a male student, "Why didn't you just leave?" Nor would Columbia tell a female student who claimed to suffer sexual harassment and sexual assault that her abuser was not responsible because he could not remember doing it and, in any event, the female student "would have liked it." If there was any question regarding the anti-male gender bias present at Columbia, these comments confirm its existence.

[10] Columbia's assertion that the only plausible inference for Complainant's behavior on the water tower is that she was drunk (presumably to the point of incapacitation) is patently absurd. An extremely intoxicated individual would not be able to perform such dangerous physical activity without severely injuring or killing themselves. Moreover, no sober, reasonable person in Complainant's position would perceive Complainant's acrobatic feats as an objective and reasonably apparent indication of incapacitation. Rather, a sober, reasonable person would assume that an individual performing acrobatic maneuvers on a pitched roof and wrought-iron ladder in pitch black darkness was sober as well.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

*See Papelino*, 633 F.3d at 94 (reinstating breach of contract claim and noting that "genuine

issues exist for trial with respect to whether the College breached its implied duty of good faith

by, inter alia, failing to investigate Papelino's complaint of sexual harassment, mishandling the

Honor Code proceedings . . ., and denying (at least initially) Papelino and Basile a diploma.").

Additionally, a breach of contract claim will survive a motion to dismiss when "alleged breaches

specifically refer to expressly enumerated conditions and rights, such as the guarantee of the

preponderance of evidence standard" published in regulations that a university chooses to make

available to its students. *Doe v. Syracuse Univ.*, 2019 U.S. Dist. LEXIS 77580 at *31-*32

(denying motion to dismiss breach of contract claim).

   Unlike the plaintiffs in the cases cited by Columbia, Plaintiff alleges specific contractual

promises that Columbia breached and concrete instances of Columbia's failure to substantially

comply with its own rules and regulations.  Plaintiff asserts that Columbia failed to properly

investigate, prosecute, and adjudicate his complaints of sexual assault and sexual harassment

even though Complainant's behavior constituted violations as defined by the Gender-Based

Misconduct Policy.  ¶¶ 445-58, 854-68, 907, 913; *see* Policy at 4-5, 7.  Columbia failed to

provide Plaintiff with timely access to the details of the allegations pending against him.  ¶ 506.

Failing to provide any details of Complainant's allegations for 105 days after she filed her

complaint is not consistent with the Gender-Based Misconduct Policy's statement that a

respondent will be "updated throughout the investigative process." *See* Policy at 20.  Columbia

did not enforce the its Confidentiality Policy against Complainant.  ¶¶ 406-9, 416-17, 472-78,

911.  Columbia refused to investigate Complainant for retaliation under the Gender-Based

Misconduct Policy despite being informed that Complainant was making false and incendiary

statements regarding Plaintiff to other students and that Complainant verbally and physical

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*")
are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.
{1154858.1 }                                        22

attacked witnesses who provided favorable information to Plaintiff. ¶¶ 473-74, 574-77, 915-16; *see* Policy at 6. The Hearing Panel's decision was contrary to the preponderance of the evidence standard established by the Gender-Based Misconduct Policy. ¶ 728. Based on these well-pled allegations, Plaintiff's Third Cause of Action must remain.[11] *See Papelino*, 633 F.3d at 94; *Doe v. Syracuse Univ.*, 2019 U.S. Dist. LEXIS 77580 at \*31.

Plaintiff claims that Columbia improperly denied him a diploma. ¶¶ 932-36. It is undisputed that Plaintiff completed all of the coursework and paid all of the tuition required to obtain his degree. ¶¶ 932-33. Because Plaintiff has adequately pled his First Cause of Action, Columbia's contention that it is within its rights to withhold his degree based on his disciplinary history is moot.[12] Additionally, the only case cited by Columbia in support of its claims is a summary judgment case, making it inapposite to the Court's analysis at the motion to dismiss stage. *See* DML at 19. Accordingly, there is no basis for dismissing Plaintiff's Fourth Cause of Action. *See Papelino*, 633 F.3d at 93 ("if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree.").

## VI. In The Alternative, Plaintiff Has Adequately Stated Causes of Action for Promissory Estoppel

Plaintiff's causes of action for promissory estoppel are pled in the alterative to his causes of action for breach of contract. Such a pleading formula is permissive under the Federal Rules of Civil Procedure and is well-established in this Circuit. Fed. R. Civ. P. 8(a)(3) (a pleading

---

[11] Columbia concedes that Plaintiff's allegation that Steve Coll failed to disclose a conflict of interest is sufficient to support a breach of contract claim. DML at 17-18 n.10. Thus, even if the Court disagrees with Plaintiff's assessment of the relevant facts and law, at least some aspect of the Third Cause of Action will remain.

[12] Columbia does not substantively address the allegations contained in Plaintiff's Fourth Cause of Action or provide any relevant case law to support its position. The Court should not consider any improper attempt to remedy this fatal failure in its reply brief. *See PrecisionIR Inc.*, 693 F. Supp. 2d at 291 n.2; *Yousef*, 327 F.3d at 115; *Playboy Enterprises, Inc.*, 960 F. Supp. at 720 n.7.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

stating a claim for relief must assert "a demand for the relief sought, which may include relief in the alternative or different types of relief"); *see also Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, 2015 U.S. Dist. LEXIS 89926 at *15 (S.D.N.Y. Jul. 10, 2015 Civ. Action No. 14-cv-9992 (SAS)) ("the [Federal] Rules [of Civil Procedure] expressly permit plaintiffs to plead in the alternative, and the law is well settled in this regard."). Thus, at this stage in the litigation, it would be improper for the Court to dismiss Plaintiff's promissory estoppel claims based on Plaintiff's assertion that they are duplicative of his breach of contract causes of action. Additionally, as noted above, Plaintiff has adequately alleged that Columbia violated its own procedures and policies.

Courts in this Circuit have very recently permitted promissory estoppel claims similar to those put forth by Plaintiff to survive a motion to dismiss. In *Doe v. Syracuse*, the plaintiff asserted:

> Defendant Syracuse expected or should have expected John Doe to accept its offer of admission and choose not to attend other colleges based on its express and implied promises including . . . to have any claims brought against him under the Campus Code of Conduct be heard by an impartial and objective panel, to be free from discrimination, and to have complaints resolved impartially and promptly.

*Doe v. Syracuse Univ.*, 2019 U.S. Dist. LEXIS 77580 at *35-*36. The court determined that these allegations, when taken as true, were sufficient to state a cause of action for promissory estoppel and denied the university's motion to dismiss. *Id.* at *36. Plaintiff asserts identical contentions in his Fifth Cause of Action. ¶ 940[13]; *compare Doe v. Syracuse Univ.*, 2019 U.S.

---

[13] Shockingly, Columbia misstates the basis for Columbia's Fifth Cause of Action by falsely asserting that it is limited to Columbia's failure to complete its investigation within 60 days. DML at 18. This is simply not true. ¶ 940. Even so, because Columbia fails to address the entirety of Plaintiff's allegations, there is no basis for dismissing Plaintiff's Fifth Cause of Action. Any improper attempt for Columbia to address the complete basis for Plaintiff's Fifth Cause of Action in its reply brief should not be considered by the Court. *See PrecisionIR Inc.*, 693 F. Supp. 2d at 291 n.2; *Yousef*, 327 F.3d at 115; *Playboy Enterprises, Inc.*, 960 F. Supp. at 720 n.7.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

Dist. LEXIS 77580 at \*35-\*36. Plaintiff further asserts that he reasonably relied on Columbia's express and implied promises and representations made by Columbia to his detriment. ¶ 941. Accordingly, there is no basis for dismissing Plaintiff's Fifth Cause of Action. *Doe v. Syracuse Univ.*, 2019 U.S. Dist. LEXIS 77580 at \*35-\*36

In his Sixth Cause of Action[14], Plaintiff maintains that Columbia made an express and implied promise to provide him a diploma if he completed all the necessary coursework and paid the required tuition. ¶ 949. As noted above, Plaintiff has completed all of the necessary coursework and paid all of the required tuition in order to obtain his degree. ¶¶ 932-33, 951-52. If he prevails on his properly pled First Cause of Action, Columbia has no basis for failing to award his degree. *See Papelino*, 633 F.3d at 93 ("if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree."). Further, the only case that Columbia relies upon as a basis for dismissing Plaintiff's Sixth Cause of Action is irrelevant because the Court was deciding a summary judgment motion, not a motion to dismiss. *See* DML at 19. There is simply no basis for dismissing Plaintiff's Sixth Cause of Action.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss should be denied in its entirety. In the event that the Court grants any portion of Defendant's Motion to Dismiss, Plaintiff respectfully requests leave of the Court to filed an Amended Complaint.

---

[14] Columbia does not substantively address the allegations contained in Plaintiff's Sixth Cause of Action or provide any relevant case law to support its position. The Court should not consider any improper attempt to do remedy this fatal failure in its reply brief. *See PrecisionIR Inc.*, 693 F. Supp. 2d at 291 n.2; *Yousef*, 327 F.3d at; *Playboy Enterprises, Inc.*, 960 F. Supp. at 720 n.7.

\* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("\*") are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.

Dated: New York, New York
     August 30, 2019

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*

By: _____
       Kimberly C. Lau
       James E. Figliozzi
       575 Lexington Avenue
       New York, New York 10022
       (212) 984-7700
       klau@wbny.com
       jfigliozzi@wbny.com

* To protect the identities of certain non-parties to this case, names in this document marked with an asterisk ("*")
are fictitious, bear no relation to the person's real name, and are not intended as a reference to any other person.
{1154858.1 }             26