UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/04/2019

BEN FEIBLEMAN,

                 *Plaintiff*,

v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,

                 *Defendant*.

No. 1:19-cv-4327 (VEC) (KHP)

## STIPULATION AND ORDER REGARDING THE
## PRODUCTION OF DISCOVERY MATERIAL

This Stipulation and Order Regarding Production of Discovery Material ("Order") shall govern the Parties in the above-captioned case (the "Action").

### I. DEFINITIONS

    A.    "Document" is defined as set forth in Local Rule 26.3(c)(2) and is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

    B.    "Email" is defined as any electronic message sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

    C.    "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

1

D. "Extracted Text" means text extracted from a Native Format file using standard e-discovery processing tools, such as Law PreDiscovery or Nuix.

E. "Load file" means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or instant message and its attachments and a Document and information related to embedded content.

F. "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document, and sometimes modified through ordinary business use. Metadata of the ESI describes, inter alia, the characteristics, origins, usage, and validity of the collected ESI.

G. "Native Format" means the format of ESI in the application in which such ESI was originally created.

H. "OCR" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

I. "Party" means any party to the Action, including all of its officers, directors, and employees.

J. "Producing Party" means any Party that produces Documents in the Action.

K. "Receiving Party" means any Party to whom Documents are produced in the Action.

2

L. "Responsive Document" means any Document that is responsive to any discovery request served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York or individual practices of the presiding judge, or other Court order.

M. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## II. GENERAL PROVISIONS

This Order shall govern the production of ESI and hard copy Documents (collectively, "Document" or "Documents") produced by any Party in the Action.

This Order does not govern any procedures or criteria used to define or limit the scope of production such as identification and preservation of potentially responsive data types and systems, custodian selection, technology-assisted review processes, or the use of search terms. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action. Nothing in this Order establishes any agreement as to any search protocol, including which sources shall be searched for Documents.

The Parties will meet and confer to resolve any disputes that arise under the procedures and protocols set forth in this Order. In the event the Parties cannot reach agreement on a disputed matter, the Parties may submit the matter to the Court.

## III. PRODUCTION FORMAT

A. Format Guidelines: The Parties shall, to the extent reasonably and technically possible, produce Documents according to the specifications provided in Exhibit A.

B.  System Files: ESI shall be filtered for file type using the NIST exclusion list. The Parties recognize that to reduce the Document review population, additional file types may need to be excluded.

C.  De-Duplication: A Party is required to produce only a single copy of a Responsive Document family. Each Party may remove exact duplicate Document families (i.e., identical copies of the same Document(s)), to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5 or SHA-1 hashing method and additional information regarding the family relationship and shall identify in the All Custodians field of each Document the name(s) of the custodians whose Documents the Producing Party agreed to produce who had duplicates of the Document removed during processing. Moreover: (1) if a Document is a duplicate of another Document but the Documents have different family members, they will not be de-duplicated,[1] although each family member shall be hashed separately for purposes of populating the "MD5 or SHA-1 Hash" field in Exhibit A; (2) responsive non-privileged attachments to Documents shall not be disassociated from the parent Document even if they are exact duplicates of another Document in the production; and (3) paper Documents shall not be eliminated as duplicates of responsive ESI. ESI that is not an exact duplicate according to the MD5 or SHA-1 hashing method may not be removed. However, a Producing Party may use Email threading to defensibly exclude, from both review and production, duplicative content within the Producing Party's Documents. Both de-duplication and Email threading will be

---

[1] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5 or SHA-1 hash codes to the corresponding members of another family. For example, if there is a two-member family with a parent and an attachment, the MD5 hash codes of the parent must be identical and the MD5 hash codes of the attachments must also be identical.

4

performed with careful consideration of full Document families, and as such, neither process will suppress unique content found in an attachment. The Producing Party will produce separate inclusive Emails where a thread splits into different conversation "branches."

      D.    Encrypted Documents: The Parties will make reasonable efforts to ensure that any Responsive Documents identified that are encrypted or password-protected are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent responsive encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents. To the extent such Responsive Documents are not successfully processed despite use of reasonable efforts, including reasonable technical efforts to obtain passwords, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

      E.    Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, and animation files shall be produced in Native Format, if available. Photographs, PowerPoint and other presentation files may be produced either in Native Format or as color images in TIFF format. The Parties agree to meet and confer regarding the ability to produce other file types in Native Format. If a Document to be produced in Native Format contains privileged information or information subject to any other applicable protection, the Document will be produced either in Native Format with redactions or by producing the Document in TIFF format

with redactions, to the extent reasonably and technically possible. If ESI redacted and partially withheld from production are audio/visual files, the Parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the content. To the extent Documents that fall under this paragraph contain privileged or protected information and cannot be redacted or produced in TIFF format, such Documents will be logged on a privilege log. The production load files shall contain a link to the produced Native Format files as specified in the "NativeLink" Metadata field described in Exhibit A. Each electronic file produced in Native Format shall be assigned a unique Bates Number, as set forth in Section III.K, and the database record for that file shall include a single page Bates-stamped TIFF image slip-sheet bearing the phrase "PRODUCED IN NATIVE FORMAT" (or similar language). To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to a protective order must appear on the associated TIFF placeholder. Files produced in Native Format shall be given file names that include the Bates Number and the file extension.

  F. Embedded Files: Embedded Files, defined as any Document contained in another Document, shall be produced as separate Documents where reasonably feasible. Upon request by the Producing Party, the Parties shall meet and confer in good faith regarding whether certain non-substantive Embedded Files may be excluded from production.

  G. Technical Defect Files: For Documents that have been identified as responsive or otherwise producible and that cannot be rendered to readable TIFF, a placeholder TIFF image may be produced in place of each such Document indicating that the Document could not be rendered to TIFF for technical reasons, or similar language. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms used to process the files.

H. Production of Additional Documents in Native Format: Each Party reserves the right to request production in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A and, upon a showing of reasonable need, such requests will not be unreasonably denied. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

I. Family Relationships: The Parties agree that if any part of a Document or its attachments is responsive, the parent Document and attachments must be produced, except (1) any Documents withheld or redacted on the basis of privilege or privacy laws, consistent with any protective order entered by the Court; and (2) any nonresponsive attachments that contain trade secrets; proprietary information; non-public commercial, financial, strategic, personnel, or regulatory information; other commercially sensitive material; or confidential material that may be subject to third-party notice provisions. If the Producing Party withholds or redacts a Document under (1), the Producing Party will comply with any agreement reached pursuant to Section VI below. If nonresponsive attachments are withheld under (2), the Producing Party must produce a placeholder TIFF image in place of each such Document indicating that the Document is nonresponsive.

J. Unitization: In scanning paper Documents, each page should be output to a single page TIFF file. Distinct, logical Document breaks should be defined as such in a standard load file as described in Exhibit A. In the case of an organized compilation of separate Documents (e.g., a binder containing several separate Documents behind numbered tabs), the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying

7

Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents correctly.

K. Bates Numbers and Confidentiality Designations for TIFF Images: Each page of a Document produced in TIFF format shall have a unique fixed-length numeric identifier ("Bates Number") containing at least eight (8) digits. The Bates Number for each page of a Document shall be created so as to identify the Producing Party and the Bates Number (e.g., "CU_ESI_00000001" and "BF_ESI_00000001"), and shall be electronically "burned" onto the image. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right-hand corner of the Document. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to a protective order filed with the Court shall appear on the lower left-hand side of each page of a produced Document.

L. Metadata Fields and Processing: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a Document using reasonable means, with the exception of the following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) MD5 Hash or SHA-1 Hash. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and standard delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

M.  Production Media: The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, USB thumb drives, secure FTP, or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates Number ranges of the Documents in that production (e.g., "Defs.' Production September 1, 2018, CU_ESI_00000123-CU_ESI_00000456"). To the extent that the Production Media includes any confidential information protected under any protective order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the protective order. Production Media shall also include text referencing the case name and number. Further, any replacement Production Media shall clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the Bates Numbers for Documents produced.

## IV. **PROCESSING SPECIFICATIONS**

A.  The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments, PowerPoint speaker notes, and other hidden text, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.

9

Each Producing Party shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of that Party's productions.

## V. CONFIDENTIALITY

Documents shall be subject to the terms of any protective order entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

## VI. LOG OF REDACTED OR WITHHELD DOCUMENTS

The Parties agree to exchange privilege logs for Documents redacted or withheld consistent with Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2. The Parties agree to discuss the use of categorical privilege logs as appropriate for specific categories of Documents. If a traditional privilege log is used, the Party claiming the privilege shall state the following information separately for each Document withheld:

(a) the nature of the privilege (including work product) which is being claimed;

(b) the type of Document;

(c) the general subject matter of the Document;

(d) the date of the Document; and

(e) the author of the Document, the addressees of the Document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

If a claim of privilege or other protection applies to only a portion of a Document, the Document should be produced with the portion claimed to be privileged obscured and stamped "redacted." In addition, the Producing Party shall indicate the basis for the redaction on a separate log, providing the Bates Number of the redacted Document, the

10

applicable claim(s) of privilege or protection, and any of the other information called for above in (a) through (e) that is not evident from the face of the redacted Document. The Parties shall meet and confer in good faith regarding any additional substantive and formatting requirements for privilege logs. Privileged communications with litigation counsel that occurred after May 13, 2019, need not be logged.

## VII. AMENDMENT OF ORDER

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Party involved in the dispute.

## VIII. MISCELLANEOUS

A.   Right to Assert Other Objections: By stipulating to the entry of this Order, no Party waives any right it otherwise might have to object to disclosing or producing any information or item on any ground, including confidentiality, attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Similarly, no Party waives any right to object on any ground to the authenticity, admissibility, or use in evidence of any of the material covered by this Order.

B.   Retention Obligations: Nothing in this Order alters a Party's legal obligation to retain Documents and data.

IT IS HEREBY AGREED by the undersigned as of August 23, 2019:

_____
Roberta A. Kaplan
Gabrielle E. Tenzer
Joshua Matz
Thomas A. Rawlinson
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
trawlinson@kaplanhecker.com

*Attorneys for Defendant
The Trustees of Columbia University in the
City of New York*

_____
Michele S. Hirshman
Darren W. Johnson
Jordana L. Haviv
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Main: (212) 373-3000
Fax: (212) 757-3990
mhirshman@paulweiss.com
djohnson@paulweiss.com
jhaviv@paulweiss.com

*Attorneys for Defendant
The Trustees of Columbia University in the
City of New York*

_____
Kimberly C. Lau
James E. Figliozzi
WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
klau@wbny.com
jfigliozzi@wbny.com

*Attorneys for Plaintiff Ben Feibleman*

12

**IT IS SO ORDERED.**

Date: September 4, 2019

_____
Hon. Valerie E. Caproni
United States District Judge

13

## Exhibit A: Document Production Format

Overview

All Documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded Metadata, and Document-level Extracted Text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy Documents. Details regarding requirements, including files to be delivered in Native Format, are below.

TIFF Image Requirements

All Documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number. The format of the Bates numbers shall not change across productions.

Images shall include the following content where present:

For word processing files (*e.g.*, Microsoft Word) – Comments and "track changes" (and similar in-line editing).
For spreadsheet files (*e.g.*, Microsoft Excel) – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).
For presentation files (*e.g.*, Microsoft PowerPoint) – Speaker notes and comments.

Reasonable care shall be taken not to degrade the legibility of Documents during the imaging process. If legibility is found to have been degraded, the Receiving Party may make reasonable requests for re-production of these Documents.

Native Format Requirements

Spreadsheet files

Spreadsheet files (*e.g.*, Microsoft Excel) shall be provided in Native Format.
In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the Native Format version of each file. The TIFF Placeholder should read "Document Produced Natively."
When redaction is necessary, a redacted TIFF image version shall be produced. The Parties reserve the right to request access to the Native Format versions of such files.

Multimedia files

14

Multimedia files (*e.g.,* audio or video files) shall be provided in Native Format. In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the Native Format version of each file. The TIFF Placeholder should read "Document Produced Natively."

The Parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

Other files

In limited circumstances, it may be necessary to obtain or view the Native Format versions of files, including color Documents/images and dynamic files, such as databases. The Parties reserve the right to request access to the Native Format versions of such files and/or an image format that supports viewing color Documents.

Image Load/Cross Reference File Requirements

A single-page image load/cross-reference file shall be provided with each production.

The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*
MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

Extracted Text/OCR Requirements

Extracted Text and/or OCR text shall be provided for all Documents as separate, Document-level text files; Extracted Text and/or OCR text shall not be embedded in the .DAT file (as defined below).

Document-level text file names shall consist of the beginning Bates number information of the Document.

If a Document is provided in Native Format with a single-page placeholder TIFF image (*e.g.,* spreadsheet files), the text file shall contain the full Extracted Text of the native file.

OCR text shall be provided for all redacted Documents in lieu of Extracted Text.

With respect to produced text files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

15

Data Load File Requirements

A data load file shall be provided with each production.

The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and Metadata information as detailed below.

The delimiters and qualifiers to be used in the .DAT file are:

*Record delimiter:*   Windows newline/Hard return (ASCII 10 followed by ASCII 13)
*Field delimiter:*   ¶ (ASCII 20)
*Multi-value delimiter:*   Semicolon ; (ASCII 59)
*Text qualifier:*   Small thorn þ (ASCII 254)

With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| **BegBates** | Beginning Bates number. | All. |
| **EndBates** | Ending Bates number. | All. |
| **BegRange** | Bates number of first page of family range (*e.g.*, first page of an Email). | All. |
| **EndRange** | Bates number of last page of family range (*e.g.*, last page of last attachment to an Email). | All. |
| **PageCount** | Number of TIFF image pages in the produced Document. | All. |
| **FileExtension** | File extension of the original Document (*e.g.*, .msg, .docx, .jpg). | All. |
| **FileSize** | File size of the original Document. Format: bytes. | All. |
| **Title** | Title of the original Document. | Loose files and attachments. |
| **Custodian** | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| **AllCustodian** | For globally de-duplicated productions only. Full name of all custodians for whom the Document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| **Author** | Author of Document from available Metadata. | Loose files and attachments. |
| **LastSavedBy** | Last Saved By field value extracted from Metadata of a native file. | Loose files and attachments. |

16

| Field | Comments | Document Types |
|---|---|---|
| Company | Company field extracted from the Metadata of a native file. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date Document was last accessed. | All. |
| TimeAccessed | Time Document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (*e.g.*, <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from Email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or Email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this Document's duplicates and the original path. Each path will contain the associated custodian. | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |

| Field | Comments | Document Types |
|---|---|---|
| MD5 or SHA-1 hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the Extracted Text or OCR for the Document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the Document, including the file name (if a native-format file is provided). | Loose files and attachments. |

In globally de-duped, incremental productions, there will be instances when production of Documents from additional custodians will include Documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with an updated AllCustodian field (BegBates and EndBates fields may be used as the unique identifiers). For globally and within custodian deduped productions, a similar append overlay load file shall be provided with an updated AllFilePaths field.

Additional Considerations

    A. All Document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.

    B. Embedded Documents shall be extracted from the parent Document with family relationship intact.

    C. Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

    D. If particular Documents warrant a different format (*e.g.*, production of color images instead of black and white), the Parties shall cooperate to arrange for the mutually acceptable production of such Documents.

    E. The Parties agree not to knowingly degrade the searchability of Documents as part of the Document production process. For example, Extracted Text should not be replaced by OCR text except where appropriate (*e.g.*, OCR for redacted Documents).

    F. Redacted Documents may have certain Metadata fields withheld from production. The Parties shall cooperate to create a list of Metadata fields which may be produced for these Documents.