UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BEN FEIBLEMAN,

                *Plaintiff*,

v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,

                *Defendant*.

No. 1:19-cv-4327 (VEC) (KHP)

**Oral Argument Requested**

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK'S PARTIAL MOTION TO DISMISS THE COMPLAINT

---

Michele S. Hirshman
Darren W. Johnson
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Main: 212.373.3000
Fax: 212.757.3990
mhirshman@paulweiss.com
djohnson@paulweiss.com

Roberta A. Kaplan
Gabrielle E. Tenzer
Joshua Matz
Thomas A. Rawlinson
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
trawlinson@kaplanhecker.com

September 20, 2019

## **TABLE OF CONTENTS**

PAGE(S)

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      PLAINTIFF'S ERRONEOUS OUTCOME CLAIM SHOULD BE DISMISSED ............ 2

          A.      Plaintiff Fails to Resolve Inconsistencies Between the Complaint and Recording ................................................................................................. 3

                1.      Legal Standard ...................................................................................... 3

                2.      Plaintiff's Allegation that Complainant Could Consent Is Implausible ........................................................................................... 4

          B.      The Audio Recording Does Not Support Plaintiff's Allegations .......................... 7

II.     PLAINTIFF'S COMMON LAW CLAIMS SHOULD ALSO BE DISMISSED .............. 8

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**P**AGE(S)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 4

*B.B. v. The New Sch.*,
    No. 17 Civ. 8347, 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018) ............................................. 3

*Chamberlain v. City of White Plains*,
    986 F. Supp. 2d. 363 (S.D.N.Y. 2013) ................................................................................. 3, 4

*Doe v. Syracuse Univ.*,
    No. 18 Civ. 377, 2019 WL 2021026 (N.D.N.Y. May 8, 2019) ........................................... 9, 10

*Maryland v. King*,
    569 U.S. 435 (2013) ............................................................................................................... 2

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ..................................................................................... 3

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016) ..................................................................................... 9

*Roe v. Pa. State Univ.*,
    No. 18 Civ. 2142, 2019 WL 652527 (E.D. Pa. Feb. 15, 2019) ............................................... 2

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) ..................................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2, 3

Defendant The Trustees of Columbia University in the City of New York ("Columbia" or the "University") respectfully submits this reply memorandum of law in further support of its motion to dismiss Counts I, III, IV, V, and VI of the Complaint.

## INTRODUCTION

Columbia sanctioned Plaintiff based on its finding that he had engaged in sexual activity with Complainant while she was not able to consent.[1] While Plaintiff challenges that finding in this lawsuit, his position is untenable in light of an audio recording that he himself created on the night in question. On that tape, Complainant is extremely intoxicated. Her speech is often slurred and incoherent, she forgets what happened only moments earlier, she expresses confusion about where she is and how she got there, and she drifts in and out of consciousness. No fewer than 12 times, Plaintiff responds to Complainant's drunken advances by stating that he wants to have vaginal sex with her but cannot do so because Complainant is far too drunk. Complainant twice agrees that she is drunk and twice answers with profanity when asked if she is okay. Given all this, Plaintiff's allegation that Complainant was able to consent is implausible.

In his Opposition, Plaintiff tries and fails to resolve the inconsistency between his audio recording and his claim that Complainant could consent. This effort involves a three-step maneuver. First, he asserts that Complainant's conduct throughout the audio recording is an elaborate lie; she was not actually drunk to the point of incapacitation, but rather was faking it, all so that she could persuade him to have vaginal sex with her. Second, he asserts that his own conduct throughout the audio recording was also an elaborate lie; he did not actually want to have sex with Complainant, he did not actually believe she was drunk, and he was not actually worried about what Roommate would say if he penetrated Complainant vaginally. He, too, was faking it.

---

[1] Columbia here refers to "Complainant" and "Roommate" consistent with the pseudonymized Complaint. (*See* ECF 57.)

Finally, Plaintiff asserts that he stayed alone with Complainant in her bedroom faking all this—and recorded it—to protect himself against any suggestion of improper conduct.

Plaintiff's explanation "taxes the credulity of the credulous." *Maryland v. King*, 569 U.S. 435, 466 (2013) (Scalia, J., dissenting). Inconsistencies can always be brushed aside on the fantastical premise that up is down and everyone must be lying. But outlandish explanations cannot salvage internally inconsistent allegations from being treated as implausible. That is particularly true when the explanation is itself riddled with inconsistencies.

## ARGUMENT

### I.   PLAINTIFF'S ERRONEOUS OUTCOME CLAIM SHOULD BE DISMISSED

As explained in the University's opening brief, there are five overlapping reasons why the audio recording renders implausible Plaintiff's allegation that Complainant was capable of consenting at the time he digitally penetrated and choked her. (*See* Mem. of Law in Supp. of Def.'s Partial Mot. to Dismiss the Compl. ("Br."), ECF 47 at 11-14.) Plaintiff does not dispute that the audio recording is valid or that it is properly considered under Rule 12(b)(6) as integral to the Complaint. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Compl. ("Opp."), ECF 65 at 16.) He instead advances several arguments as to why his erroneous outcome claim should survive. Plaintiff's main argument is that all the inconsistencies identified by the University can be explained away. His other argument—which he nods at, but never really commits to—is that the audio recording affirmatively supports his position. As discussed below, neither argument holds water here.[2]

---

[2]   Plaintiff asserts that his erroneous outcome claim survives because the University wrongly found Complainant not responsible for sexual misconduct against Plaintiff. (Opp. at 13.) But the very nature of an erroneous outcome claim is that *the plaintiff* was wrongly punished for committing an offense. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). Courts have therefore held that liability cannot exist under the circumstances described by Plaintiff. *See Roe v. Pa. State Univ.*, No. 18 Civ. 2142, 2019 WL 652527, at *10-11 (E.D. Pa. Feb. 15, 2019) ("The very basis of an erroneous outcome claim is that the plaintiff contends that he is innocent and was wrongly found to have committed the offense. In this case, Roe does not claim she is innocent and wrongly found

### A. Plaintiff Fails to Resolve Inconsistencies Between the Complaint and Recording

#### 1. Legal Standard

As Plaintiff concedes, on a motion to dismiss, courts consider "documents that are integral to, or explicitly referenced in, the pleading. If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (citation omitted). That is "because those contradicted allegations are implausible" under the Rule 12(b)(6) standard. *B.B. v. The New Sch.*, No. 17 Civ. 8347, 2018 WL 2316342, at *6 (S.D.N.Y. Apr. 30, 2018).

Judge Seibel's decision in *Chamberlain v. City of White Plains* is instructive. *See* 986 F. Supp. 2d. 363 (S.D.N.Y. 2013). There, the estate of Kenneth Chamberlain, Sr. (who had been mentally ill) sued the City for excessive force and unlawful entry after police officers broke into Chamberlain's apartment and, following a violent exchange, fatally wounded him. *See id.* at 374-78. The police officers had been summoned when Chamberlain accidentally activated his Life Aid medical alert device, which recorded their confrontation with Chamberlain. *See id.* Judge Seibel deemed this audio recording integral to the complaint. *See id.* at 379-80. She then relied on the audio recording in evaluating the complaint and dismissing certain of the estate's allegations. *See, e.g., id.* at 384 ("Accepting the factual allegations in the Amended Complaint (when viewed in conjunction with the audio and video recordings) as true, I find that Sergeant Fottrell's first discharge of the Taser was not excessive as a matter of law."). She also relied on the audio recording to conclude that certain specific factual allegations were implausible. *See, e.g., id.* at 376 n.5 ("The Life Aid recordings reveal one use of a racial slur, but aside from that inexcusable

---

responsible for an offense. Rather, Roe was the alleged victim of sexual assault, not the target of the Title IX disciplinary hearing. Accordingly, her erroneous outcome claim fails as a matter of law." (internal citations, quotation marks, and alterations omitted)).

3

statement, the Amended Complaint's characterization of the police statements as mocking, taunting, or threatening is not borne out by the recordings."). *Chamberlain* thus confirms that courts need not suspend common sense when presented with both factual allegations and materials incorporated by reference that squarely contradict each other. In such cases, it is the plaintiff who must explain why his complaint states a claim for relief.

### 2. Plaintiff's Allegation that Complainant Could Consent Is Implausible

Here, there is a clear inconsistency between Plaintiff's allegation that Complainant was able to consent and the audio recording that shows she could not. Plaintiff seeks to explain this inconsistency away. But his explanations—of Complainant's behavior and of his own—simply do not pass the test of "experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[3]

First, as explained in the University's opening brief, the audio tape evinces clear signs of alcohol-based incapacitation under Columbia's Gender-Based Misconduct Policy. (*See* Decl. of Thomas A. Rawlinson in Supp. of Def.'s Partial Mot. to Dismiss the Compl. ("Rawlinson Decl."), Ex. A ("Policy"), ECF 48-1 at 8-9.) Over the hours preceding the audio recording, Complainant drank several glasses of wine, performed risky stunts on a water tower in near-total darkness, and then fell asleep three times in the presence of others. (*See* ¶¶ 59, 79, 106-11, 143-71, 226, 251, 263.[4]) On the recording itself, there are long periods in which Complainant's speech is slurred, incomprehensible, or littered with confused single-word responses. (*See* Br. at 11-12.) She experienced notable changes of personality, drifted in and out of consciousness, revealed obvious

---

[3] Throughout his brief, Plaintiff boldly accuses Columbia of various misstatements of fact and law. (*See* Opp. at 9-13.) For example, Plaintiff suggests that the word "alcohol" is not synonymous with "beers," presumably because alcohol is associated with "hard liquor" and some beers have a lower alcohol content than some liquor. (*Id.* at 10.) Because Plaintiff's other accusations in this regard are equally unreasonable, Columbia will not respond to them here.

[4] References to "¶ __" are to paragraphs of the Complaint.

memory impairment about events just minutes earlier, and did not understand the "who, what, when, where, why or how" of her situation. (*See id.* at 11-13.) Moreover, Plaintiff himself repeatedly described Complainant as extremely drunk—and Complainant bluntly described herself as drunk, responding with meaningless profanity when asked if she was okay. (*See id.* at 13.) At one point, Complainant stated, "Oh, f---, I've been drunk for so many hours." (*See* 16:43-21:53.[5]) In short, the recording shows that Complainant was alone in her room, under the heavy influence of alcohol, with a man she barely knew, and very obviously unable to make and understand decisions. Nonetheless, while Complainant was in this state, Plaintiff decided to choke and digitally penetrate her.

To rescue his own implausible allegation, Plaintiff now makes three claims:

First, Plaintiff argues that Complainant was really sober the whole time and faked everything in order to seduce Plaintiff into having vaginal sex with her. (*See* Opp. at 16-20.) According to Plaintiff, when Complainant "appeared to be sleeping," she was "merely pretending to sleep." (*Id.* at 18.) When she said that she was drunk, that was a lie. When she had a brief snap of lucidity 16 minutes into the audio recording, both her shock of sudden awareness and her previous disorientation were also lies. (*See id.* at 19-20.) When she asked where she was, why she did not have pants on, and what had happened between Plaintiff and herself—and when she expressed surprise at being told that Plaintiff had been in her bed and had kissed her—she was lying. (*Id.*) When Plaintiff falsely told her that "nothing happened," her apparent acquiescence was craftily feigned. (*Id.*) When she said she did not want to "impose myself on you," and when she expressed embarrassment for acting like a "sh-- show" (18:27-18:41; 19:50-20:00), those were lies, too. To hear Plaintiff tell it, all of Complainant's inebriated behavior was akin to the

---

[5] Citations in this form are to timestamps of the recording. (*See* Rawlinson Decl., Ex. B.)

5

performance of an Academy Award-winning actress. Yet Plaintiff does not explain why Complainant persisted for 30 minutes in this ruse, which was designed to obtain vaginal sex, even after Plaintiff told her that the ruse itself (her faked drunkenness) was the *sole* reason he would not have vaginal sex with her that night. (18:02-18:11; 18:50-18:59.)  In addition, not surprisingly, not a word of this "faking it" theory can be found anywhere in the Complaint.

This leads to Plaintiff's argument that he, too, was faking it. In his Opposition, Plaintiff professes outrage at the University's suggestion that he "lied on that recording." (Opp. at 1.) But the entire defense in his Opposition is that he *did* lie—extensively and convincingly. (*Id*. at 20.) He lied when he said 12 times during the audio recording that Complainant was drunk. He lied when he said, "I don't want to f--- you when you're drunk" (0:28-0:32) and "when I finally f--- you, you won't be too tired, and you won't be drunk" (8:50-8:57). And Plaintiff kept on lying when he told Complainant that he could not have sex with her because her Roommate knew she was drunk and would disapprove.

Why did Plaintiff do this? Why did he stay alone with Complainant in her room, in a state of partial undress, choking and digitally penetrating her, and describing all the ways that he wanted to have sex with her—but emphasizing that he could not do so because she was drunk and her Roommate knew it? This leads to Plaintiff's third and probably most implausible claim: that he stayed in Complainant's room and said all this (and recorded it) for a single purpose—namely, to protect himself in the event that Complainant later sought to punish him for refusing to have vaginal sex by falsifying a claim of sexual misconduct. (¶ 305.)  That is, Plaintiff asks the Court to infer that he (a) faked an interest in having vaginal sex with Complainant, (b) faked his belief that she was drunk, (c) faked his wariness of her Roommate overhearing them, (d) did not remark on Complainant's fake performance of being drunk, (e) decided to remain in Complainant's

6

bedroom, and (f) chose to record their interaction—all because he feared that Complainant had social license at the University to falsify a rape allegation against him unless he spent *more* time in her room, secretly recording her as they continued their staged performances in which she faked alcohol-induced incapacity and he faked a desire but refusal to have sex with her on that basis.

To call this *implausible* would be an understatement. And that only grows truer when this story is unpacked. If Plaintiff knew Complainant was not drunk, then why did Plaintiff lie when she asked him what had transpired between them, saying "nothing happened" (18:28-18:35), even though he now admits that he had choked and digitally penetrated her? Why did Plaintiff later decide to lie to Complainant's Roommate, saying on the audio recording that he would tell her "nothing happened, we made out a bit and, uh, I left"? (30:30-30:45.) Why did Plaintiff worry about the Roommate at all, or believe that the situation was "dangerous" (¶ 345; 30:26-30:30), given that—according to him—it was apparent that Complainant was *not* drunk? (Opp. at 15-16.)

Plaintiff cannot explain the conflict between his allegations and the reality of the audio tape he himself recorded. The only plausible inference is that Plaintiff knew Complainant was incapacitated, engaged in sex acts with her, realized that he had done something wrong, and sought to thwart any accountability by creating the audio recording (on which he denies engaging in other sex acts with Complainant, says he cannot have vaginal sex with her because she is drunk, and reminds himself to text her Roommate that nothing happened).[6]

### B. The Audio Recording Does Not Support Plaintiff's Allegations

Plaintiff hints that the audio recording might support his allegation that Complainant was

---

[6] Plaintiff chastises the University for asking why he stayed in Complainant's bedroom to record her, rather than leaving. (Opp. at 20-21; *id.* at 21 n.9.) This criticism is misplaced. Plaintiff claims that he "felt trapped" by his supposed fear that Complainant would falsely accuse him of sexual misconduct if he refused her advances. (*See* ¶ 305.) It is not inappropriate to ask why, under such circumstances, he chose to stay in Complainant's room to secretly record her, rather than leaving.

7

able to consent. (*See id.* at 2, 17, 19.) His theory is that before Complainant "woke up"—which he believes occurred roughly 16 minutes into the audio recording—it would not have been readily apparent to him that she was incapacitated. (*See id.* at 19.) There are two independently fatal flaws in this argument.

First, it is inconsistent with Plaintiff's other allegations. Nowhere in the Complaint does Plaintiff allege that he believed Complainant was sober when he digitally penetrated and choked her, but unexpectedly realized during the audio recording that she had been blacked out. Plaintiff's firm position is that she was *never* drunk and that she was *always* faking it. Plaintiff is not entitled to backtrack on his own factual allegations just because they do not hold up under scrutiny.

Second, Plaintiff is mistaken. From the very outset of the recording, Complainant's voice is slurry and at times incoherent. (*See* 0:20-0:29.) Thirty seconds into the recording, Plaintiff tells Complainant she is drunk. (0:29-0:34.) He does so again repeatedly over the next 16 minutes. (*See, e.g.*, 0:36-0:38; 8:52-8:58; 12:02-12:17.) In that period, he expresses anxiety about her Roommate overhearing them because Complainant is not sober. (*See* 2:42-2:50; 3:02-3:15.) The newly-minted suggestion that Plaintiff first discovered Complainant's incapacity 16 minutes into the recording (and was unaware before then) does not survive review of the recording itself.[7]

## II. PLAINTIFF'S COMMON LAW CLAIMS SHOULD ALSO BE DISMISSED

Plaintiff's four contract and quasi-contract claims (Counts III-VI) fail as a matter of law because Plaintiff still fails to allege that the University breached any express or implied promises.

In Count III, Plaintiff alleges that Columbia breached its contract by failing to conduct a "fair and impartial process," as promised in its Policy. (¶¶ 924-25.) In his Opposition, Plaintiff does not refute the point that such "broad and unspecified" procedures or guidelines cannot support

---

[7] While Plaintiff asserts that Complainant knew the "who, what, when, where, why or how" of their interaction (*see* Opp. at 16), the University is confident that a review of the recording will show that Plaintiff is mistaken.

8

contract liability as a matter of law. (*Cf.* Br. at 16-17.) Plaintiff's claim fails for this reason alone. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *cf. Doe v. Syracuse Univ.*, No. 18 Civ. 377, 2019 WL 2021026, at *11 (N.D.N.Y. May 8, 2019) (permitting breach of contract claim when the Complaint "allege[d] four specific breaches").

As a fallback, Plaintiff now argues that he has alleged—elsewhere in the Complaint—"specific contractual promises that Columbia breached" and "concrete instances" of Columbia's failure to comply with its own rules. (Opp. at 22.) But these "concrete instances" are either not concrete or are not included in his Complaint, as set forth below:

| Compl. ¶ | Plaintiff's Allegation | Allegation's Insufficiency |
|---|---|---|
| 445-58, 854-68, 907, 913 | "Columbia failed to fairly investigate, prosecute, and adjudicate his complaints of sexual assault and harassment." | The Policy provides for a "fair and impartial process" but provides no guarantee of any particular outcome. Plaintiff points only to the sections of the Policy defining sexual assault and harassment. (Policy at 4-5, 7.) |
| 506 | "Columbia failed to provide Plaintiff with timely access to the details of the allegations pending against him." | The Policy requires that the parties be "updated throughout the investigative process." No particular provision requires the details of pending allegations at any particular time. (Policy at 20.) |
| 406-9, 416-17, 472-78, 911 | "Columbia did not enforce its Confidentiality Provision against Complainant." | The Policy does not prevent "either party from discussing the incident itself," which is what Plaintiff alleges Complainant did here. (Policy at 18.) |
| 473-74, 574-77, 915-16 | "Columbia did not investigate Complainant for retaliation." | The Policy says the investigative process "may" be initiated when the University receives a complaint and there is "adequate information to pursue an investigation." (Policy at 21.) |
| 728 | "The Hearing Panel's decision was contrary to the preponderance of the evidence standard." | Plaintiff fails to point to any paragraph in the Complaint where he makes this allegation. He only alleges that this reasoning was the basis for his appeal. (¶ 728.)[8] |

---

[8] Moreover, this allegation runs parallel to Plaintiff's erroneous outcome claim. If the Court finds that Plaintiff has failed to plausibly allege that the outcome is erroneous, the Hearing Panel's decision in no way could have been contrary to the preponderance of the evidence standard. *See generally supra* Pt. I.

9

Count V fails for similar reasons. As the University explained in its opening brief, Plaintiff has not alleged the breach of a "clear and unambiguous promise" with respect to the timing of his investigation—as is required for a promissory estoppel claim. (*See* Br. at 18.) In arguing otherwise, Plaintiff cites *Doe v. Syracuse*, 2019 WL 2021026, at *12. (Opp. at 24.) But that case does not help him because, as Judge Hurd emphasized, it involved the alleged violation of "expressly enumerated conditions and rights." *Doe v. Syracuse,* 2019 WL 2021026, at *11. Indeed, Judge Hurd distinguished that circumstance from alleged violations of "general statements of policy such as 'not [being] given sufficient notice of the complaint,' the failure to conduct a 'full and fair investigation,' and a 'lack of fundamental fairness,' which New York law dictates cannot form the basis of a viable contract claim." *Id.* (citation omitted). Count V here falls squarely into that category: "general statements of policy." It must therefore be dismissed. Of course, the same result is required to the extent that Count V purports to impose liability for the alleged (but nonexistent) procedural irregularities addressed above with respect to Count III. (Opp. at 24.)

Finally, with respect to Counts IV and VI, Plaintiff argues he can prevail if Columbia violated its contract with him (Count IV) or breached an implied promise (Count VI) by denying him his diploma. (*Id*. at 24-25.) These claims depend on his other theories of liability and fail for the same reasons. (*See* Br. at 19.) Accordingly, they should also be dismissed.

## CONCLUSION

For the foregoing reasons, Columbia respectfully requests that the Court dismiss Counts I, III, IV, V, and VI of the Complaint.

Dated: September 20, 2019

Respectfully submitted,

By: _____
Roberta A. Kaplan
Gabrielle E. Tenzer
Joshua Matz
Thomas A. Rawlinson
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
trawlinson@kaplanhecker.com

Michele S. Hirshman
Darren W. Johnson
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Main: 212.373.3000
Fax: 212.757.3990
mhirshman@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Defendant The Trustees of Columbia University in the City of New York*