JAN8FEIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BEN FEIBLEMAN,

                    Plaintiff,

          v.                              19 Cv. 4327 (VEC)

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

                    Defendants.

------------------------------x
                                          New York, N.Y.
                                          October 23, 2019
                                          2:00 p.m.

Before:

                    HON. VALERIE E. CAPRONI,

                                          District Judge

                              APPEARANCES

WARSHAW BURSTEIN LLP
     Attorneys for Plaintiff
BY:  KIMBERLY C. LAU
     JAMES E. FIGLIOZZI

KAPLAN HECKER & FINK LLP
     Attorneys for Defendant
BY:  ROBERTA A. KAPLAN
     GABRIELLE E. TENZER
          -and-
PAUL, WEISS (NY)
BY:  DARREN W. JOHNSON

2

JAN8FEIC

1          (In chambers; phone conference)

2          THE COURT:  Hello.  This is Judge Caproni.  Who do I

3     have for the plaintiff?

4          OK.  We have got a bad connection here.  Let me hear

5     from the plaintiff again.

6          MS. LAU:  Good afternoon, your Honor.  You have

7     Kimberly Lau and James Figliozzi.

8          THE COURT:  Who do I have for the defendant?

9          MS. KAPLAN:  Roberta Kaplan.  I am here with Gabrielle

10    Tenzer and Darren Johnson from Paul, Weiss.

11         THE COURT:  I have got a court reporter here, so I am

12    going to ask you to identify yourself each time before you

13    speak.

14         As I understand from my law clerk, we are in a little

15    bit of -- there is somebody's phone that is giving some

16    feedback.  That's better.  Whoever just muted your phone,

17    please keep it muted.

18         As I understand it, we are in a little bit of an odd

19    posture here.  This dispute has arisen in the context of

20    negotiating the protective order.

21         So, Ms. Kaplan, can you fill me in a little bit on the

22    posture of the dispute?

23         MS. KAPLAN:  Yes, certainly, your Honor.  So as we

24    have been saying in our status updates to the Court, the

25    parties have negotiating a protective order, and we actually

JAN8FEIC

made significant progress.  We have basically agreement on all

points.  We have even agreed to a procedure for the filing of

redacted documents and a meet-and-confer process in connection

with that.  So that's all very good.

The only open issue that remains is plaintiff's

current ability to depose the former student witnesses who are

witnesses in the underlying Title IX proceeding.  We had

suggested that, like the complainant, that those depositions be

kind of phased or put off until the Court had decided the

motion to dismiss the erroneous outcome claim.  As an

alternative we suggested that maybe, if they just give us a

heads-up, we can meet and confer about individual students if

they were so eager to take those right now.  There are plenty

of Columbia administrators and employees who we have no

objection to them taking at this time.  So I think this is a

phasing point, but unfortunately the parties were not able to

reach agreement on that.

THE COURT:  So in the context of the protective order,

you folks have been negotiating what discovery is being taken

as opposed to information being confidential or highly

confidential or whatever?

MS. KAPLAN:  Yes.  This issue of the student witnesses

has been part of our negotiations over the confidentiality

order, your Honor, yes.

THE COURT:  It's just an odd posture.  I suppose I

JAN8FEIC

1    should view this, for purposes of making a determination, as

2    though you weren't in the context of a protective order but,

3    instead, the plaintiffs had served subpoenas and Columbia was

4    moving to quash them?

5              MS. KAPLAN:  I think that's right, your Honor.  We

6    just did it this way because we were negotiating a whole bunch

7    of issues, but I think, logically speaking, there is no real

8    legal distinction.

9              THE COURT:  Ms. Lau, do you agree with that?

10             MS. LAU:  Yes, we agree.

11             THE COURT:  So then let me shift to you.

12             Ms. Lau, can you please explain to me why the

13   depositions of the students are relevant or are likely to lead

14   to relevant information?

15             MS. LAU:  Yes, your Honor.

16             The student witnesses would be relevant for our

17   selective enforcement claim, which has been proceeding and has

18   not been part of the motion to dismiss.  They would have

19   information regarding Jane Doe's violation of the

20   confidentiality policy, whether she retaliated against the

21   plaintiff, that she retaliated against students who shared

22   favorable information with the plaintiff.

23             So this all culminates into whether or not Columbia,

24   in sanctioning our client, issued harsher sanctions or issued

25   harsher charges to him -- both are implicated here in our

JAN8FEIC

1    complaint -- because of his gender.  It doesn't have to do with

2    the underlying incident that led to the charge itself of sexual

3    misconduct against my client.  It's relating to conduct that

4    occurred after that that implicated other violations.

5            THE COURT:  I have got that.  So I looked back at your

6    complaint.  So in paragraph 916, you allege that the

7    relevant -- somebody has got feedback on your phone.  So if

8    you're not speaking, I am going to ask you to mute your phone,

9    please.

10           So in paragraph 916, you allege that Columbia did not

11   investigate Jane Doe for retaliation despite being informed of

12   evidence that she verbally and physically attacked other

13   students who shared favorable information with the plaintiff.

14           So what evidence do you have that Columbia knew that

15   Jane Doe had verbally and physically attacked other students

16   who shared favorable information with plaintiff?

17           MS. LAU:  He shared this information with Columbia

18   during the course of the investigation.  He also e-mailed

19   Columbia's investigators to pursue this complaint against Jane

20   Doe.

21           THE COURT:  So the plaintiff told Columbia that he

22   believed Jane Doe was doing bad things to other students?

23           MS. LAU:  Correct.

24           THE COURT:  So isn't your first step in all of this

25   what Columbia knows about that, that is, did they discount it

JAN8FEIC

1    because it seemed like just a complaint from the plaintiff, or

2    that he didn't have firsthand information, or whatever?

3         I guess I am struggling to get to the need to depose

4    the students when in the first instance your allegation is

5    about what Columbia did or didn't do.

6         MS. LAU:  I understand what you're saying, your Honor.

7    We can get that information, or some of that information, from

8    Columbia itself, and we intend to, but that should not

9    foreclose our opportunity to discover from these student

10   witnesses information even beyond what we know.  Because what

11   we know is what is alleged in our complaint.  We believe there

12   is more information, based on what we know now, that is going

13   to provide more evidence of the selective enforcement at hand

14   by Columbia.

15        So it's because this cause of action has not been

16   stayed and, as well, the fact that they are not Jane Does, and

17   they are not even former students anymore, they are working in

18   the real world, and presumably can get their own counsel if

19   they need to.  So we did not understand the pushback from

20   Columbia on this issue.

21        THE COURT:  So let me go to the next allegation in

22   your complaint about selective enforcement, which is actually

23   earlier in the complaint.  It's paragraph 911.

24        It alleges that Columbia permitted Jane Doe to discuss

25   the disciplinary process, without fear of reprisal.  I don't

JAN8FEIC

1    know how anybody other than Columbia would know whether

2    Columbia somehow permitted Jane Doe to discuss the disciplinary

3    process.  I guess Jane Doe would know.  But why anybody else?

4              MS. LAU:  That's correct.

5              THE COURT:  You agree with that?

6              MS. LAU:  Well, yes, that's true.  On that allegation,

7    that is correct.

8              THE COURT:  Then you get to 915.  And 915 is that

9    Columbia did not investigate Jane Doe for retaliation despite

10   her making false and incendiary statements to others regarding

11   the plaintiff.

12             So it strikes me on that one Columbia either did or

13   did not investigate.  But I am not sure what the other students

14   add to that; that is, that allegation rises or falls on what

15   Columbia knew and what Columbia did.  So unless you have got

16   some reason to believe, which I haven't heard, that some other

17   person, other than the plaintiff, reported something to

18   Columbia, so that they would be a fact witness on what Columbia

19   knew, I am struggling to understand how third parties advance

20   the ball on that allegation.

21             MS. LAU:  I see what you're saying, your Honor.

22   Again, we just reiterate that there might be more information

23   that we are just not aware of at the moment from these

24   witnesses that will lead us to that kind of evidence.  But we

25   believe we have provided more than enough information in the

JAN8FEIC

1    allegations to show that we at least have a good faith reason

2    and basis to depose them for the selective enforcement claim.

3    It's not because we are going on some kind of fishing

4    expedition, that we don't have any basis of knowledge.  We do

5    have a valid basis of knowledge in our detailed complaint.

6             THE COURT:  Well, I have just gone through and these

7    are the only three allegations that I found that third parties

8    would have relevant knowledge that conceivably they could be

9    relevant to.  Are there others that I missed?  This is relative

10   to selective prosecution.

11            MS. LAU:  Right.  We have identified paragraphs 565 to

12   577.

13            THE COURT:  Give me those numbers again.

14            MS. LAU:  565 to 577, 581, 683, 916, which actually we

15   just mentioned.  We have also identified 408, 415, 472, 911,

16   and 473 through 474.

17            THE COURT:  Hold on just a second.

18            So I just read 565 through 577.  None of that suggests

19   Columbia knew anything about it.  So how is that relevant to

20   selective prosecution?

21            Again, it strikes me that the most significant issue

22   on your selective prosecution claim, based on the allegations

23   that are actually in the count as opposed to factual

24   allegations that are incorporated by reference, are the ones

25   that I went through that deal with what Columbia knew about

JAN8FEIC

1    Jane Doe's conduct.  Because your claim is Columbia

2    discriminated against the male because they had analogous

3    information about male and female, and they took certain steps

4    as to the male but not as to the female.

5            So it strikes me that the critical path of evidence

6    there is, what did Columbia know and why did Columbia make the

7    decisions that it made?  And so far, I haven't gone through the

8    rest of these, but my recollection of the complaint, from

9    reading it before, is that up until you get to the counts it's

10   a lot of salacious factual information about everything that

11   took place on the Columbia campus from the date of the alleged

12   assault until the date that the plaintiff was expelled.  So I

13   don't anticipate seeing a lot else in those paragraphs that are

14   going to advance the ball of why the other students have

15   information that is going to be relevant to the most critical

16   issue of your selective prosecution claim.

17           Now, it could be that after you take discovery of

18   Columbia, you learn that Sally reported to Columbia that Jane

19   Doe was running her mouth about the plaintiff, in which case

20   you might be able to make an argument that a deposition of

21   Sally makes sense, to find out what did she really know, all of

22   the ins and outs of her communications with Columbia.  But

23   right now it just seems like you're on fishing expedition, that

24   the only person that you know who told Columbia anything is the

25   plaintiff, and you can't tell me yet any of the background of

JAN8FEIC

what Columbia was doing with that information to make it

relevant to depose the other students who might have been

mentioned in whatever the plaintiff reported to Columbia.

MS. LAU:  Your Honor, just to respond to that.  We

identified these students and the allegations in these

paragraphs in order to -- we still have to establish that they

actually occurred.  There's also allegations in our complaint

that Columbia, while it was told by our client, the plaintiff,

about what was happening, whether it was retaliation or a

violation of the confidentiality policy, that they did not want

to hear him, let alone investigate these allegations.

So, from our perspective, it's not just what Columbia

knew, because Columbia put up its arms as to how much it wanted

to know and how much it wanted to inform itself about what was

occurring on campus; it's also to establish that these actions

occurred and took place that did constitute violations and that

Columbia did not do anything about it.

THE COURT:  If Columbia didn't know, then how do you

have a selective prosecution claim?

MS. LAU:  I probably didn't make myself clear enough.

They knew the overarching claim by my client.  They just

stopped wanting to know any more about it by not investigating

and not finding out more information.  He wanted them to

investigate.  There was more information for them to have about

the allegations.  He told them where to go for that

JAN8FEIC

1    information, and they refused to do so.

2         So for a selective enforcement claim, we believe you

3    still have to establish that these infractions actually

4    happened and that Columbia did have enough knowledge to go

5    ahead and investigate but they did not, or that they

6    investigated but put a different label on certain charges that

7    constituted the same level of misconduct for both parties, that

8    both instances happened here.

9         THE COURT:  Both instances meaning, as to certain

10   things that you're complaining about in the selective

11   enforcement count, they did investigate, but they did something

12   different relative to the plaintiff than they did to Jane Doe?

13        MS. LAU:  Correct.

14        THE COURT:  So what would that be?  Where is that in

15   the complaint?

16        MS. LAU:  I will look at that allegation and give a

17   specific paragraph number for you, but the allegation is about

18   what the label of the charge was for the same level of

19   misconduct alleged against Jane Doe versus against plaintiff.

20        THE COURT:  But students aren't going to be able to

21   help you on that.  That all comes down to what Columbia knew.

22   Based on what they knew, if they labeled two things

23   differently, they either knew it was the same or they didn't

24   know that.  The fact that some student knew something different

25   isn't going to help your selective prosecution claim.

JAN8FEIC

```
 1           MS. LAU:  As to that issue, that is correct, your
 2     Honor.
 3           Then the other issue is that Columbia did not want to
 4     investigate even though it was told about other infractions
 5     committed by Jane Doe, and they were given enough information
 6     that they could have done that investigation but didn't.  And
 7     that is selective enforcement as well, but we would have to
 8     establish that those incidents actually occurred, that Jane Doe
 9     actually engaged in such action.
10           THE COURT:  So you're relying on what your client told
11     Columbia.  So what was that, and who would be the fact
12     witnesses that, had Columbia investigated it, they would have
13     talked to?
14           MS. LAU:  ███████████████████████████████, at a
15     minimum.
16           THE COURT:  Stop.  You're giving me a list of people.
17     My question was, what did plaintiff tell Columbia?  Is that in
18     the complaint somewhere?
19           MS. LAU:  Yes, it is.
20           THE COURT:  What paragraph?
21           MS. LAU:  Paragraph number 408, 415, 472, 911, 915,
22     those all relate to the confidentiality policy.
23           THE COURT:  Well, 915 doesn't mention anything that
24     the plaintiff said.
25           Same with 911.
```

JAN8FEIC

1              MS. LAU:  408.

2              THE COURT:  Hang on.

3              408 doesn't tell me what he said.

4              415 doesn't identify any other person.

5              472 doesn't name anybody else.

6              So none of those tell me what he said.

7              MS. LAU:  I am at a loss, your Honor, because I wasn't

8    aware that we would have to get that detailed in the complaint

9    itself.

10             THE COURT:  You don't.  So just tell me, what did he

11   tell Columbia?  You're relying on his reports to Columbia, that

12   is to say, he believed they were truthful, and that those

13   reported breaches or violations or whatever weren't

14   investigated by Columbia.  But it would be helpful, in trying

15   to ascertain whether this is something other than a fishing

16   expedition, to get a better understanding of what you contend

17   Columbia knew, that is, what was Columbia told.

18             MS. LAU:  I don't have the exact words, but I know

19   that, because of what we said in 408 or 415, that our client

20   made Columbia aware that there were violations of the

21   confidentiality policy by student witnesses, namely, people in

22   the student body, in the journalism school.

23             THE COURT:  But that doesn't identify other people.

24   It's one thing for someone to go to the dean and say, I know

25   that Jane talked to Mary and John and told them X.  That's

JAN8FEIC

1    different from going to the dean and saying, Jane is saying

2    mean things about me and she is not complying with the

3    confidentiality requirements, do something about it.  I am

4    trying to get you to explain which.

5          MS. LAU:  If you look at paragraph 473 through 477,

6    that's one instance of a specific witness that plaintiff

7    advised Columbia of.

8          THE COURT:  OK.  Ms. Kaplan.

9          Did we lose the defendant?

10          MS. KAPLAN:  Your Honor, I'm sorry, I have been on

11    mute.  I apologize.

12          THE COURT:  That's OK.

13          MS. KAPLAN:  Would you like me to respond, your Honor?

14          THE COURT:  Yes.

15          MS. KAPLAN:  So of course we agree with your Honor

16    that, for purposes of a selective enforcement claim, the

17    touchstone is the state of mind or knowledge of Columbia, and

18    we of course have no objection to the deposition at this point

19    of Columbia personnel.

20          With respect to this stuff about confidentiality,

21    which seems to be what my friend on the other side seems to

22    complain of so much, under the Second Circuit's decision in

23    *Yusuf* you can't have a selective enforcement claim based on not

24    applying a particular policy to one person and not the other

25    person.  There are only two ways to state an enforcement claim.

JAN8FEIC

1   It's either the instigation of an investigation or the severity

2   of the punishment.

3              So I don't understand how a selective enforcement

4   claim, even if they are right, which we of course deny, that

5   they enforce confidentiality in a one-way manner in this case,

6   which of course is not what happened, but even if that were

7   true, it still wouldn't state a selective enforcement claim

8   under the Second Circuit's decision in *Yusuf v. Vassar College*,

9   35 F.3d 709.  And that's why we don't really understand what

10  the students have to add here.  We agree that they are entitled

11  to get to the knowledge of Columbia and what knowledge Columbia

12  had either in deciding to open an investigation or to punish

13  plaintiff.  And with respect to punishing plaintiff, I don't

14  think confidentiality had anything to do with it.

15             MS. LAU:  May I briefly respond, your Honor?

16             THE COURT:  Yes.

17             MS. LAU:  The plaintiff did try to file a complaint

18  with Columbia about the violation of the confidentiality

19  policy, but was told that he would be charged with retaliation

20  by Columbia if he were to do that; and, also, if he were to

21  speak out on his own about the case to other individuals in the

22  same school, the same as Jane Doe was doing, that he would also

23  be charged with retaliation.  So in that respect it's different

24  from what Ms. Kaplan has discussed from the *Yusuf* holding.  We

25  have a different scenario here, that he was being threatened by

JAN8FEIC

1   Columbia to not do the same kind of conduct or else he would be

2   charged, and that was a selective enforcement.

3        THE COURT:  Accepting the truth of that, other

4   students do not help you, right?  Because either Columbia

5   threatened him or they didn't.  But whether he had a valid beef

6   that she was running her mouth in ways that he wanted to run

7   his mouth doesn't advance the cause of whether there was

8   selective prosecution.  That is, he could have been lying.

9   Assuming that you're right, that that states a claim of

10  selective prosecution, he could have made it up that she was

11  talking.  If Columbia said, well, if you talk, we are going to

12  charge you with retaliation, and if that constitutes selective

13  prosecution, it doesn't matter whether he was telling the truth

14  or not, does it?

15       MS. LAU:  So just to answer your question why the

16  other witnesses would be important in that scenario, it's our

17  belief that we would have to still establish that the fact

18  occurred in the way it happened.  So we would have to do both.

19  We would have to establish that these incidents actually

20  occurred, that there was talking among the student body, and

21  that Columbia was made aware of it and did nothing.

22       THE COURT:  Well, talking among the student body is

23  not the issue.  The issue is whether Jane Doe violated the

24  confidentiality requirement and Columbia selectively decided to

25  threaten the plaintiff with punishment for that, but with

JAN8FEIC

1    knowledge that Jane Doe was violating it, didn't act against

2    her.

3              MS. LAU:  Right.  That's what I meant.

4              THE COURT:  It still comes back to what Columbia knew.

5              MS. LAU:  I don't disagree --

6              THE COURT:  Go ahead.

7              MS. LAU:  I don't disagree, your Honor, that what

8    Columbia knew is very important to our selective enforcement

9    claim.  Our position is that what Columbia knew plus what

10   occurred, what actually occurred, to cause the infraction.

11             THE COURT:  I need to reread the *Yusuf* case but, Ms.

12   Kaplan, are you saying that even if plaintiff is right, that he

13   was threatened that he would be charged with retaliation if

14   he -- what did he want to do?  He wanted to file a claim

15   against her for violating the confidentiality requirement; that

16   they would charge him with retaliation if he did.  Does that

17   state a claim for selective prosecution?

18             MS. KAPLAN:  I don't think it would state a claim,

19   your Honor.  But even if it did -- and I find myself in a

20   strange position arguing that my adversary has a lesser burden

21   than she thinks she does -- I don't think she has to prove the

22   underlying truth.  I think selective enforcement all goes to

23   the state of mind, as your Honor has been pointing out, of what

24   Columbia knew, and how Columbia acted based on what it knew,

25   and whether those actions were on account of gender.

JAN8FEIC

1          I would only add, your Honor, and we will obviously

2     have to deal with this on summary judgment in some detail, that

3     Columbia University, like any human being, is not required to

4     treat every single student with complete consistency.  That

5     would be impossible to do.  And that's not what the selective

6     enforcement rules require.

7          THE COURT:  Ms. Lau, I will give you the last word.

8          MS. LAU:  We would just make our position clear that

9     we do believe that the student witnesses are important to the

10    Court's analysis of the selective enforcement claim, and that

11    we would have to establish the facts occurred the way in which

12    we have alleged in our complaint that led to the ultimate

13    selective enforcement action by Columbia.  So we would have to

14    do both in this instance.

15         This would not be a fishing expedition.  We pointed

16    out numerous allegations where there was knowledge by the

17    Columbia faculty or administrators that other students could

18    have been investigated about these claims against Jane Doe but

19    they did not do so.  So we would ask that your Honor consider

20    our position and rule that we don't have to -- and keeping this

21    in mind in the context of why we came here, which is whether or

22    not this should be showing up in a protective order, that we

23    should be essentially forced to make a motion for leave of

24    court every time we wanted to depose a student witness, it just

25    seems like an onerous burden for plaintiff on a cause of action

1   that has not been stayed.

2           THE COURT:  My view is, based on what I have heard up

3   to now, this seems very far afield.  So my view would be, it

4   may be that down the road you have got a much better factual

5   predicate, where it makes sense to expand the scope of

6   discovery to pick up some of these other students who may have

7   been fact witnesses, and known to Columbia to be fact

8   witnesses, of some incident where you have got a reasonable

9   argument that it plays into a selective prosecution claim.  But

10  I don't think you're there yet.  So my inclination would be to

11  say, don't go forward with student depositions at this point,

12  but we can revisit the issue later in discovery when you have a

13  much better view of what Columbia actually knew when they were

14  making the decisions that you're complaining about.

15          Anything further?

16          MS. LAU:  Your Honor, are you going to be ordering, I

17  guess, a prohibition on deposing student witnesses at this

18  time?

19          THE COURT:  Yes.  But without prejudice to you coming

20  back with a better developed factual basis for why this isn't

21  just a fishing expedition.

22          Anything further?

23          MS. KAPLAN:  Only one housekeeping.  I think earlier

24  in the argument Ms. Lau mentioned the names of some students.

25  So for the court reporter, we don't have any problem with us

JAN8FEIC

1    using it, but if it's ever made public, obviously we would need

2    those names to be redacted.

3            THE COURT:  Did we redact -- I guess we did.  All

4    right.

5            Anything further?

6            Thank you, all.

7            (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25