UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

BEN FEIBLEMAN,                                        :
                                                      :
                                    Plaintiff,        :
                                                      :
                    -against-                         :
                                                      :
                                                      :
THE TRUSTEES OF COLUMBIA UNIVERSITY :
IN THE CITY OF NEW YORK,                              :
                                                      :
                                    Defendant.        :
----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __07/09/2020__

19-CV-4327 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

   Plaintiff Ben Feibleman, who was the respondent in a campus sexual assault case, seeks

leave to amend his complaint after this Court granted in part Defendant Columbia University's

motion to dismiss.[1]  Pl.'s Mot. (Dkt. 98) at 1.  In particular, Plaintiff attempts to revive certain

contract and quasi-contract claims against Columbia, which the Court dismissed for failure to

allege an enforceable promise or damages.  *Id.* at 2–3.  Plaintiff also seeks to add a deliberate

indifference claim under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681,

alleging that Columbia deprived him of educational benefits by failing to investigate his counter-

accusations against his accuser.  *Id.* at 5.  The Court denies leave to amend because the

previously identified defects have not been rectified in the proposed amended complaint,[2] and

adding the newly proposed deliberate indifference claim would be futile.

---

[1]    For purposes of this Order, the Court assumes familiarity with the facts of this case, which were extensively
discussed in the Court's previous opinion.  *Feibleman v. Trustees of Columbia Univ. in New York*, No. 19-CV-4327,
2020 WL 882429, at *1 (S.D.N.Y. Feb. 24, 2020).

[2]    The Court notes also that the proposed amended complaint (PAC) is the very antithesis of "a short and
plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The PAC weighs
in at 129 pages with 1139 separate numbered paragraphs, some of which are, inexplicably, duplicates. *See, e.g.*,

**DISCUSSION**

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires."  Leave may be denied if the proposed amendment would be futile, *i.e.*, if the "proposed amendment[] would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  Accordingly, the Court applies the same standard it did when adjudicating Columbia's motion to dismiss.  The Court "accept[s] as true all well-pleaded allegations of fact in the [Proposed] Complaint, unless they are contradicted by other allegations, attached exhibits, or documentary evidence incorporated by" the pleading.  *Feibleman v. Trustees of Columbia Univ. in New York*, No. 19-CV-4327, 2020 WL 882429, at *8 (S.D.N.Y. Feb. 24, 2020) (citations omitted).  Plaintiff's motion to amend will be denied if he "has failed to state a claim to relief that is plausible on its face" even when all reasonable inferences are drawn in his favor.  *Id.* (citations omitted).

**1.  Plaintiff's Proposed Breach of Contract Claim**

Plaintiff contends that Columbia breached its contractual obligations, as set forth in the university's policies, by failing to investigate alleged retaliation by his accuser, Jane Doe. Proposed Am. Compl. (PAC) (Dkt. 98-1) ¶¶ 949, 960.  As the Court previously held, in order to state a claim for breach of contract under New York law, Plaintiff must plead "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and resulting damages."  *Feibleman*, 2020 WL 882429, at *17 (citation omitted).  The Court previously dismissed this claim because Plaintiff failed to identify an enforceable promise or resulting damages from any breach.  *Id.* at *19.  The proposed amendment fares no better.

---

PAC ¶¶ 1006, 1026, 1031 and 1035 ("The fact-finding portion of the disciplinary process was completed on January 18, 2017.") *and* ¶ 1019 ("All witness interviews were completed by January 18, 2017.").

Feibleman attempts to locate an enforceable promise in the "Definitions" section of Columbia's Gender-Based Misconduct Policy (GBMP).  Specifically, in the definition of "retaliation," the policy provides, *inter alia*, that allegations of retaliation between a complainant and a respondent "*may be* investigated through the Dean's Discipline or folded into the pending investigation, based on the circumstances of the allegation."  GBMP (Dkt. 48-1) at 6 (emphasis added).  Plaintiff's letter motion acknowledges the permissive construction but then argues that the Court should look to an adjacent paragraph, which uses a mandatory construction.  Pl.'s Mot. at 2 (citing GBMP at 6 ("Allegations of retaliation by other parties . . . *will be* investigated separately by the [Gender-Based Misconduct] Office when the allegations involve gender-based misconduct.  Any other allegations of retaliation [by anyone other than the complainant or respondent] *will be* investigated and adjudicated through the Dean's Discipline process.") (emphasis added)).  Although the latter paragraph pertains to alleged retaliation by someone other than a complainant or respondent, Plaintiff contends that Columbia could not have intended to make an investigation compulsory for non-party retaliation but optional for retaliation by a complaint or respondent.  *Id.* (arguing that ambiguity must be construed against Columbia which drafted the policy).

Plaintiff's theory fails for two reasons.  First, neither of the paragraphs identified by Plaintiff addresses Columbia's threshold obligation to initiate an investigation.  Rather, both paragraphs aim to explain which of the two available disciplinary processes—the Gender Based Misconduct Process or the Dean's Discipline process—would apply, once it is determined that an investigation is warranted.[3]  Second, the operative language that addresses Columbia's

---

[3]        This interpretation avoids an unusual result that would be compelled by Plaintiff's reading.  If one reads the section defining "retaliation" to contain an obligation to investigate, as Plaintiff urges, then one would expect similar language to exist in the preceding sections that define other prohibited conduct, such as sexual harassment, sexual assault, and stalking.  But no such language exists outside of the definition of retaliation.  That absence suggests that

"obligation" to commence an investigation comes later in the GBMP, in a section titled "Investigation Process" and a subsection titled "Initial Assessment of Complaint."[4]  *See* GBMP at 21.  There, the policy makes clear that "[t]he Gender-Based Misconduct Office *may* initiate the investigative process when it receives a complaint or report of a violation of this Policy and there is adequate information to pursue an investigation."  *Id.*  It further states that "[t]he Office will . . . initiate an investigation if it determines that the complaint or report would, if substantiated, constitute a violation of the Policy."  *Id.*  Read together, these two provisions reserve significant discretion in making the threshold determination to Columbia.  The university is, therefore, not obligated to initiate an investigation in response to every complaint, and Plaintiff has again failed to identify the express promise that would support a breach of contract claim.

Even if there were an enforceable promise, the Court remains unpersuaded that Plaintiff has alleged resulting damages.  Plaintiff claims that Columbia's failure to investigate (and deter) retaliation "obscured the truth from [his] classmates" and, as a result, caused Plaintiff to suffer reputational harm amongst his classmates, which in turn damaged his journalism career.  PAC ¶¶ 963–82.  As the Court has previously observed, however, the harm to Plaintiff's reputation and career prospects stem from Doe's accusation of sexual assault and Columbia's decision to find him responsible and claw back his degree.

---

this language was included in the definition of retaliation, as argued by Columbia, to clarify the two possible pathways for investigating a retaliation claim; a retaliation claim is unique in that it could be pursued in tandem with the underlying claim or pursuant to a separate process.  It would be highly anomalous if Columbia expressly undertook to investigate every claim of retaliation but not to do the same for reports of underlying gender-based misconduct.

[4]      Locating Columbia's obligation to initiate investigations in this section of the policy makes imminent sense because any such obligation would apply equally to all forms of misconduct identified in the definition sections and avoid inconsistent treatment.

If Doe's alleged acts of retaliation had interfered with the fact-finding process, one could perhaps draw a line of causation from Columbia's failure to investigate the alleged retaliation to Plaintiff's reputational harm from being found responsible for a sexual assault.  But the Proposed Amended Complaint alleges nothing that interfered with the fact-finding process.  Plaintiff alleges two acts of retaliation: (a) Doe's act of spreading a false rumor that she contracted a sexually transmitted disease (STD) from Feibleman during the sexual assault; and (b) Doe's spilling a drink on a witness at a reception in May 2017. *Id.* ¶¶ 949, 960.  As to the first, sometime before Plaintiff's second investigative interview by Columbia, Doe allegedly spread a false rumor about contracting an STD from Feibleman; Feibleman argues that rumor could have been readily disproved. *Id.* ¶¶ 464, 473.  But Feibleman does not explain how that rumor, although clearly upsetting, interfered with the fact-finding process.  If anything, the rumor further incentivized Feibleman to clear his name—indeed, Feibleman pressed Columbia for additional investigation after hearing the rumors, and nothing in the record suggests that Feibleman was in any way deterred by Doe from pressing his claims and defenses, which included the presentation of an extensive amount of documentary evidence.  Nor can the Court draw any rational connection between the alleged rumor of Feibleman's STD and any non-party witness's willingness *vel non* to participate in the investigation.  In fact, according to Plaintiff, Columbia interviewed 10 non-party witnesses, several of whom reportedly corroborated Feibleman's account, notwithstanding those rumors. *See* PAC ¶¶ 579–80, 1022.  The PAC contains no allegation that any witness was deterred from offering his or her account of the night in question, which was, in any event, extensively documented with photographic, audio, and video evidence.  Doe's other act of retaliation allegedly occurred when she intentionally spilled a drink on a non-party witness at a reception in May 2017, nearly four months after all interviews

and investigation had concluded.  *Id.* ¶¶ 572, 582, 1006, 1019.  In short, neither of Doe's alleged retaliatory acts plausibly "obscured the truth" of Feibleman's alleged innocence.

Absent an impact on Feibleman's ability to clear his name, the failure to investigate Doe's retaliatory conduct did not plausibly affect Feibleman's reputation among his peers.  Quite simply, whether Columbia investigated Doe for retaliation (and whether Doe in fact engaged in retaliation) had no bearing on whether Feibleman sexually assaulted Doe months before, or for that matter, whether he had transmitted an STD to Doe.  The truth or falsity of Doe's rumor would have been irrelevant to any finding of retaliation.  *See* GBMP at 6 (defining retaliation as any "adverse action" taken against anyone who engages with the Title IX process).  Even if Columbia had fully investigated Doe for retaliation and found her responsible, that investigation could not have exonerated Feibleman, and his reputation would have remained tarnished by Doe's accusation and Columbia's finding as to sexual assault.  The inescapable fact is that Feibleman's alleged injuries were caused by Doe's complaint and Columbia's disciplinary decisions, not Doe's retaliation or Columbia's failure to investigate such retaliation.[5]  *See Feibleman*, 2020 WL 882429, at *18.

Because Plaintiff has failed to cure the defects identified in the Court's prior decision, his request to amend the complaint to add a breach of contract claim for Columbia's failure to investigate Doe's alleged retaliation is denied.

---

[5]     As explained in the Court's later discussion of Plaintiff's Title IX claim, Feibleman does not plausibly allege any injury caused by the STD transmission rumor, which was conveyed to him by one person on one occasion and was not alleged to have been credited by anyone or widely circulated.  *See* PAC ¶¶ 964–65 (conclusory allegation of "occupational" harm).  Nor is there any allegation that Doe spread such rumors after Columbia declined to investigate.  Although Feibleman seems to suggest that his inability to find employment in the journalism field is connected to Doe's retaliation, *id.* ¶ 966, the Court finds it implausible that his ongoing unemployment is due to a single isolated rumor, rather than to Columbia's disciplinary decision.

## 2.  Plaintiff's Proposed Promissory Estoppel Claim

Next, Plaintiff attempts to assert a promissory estoppel claim against Columbia for failing to complete its investigation in a timely manner.  "In New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance."  *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (citation omitted).  According to Plaintiff, Columbia failed to complete the disciplinary process within 60 days, the standard timeframe set forth in the GBMP.  PAC ¶¶ 999–1001, 1004.  The Court previously dismissed this claim because the GBMP's 60-day timeframe was aspirational and subject to a range of specific exceptions.  *Feibleman*, 2020 WL 882429, at *17.  Moreover, Plaintiff had failed to identify any specific assurance given to him by Columbia that the general timeline was applicable to his case.  *Id.*  Although the Court gave Plaintiff another opportunity to identify non-aspirational statements or specific assurances from Columbia, Plaintiff has failed to do so.

The proposed amendment continues to point to the same aspirational statement that the Court previously found insufficient to obligate Columbia to complete its investigation within 60 days.  *See* PAC ¶ 999; *Feibleman*, 2020 WL 882429, at *17 (citing GBMP at 19 ("The University *will seek* to resolve every report of gender-based misconduct within approximately sixty (60) days of an initial report, not including the time for any appeal." (emphasis added))).  As the Court previously noted, the policy specifically cautions that "[t]ime frames will vary depending on the complexity of the investigation and the severity and extent of the alleged

misconduct." *Id.* Such statements are, at best, erect goalposts to strive toward and cannot reasonably be taken to the bank, as Plaintiff seeks to do.[6]

Plaintiff also attempts to plead promissory estoppel by pointing to Columbia's Title IX investigator, Serena Barnett, who allegedly assured Plaintiff that her report would be completed by the end of January before she would take maternity leave. PAC ¶ 1005. Even assuming that Barnett's assurance was not aspirational, which the Court cannot ascertain from Plaintiff's abbreviated description of her statement, Plaintiff has not pleaded that he relied on her assurance to his detriment. While Plaintiff alleges that Columbia's overall delay caused him to pay more tuition for the spring semester than he otherwise would have, Plaintiff does not allege that Barnett's assurance in January was material to his decision to continue attending Columbia while the investigation was ongoing. *Id.* ¶¶ 1044–49. Indeed, regardless of whether Barnett completed her report in January, subsequent hearings based on that report would have occupied a significant part of the spring semester.[7] Moreover, according to Plaintiff's own allegations, he had already decided months earlier to proceed with the school year because of his sunk cost. *See id.* ¶¶ 418–19. ("Huff encouraged Mr. Feibleman to drop out of school and 'apply' for the next year. If Mr. Feibleman accepted Huff's proposal, he would have lost all progress towards his degree.").

---

[6]     Plaintiff did add allegations that the complexity of the case cannot explain the delay because all witness interviews were completed by January 2017, months before Columbia's hearing and eventual decision. PAC ¶¶ 1006, 1019, 1023, 1029. The mere fact that Columbia finished gathering evidence in January does not, standing alone, plausibly show that the length of the investigation was not due to the complexities of the case. As Plaintiff acknowledges, Columbia received statements from a total of twelve witnesses, in addition to a significant amount of multimedia evidence. PAC ¶¶ 1022, 1027. Even after such evidence has been collected, it must still be reviewed, assessed, compared, and pieced together into a coherent report. As is evident from the length of Plaintiff's complaints, the factual record in this case is no light reading.

[7]     The investigative report was issued on April 27, 2017, and Columbia released its disciplinary letter on June 28, 2017. PAC ¶¶ 719, 1011. Even if Barnett had completed her report at the end of January (as Plaintiff alleges she promised), assuming the same time frame would be been required for the disciplinary process to work its way from an investigative report to a decision, the decision would have been rendered in late March or early April 2017, after Plaintiff's deadline to withdraw from school and receive a *pro rata* return of tuition. *See* PAC ¶ 1048.

Even viewing all facts in Plaintiff's favor, the Court cannot infer that Feibleman continued his academic term because of Barnett's statement that she intended to finish the investigative report by the end of January or that he suffered any injury from her failure to comply with her self-imposed deadline.[8]

In short, Plaintiff's alternative estoppel theory fails because he did not plead a clear and enforceable promise, reliance on Barnett's assurance as to an interim deadline, or any detriment. Because Plaintiff's proposed claim would not survive a motion to dismiss, his request to add a promissory estoppel claim based on Columbia's failure to conduct a timely Title IX process is denied.

### 3.   Plaintiff's Deliberate Indifference Claim

Plaintiff premises his Title IX deliberate indifference claim on Columbia's failure to adequately investigate his claims against Doe.  In a case of student-on-student sexual harassment, an educational institution is liable under Title IX only when it is "deliberately indifferent to [the] harassment, of which [it has] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school."  *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).  The institution's response could be "clearly unreasonable" in either its substance or its timeliness.  *Hayut v. State Univ. of New York*, 352 F.3d 733, 751 (2d Cir. 2003).  Within the spectrum of permissible institutional responses, "victims do not have a right to specific remedial measures."  *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d

---

[8]      Nor was Barnett's assurance in January a specific promise that the 60-day timeframe was applicable to Feibleman's case.  By the time Barnett allegedly made her promise, more than 60 days had already elapsed since Doe's complaint on October 5, 2016, placing the investigation well-beyond the 60-day trajectory Columbia allegedly promises.  PAC ¶ 364.

Cir. 2012) ("[W]hen weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians."). Plaintiff attempts to advance two theories of deliberate indifference—Columbia's failure to adequately investigate his claim that Doe sexually assaulted and harassed him and his claim that Doe engaged in retaliation against him. Because Columbia's actions were not clearly unreasonable and Doe's alleged harassment and retaliation fell short of being severe and pervasive, the Court denies leave to amend.[9]

### (a) Sexual Assault or Harassment by Doe

Plaintiff alleges that Columbia's response to his allegations against Doe was clearly inadequate because Columbia should have pursued his claims as a complaint of sexual assault, rather than sexual harassment;[10] he also argues that Columbia failed adequately to investigate the harassment claim. PAC ¶¶ 1106, 1109–10. Neither argument holds water.

As to the inadequacy of Columbia's investigative efforts, Plaintiff's amendment is entirely conclusory. He does not identify a single witness interview or other investigative action that Columbia should have but failed to undertake. *See id.* By his own allegations, Columbia interviewed a dozen witnesses in addition to reviewing an array of multimedia evidence.

---

[9]       Even at the pleading stage, the Court may dismiss a deliberate indifference claim that arises from mere disagreement with the educational institution's legitimate exercise of discretion. *See, e.g., Estate of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist.*, 327 F. Supp. 3d 477, 530 (N.D.N.Y. 2018) ("In an [appropriate] case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law."); *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, 531 F. App'x 132, 133–34 (2d Cir. 2013) (dismissing deliberate indifference claim that school should have taken stronger remedial steps after alleged sexual assault); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *17 (S.D.N.Y. Sept. 27, 2012) (dismissing deliberate indifference claim because alleged harassment was not sufficiently severe).

[10]       Plaintiff also alleges that Columbia failed to investigate Doe for domestic violence or dating violence. PAC ¶¶ 1101–03. As even a cursory review of the GBMP reveals, Columbia intended for those categories to prohibit violent acts between dating partners or members of a household, with a particular focus on conduct designed to intimidate or assert dominance or control in an ongoing relationship. *See* GBMP at 4–5. Plaintiff, therefore, has not plausibly alleged that Columbia's conclusion—that Doe's alleged behavior, taking place outside the context of a sustained romantic or domestic relationship with Feibleman, fell outside of those categories—is clearly unreasonable. In any event, as further discussed below, Doe's conduct was not sufficiently severe and pervasive to form the predicate for a deliberate indifference claim against Columbia under Title IX.

Feibleman and Doe were alone on a rooftop and in Doe's bedroom when Doe allegedly sexually assaulted or harassed him, and Feibleman's capacity to consent was not in dispute; accordingly, no other witness was likely to have probative evidence.  Absent any factual allegations of how Columbia's fact-finding process could have been improved, Plaintiff has not plausibly alleged that Columbia's actions were clearly unreasonable.  Plaintiff's proposed amendment, therefore, does not state a claim of deliberate indifference based on failure to investigate.

Feibleman also argues (not unreasonably) that Doe's alleged misconduct, which included nonconsensual bites, a slap, and a failed attempt to perform oral sex, could meet the GBMP's definition of sexual assault and, therefore, could have been investigated as a possible assault, not as harassment.  *Id.* ¶¶ 1072–83.  In light of the Supreme Court and the Second Circuit's instruction that an educational institution is entitled to deference in its disciplinary decisions, however, the Court's role is not to determine whether Columbia *could* have investigated Feibleman's claims as sexual assault but whether Columbia was *required* by Title IX to do so.  *See Zeno*, 702 F.3d at 666 (citing *Davis*, 526 U.S. at 648) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators."); *Soriano ex rel. Garcia v. Bd. of Educ. of New York*, No. 01-CV-4961, 2004 WL 2397610, at *4 (E.D.N.Y. Oct. 27, 2004) ("While plaintiffs may have preferred a different response from the school administrators, the standard is not whether the administrators responded in a particular manner, but whether their response was clearly unreasonable in light of all the known circumstances.").  The Court sees nothing in Title IX that compels educational institutions to seek the most serious charge possible in every case, particularly when each institution is well-situated to assess the relative seriousness of student misconduct on its campus.

Most important, Doe's alleged misconduct falls short of the severity and prevalence required to support a deliberate indifference claim. The Supreme Court has cautioned that the alleged misconduct that is the predicate of a deliberate indifference claim must be so severe, pervasive, and offensive that it has a "systemic effect on a program or activity." *Davis*, 526 U.S. at 652–53. A single instance of peer-on-peer sexual misconduct,[11] unless extreme, is unlikely to have the requisite impact on the victim's educational opportunities. *Id.*

Feibleman alleges two separate instances of sexual harassment or assault. First, while on a rooftop, Doe bit Feibleman's lip and slapped him in the face minutes after Feibleman had removed Doe's bra, allowed her to rub his crotch, and pressed his face into Doe's chest. PAC ¶¶ 150–57. Apart from the bite and the slap, Feibleman alleges that he consented to the overall encounter on the rooftop. *Id.* ¶ 149. He claims that the slap stung, but neither the bite nor the slap appeared to leave a mark or otherwise cause injury. *Id.* ¶ 158. Such conduct, as a matter of law, falls short of being severe and pervasive, and Columbia was not clearly unreasonable in declining to review and dissect relatively minor aspects of an overall consensual encounter. *See Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (holding that unwanted biting of the victim's neck that left a mark, along with nonconsensual pressing on the victim's breast and body, could not support deliberate indifference claim).

Later, in Doe's bedroom, Doe allegedly grabbed Feibleman's buttocks and pulled down his pants to expose his penis, in a failed attempt to have oral sex as he was attempting to leave. PAC ¶¶ 317–22. Feibleman allegedly was able to stop Doe before she made contact with his

---

[11]    Plaintiff takes issue with the characterization of his allegations against Doe as "single incident." Pl.'s Reply (Dkt. 107) at 2 n.3. Whether the entire series of events that occurred on the night at issue constitute a "single incident" or multiple incidents is not the pertinent issue. The question is whether Doe's alleged conduct was so severe and pervasive that it deprived Plaintiff of access to Columbia's educational opportunities and benefits.

penis.[12]  *Id.*  Even assuming the truth of Feibleman's allegations,[13] Plaintiff has not plausibly

pleaded how the isolated incident of Doe's exposure of his penis in her private bedroom, whether

alone or in combination with the events that occurred while they were on the roof, although

offensive, was so severe and pervasive as to have deprived him of an educational opportunity or

benefit.  *See Francoeur v. D.L.*, No. 15-CV-953, 2017 WL 4247385, at *6 (D. Conn. Sept. 25,

2017) ("The instant case involves conduct which, while undoubtedly embarrassing, degrading,

and offensive to A.F., was a one-time occurrence and thus not pervasive.").  Courts in this circuit

have found comparable or more severe misconduct to fall short of the severe and pervasive

threshold.  *See id.* (holding that unwanted touching of buttocks could not support deliberate

indifference claim); *Soriano*, 2004 WL 2397610, at *6 (holding that two separate incidents

involving unwanted touching of vagina and buttocks did not deprive victim of access to

educational opportunities).

      While the Court does not doubt that Feibleman has lost significant professional

opportunities due to Doe's accusations and Columbia's decision to revoke Feibleman's graduate

degree, the Court cannot draw any conceivable causal connection between those losses and

Doe's attempt to engage in oral sex.  The proposed amended complaint does nothing to elucidate

---

[12]    The Court notes that shortly before Doe removed Feibleman's pants, he had removed Doe's pants and penetrated her with his fingers, and a mere four minutes earlier, Feibleman had consented to Doe touching his penis. Audio Tr. (Dkt. 66-1) at 9; PAC ¶¶ 273–74.  Neither force nor threat prevented Feibleman from leaving at any point, and Feibleman did not choose to leave immediately after Doe's failed fellatio attempt, instead choosing to return to bed with Doe for approximately fifteen more minutes, during which they kissed and conversed without mention of Doe's alleged assaultive behavior.  *See* PAC ¶¶ 330–45.

[13]    Feibleman's allegations depict a struggle to prevent Doe from succeeding in performing oral sex, PAC ¶¶ 317–19, but the Court reiterates its doubt as to Feibleman's version of events.  The relevant audio clip contains no discernable signs of a physical struggle or of any surprise or frustration on Feibleman's part.  *See Feibleman*, 2020 WL 882429, at *4 ("There is no detectable expression of surprise, annoyance, physical exertion, or even a change in Feibleman's tone as he asks for a good-night kiss, almost immediately after the point that the struggle would have occurred.  Nor did Feibleman protest in any way that Doe had pulled down his pants." (citations omitted)).  The Court is not obligated to accept the truth of a complaint's factual allegations if contradicted by other evidence.  *Id.* at *8.

such a connection.  Feibleman alleges in conclusory terms that he lost the ability to "fully participate in his educational program," including by being "prevented from attending educational, professional, and networking opportunities sponsored by" Columbia and by being "deprived of invaluable networking, alumni connections, and job placement opportunities."[14] PAC ¶¶ 1131–34.  As the Court has stated *ad nauseam*, however, those harms flow not from Doe's alleged misconduct but from Feibleman's and the punishment that Columbia imposed. His injuries are entirely unrelated to whether Doe also engaged in wrongful conduct and whether Columbia adequately investigated her wrongdoing.  Feibleman does not specifically allege, for instance, that he was so upset, embarrassed, or otherwise harmed by Doe's acts of harassment or assault that he no longer felt safe or comfortable attending class or other university events of which he complains being deprived.  *See Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 369–70 (S.D.N.Y. 2017) (finding unspecified allegations of interference with ability to take classes, attend career events, or use campus facilities inadequate to survive motion to dismiss Title IX claim).  Nor does he allege that his academic performance declined as a result of Doe's sexual misconduct towards him.  *Carabello*, 928 F. Supp. 2d at 643 ("For a court to find that harassment denied a student access to educational resources and opportunities, the 'harassment must have [had] a concrete negative effect on the victim's education, which may include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, or physical exclusion from a school resource.'" (citation omitted)).  Absent the loss of an educational benefit that can be traced to Doe's alleged acts of harassment or assault, Plaintiff's claim must fail.

---

[14]     Feibleman also alleges that he was deprived of the right to participate in a fair and impartial disciplinary process.  PAC ¶ 1128.  Feibleman nowhere connects Columbia's failure to provide an impartial process (to the extent that it did so) to Doe's acts of harassment or assault.  There is no allegation, for example, that Feibleman failed to file a complaint because he feared Doe.

Because Plaintiff has not alleged how Doe's alleged sexual misconduct deprived him of an educational benefit, nor how Columbia's investigation of his claims fell short, leave to amend to add a deliberate indifference claim on these grounds is denied.

### (b) Retaliation by Doe

Plaintiff's claim that Columbia's failure to investigate Doe's retaliatory acts constituted deliberate indifference is similarly futile.  In particular, he has not alleged how Doe's spreading a rumor that Feibleman infected her with an STD and Doe's spilling a drink on a fellow classmate were so severe and pervasive as to deprive him of an educational benefit or opportunity.[15]

An accusation that a student is infected with a sexually transmitted disease, if widely known, could arguably be severe and pervasive if it deters the student from attending classes or school-sponsored events or inflicts such a psychological burden that it affects the student's performance.  *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011); *Hayut*, 352 F.3d at 746 (holding that public insults on repeated occasions in front of assembled class were pervasive).  To plead hostile conduct as part of a deliberate indifference claim, the plaintiff must allege "that he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his educational environment."  *Papelino*, 633 F.3d at 89.  A "'hostility' determination in the educational context, as in the employment context, entails examining the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

---

[15]      The spilled drink incident occurred on May 11, 2017, six days before graduation, which Plaintiff attended; Plaintiff has not explained how that incident prevented him from accessing any educational privilege otherwise available to him or caused him to suffer academically or professionally.  *See* PAC ¶¶ 596, 954.

whether it unreasonably interferes with' the victim's academic performance." *Hayut*, 352 F.3d at 745 (citation omitted).

Here, Feibleman alleges that one classmate told him about the rumor sometime before December 2016.  PAC ¶ 473.  There is no allegation that anyone else heard such a rumor, that the rumor continued to circulate thereafter, or how Plaintiff was affected by the rumor.  *See id.* ¶ 1129 (conclusory allegation that "Columbia allowed Complainant to propagate false rumors that created a hostile environment and alienated Mr. Feibleman from his classmates"); *see Nungesser*, 244 F. Supp. 3d at 369–70 ("Although [Plaintiff] includes more detail in his SAC than in his previous pleadings, he still fails to allege a concrete, negative, and systemic effect on his ability to receive an education.").  Thus, the alleged rumor in this case was, at best, "episodic," rather than "continuous and concerted," and is, therefore, not actionable under Title IX.  *See Hayut*, 352 F.3d at 745.

For those reasons, the Court concludes that Plaintiff's deliberate indifference claim premised on a failure to investigate his claims of retaliation is also futile.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is DENIED.  The Clerk of Court is respectfully requested to terminate docket entry 98.

**SO ORDERED.**

**Date:  July 9, 2020**                                          **VALERIE CAPRONI**
          **New York, New York**                          **United States District Judge**